FILED - LN
June 14, 2021 10:07 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY __jlg /_____  SCANNED BY ⊘⊘◌/ 6/15

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN


WILLIAM G. WIZINSKY AND
ANN M. WIZINSKY,

                         Plaintiffs,          **1:21-cv-496**

                                              **Janet T. Neff, U.S. District Judge**
v.                                            **Sally J. Berens, U.S. Magistrate Judge**

LEELANAU TOWNSHIP, THE SHORES
HOMEOWNERS ASSOCIATION, T. SETH KOCHES,
KARRIE A. ZEITS; BAUCKHAM, SPARKS,
THALL, SEEBER & KAUFMAN;
PC,  SONDEE, RACINE & DOREN, PLC;
LEELANAU COUNTY, CHET JANIK, PAUL HUNTER,
STEVE PATMORE AND UNKNOWN FINANCERS OF LITIGATION,

                         Defendants,
_____/

William G. Wizinsky and Ann M. Wizinsky
Plaintiffs In Pro Per,
250 Pleasant Cove Drive
Novi, Michigan 48377
(248) 219-1225
wwizinsky@aol.com
_____/


**COMPLAINT AND JURY DEMAND**


Plaintiff, William G. Wizinsky and Wife, In Pro Per until they retains legal counsel hereby

complains against Defendants for violation of the US Constitution, Federal Statutes, Coercion,

Abuse of Process, Fraud, Conspiracy in Fraud to deny Civil Rights, Property Rights, Malpractice

and  Fraud upon the Court. The violation of the U.S. Constitution, Federal Statutes and Rule of

Law for the purpose of a CON to remove a newly created "Black Family"  by removing their

legally just repaired home. Local Public Officials in Conspiracy with the County Circuit Court

practice Systemic Racism in using the Zoning Department and Building Department as racist tools

to deny people of color from living on their own property in Leelanau County. The Public Officials had to violate the Open Meetings Act, The Michigan Zoning Enabling Act, the Leelanau Township Zoning Ordinances, the 2015 Michigan Residential Build Code the Michigan State Constitution, due process and equal protection under the law and using public funds for funding a private entities litigation. This is allowed to occur in Michigan because public officials in the State Of Michigan either assist or look away and allow systemic racism in such counties that practice these policies to insure the communities stay white. For this to work the Attorneys and their firms are part of the CON. They had to violate the Michigan Rules of Professional Conduct , commit fraud upon the Court and conspire with their clients using the Judicial System for abuse of process as a means of coercion to force Plaintiffs Wizinsky's into a Settlement Agreement,  outside of their legal authority. The Settlement Agreement is a Racist Doctrine to deny use, inheritance and ownership of the property by the Wizinkys; that they had owned for 30 years and used freely for 23 years. The Attorneys and their firms committed fraud upon the court as officers of the court in the filed litigation, pleadings and oral argument. Defendants used litigation as a tool for an ulterior motive to achieve the unlawful goal of removing the tiny home, to remove the black family from the community. They did this by violating the Us and State Constitutions, Statutes, Ordinances and Codes in the process of the litigation and all government normal function. Plaintiff William G. Wizinsky as a licensed Architect and Builder by the State of Michigan with 40 years of experience and also working for State Government saw how the tools of his trades be misused as weapons of discrimination. They were successful in removing the family from the community, but this time they got caught. This is an original action because Defendants actions are continuous and still occurring against the Plaintiffs as per the Continuous Violations Doctrine.  Defendants in the Construction Appeal and Zoning Appeal Hearings again violated due process and equal treatment

under the law as part of the original CON as a continuance of the CON of fraud for systemic racism. Thereby this litigation is another result of the continuance system of systemic racism of the original fraud as continued frauds and violation of US and Michigan State Constitution, Federal and State Statutes, Ordinances and Codes as per the Continuous Violations Doctrine.

Plaintiff had two Public Officials confirm racism as the motive for removing Plaintiff's from the community. When Plaintiff used the property for 23 years as white people there was no problem. When Plaintiffs adopted an African American child, they lost all their property rights. The community has had articles published of the County's racist issues as in **Exhibit 2.**

Plaintiff, William G. Wizinsky and his Ann M. Wizinsky, In Pro Per until they retains legal counsel; hereby complains against Defendants LEELANAU TOWNSHIP, THE SHORES HOMEOWNERS ASSOCIATION, T. SETH KOCHES, KARRIE A. ZEITS, BAUCKHAM, SPARKS, THALL, SEEBER & KAUFMAN, PC;  SONDEE, RACINE & DOREN, PLC; UNKNOWN FINANCERS OF LITIGATION, LEELANAU COUNTY, CHET JANIK, PAUL HUNTER AND STEVE PATMORE states:

1. Plaintiffs William G. Wizinsky and Ann M Wizinsky are residents of the City of Novi, Oakland County, Michigan and have property in Leelanau County.

2. Defendant Leelanau Township ("Township") is a political subdivision of the State of Michigan, duly organized and founded pursuant to the statutes of the State of Michigan. Defendant Leelanau Township operated under the guise of Township government. Defendant Leelanau Township operated outside the mandate of their authority.  They falsified documents, created a CON using the Zoning Department as tool of systemic racism by violating the US and Michigan Constitutions, Statutes, Ordinances that they apply the due

process required to everybody else but denied to Plaintiffs and denied equal application of the law which is discrimination.

3. Defendant Steve Patmore as Zoning Administrator of Leelanau Township operated under the guise of Township government. Defendant Steve Patmore operated outside the mandate of his authority, falsified documents, created a CON using the Zoning Department as tool of systemic racism and violating the US and Michigan Constitutions, Statutes, Ordinances that they apply the due process required to everybody else but denied to Plaintiffs and denied equal application of the law which is discrimination.

4. Defendant Leelanau County ("County") is a political subdivision of the State of Michigan, duly organized and founded pursuant to the statutes of the State of Michigan. Defendant Leelanau County operated under the guise of county government. Defendant Leelanau County operated outside the mandate of their authority. They falsified documents, created a CON using the Building Department as tool of systemic racism by violating the US and Michigan Constitutions, Statutes, Codes that they apply the due process required to everybody else but denied to Plaintiffs and denied equal application of the law which is discrimination.

5. Defendant Chet Janik as Leelanau County Administrator operated under the guise of County government. Defendant Chet Janik operated outside the mandate of his authority,  ordered the falsification of documents, created a CON using the Building Department as tool of systemic racism and  violating the US and Michigan Constitutions, Statutes and Codes that they apply the due process required to everybody else but denied to Plaintiffs and denied equal application of the law which is discrimination.

6. Defendant Paul Hunter as Leelanau County Building Official operated under the guise of County government. Defendant Paul Hunter operated outside the mandate of his authority, falsified public document, created a CON using the Building Department as tool of systemic racism and violating the US and Michigan Constitutions, Statutes, and Codes that they apply the due process required to everybody else but denied to Plaintiffs and denied equal application of the law which is discrimination.

7. Defendants The Shores HOA Board operated under the guise of The Shores Homeowners Association Board operated outside the authority invested into them by the HOA documents and protective restrictions. The Shores HOAbreached their contract with Plaintiffs. Defendant The Shores operated outside the mandate of their authority. They created a CON using the Protective Restrictions as tool of systemic racism by violating directly and indirectly in conspiracy with other Defendants, US and Michigan Constitutions and Statutes and contractual due process required to everybody else but denied to Plaintiffs and denied equal application of the contract which is discrimination.

8. Defendant Seth Koches and his firm Defendant BAUCKHAM, SPARKS, THALL, SEEBER & KAUFMAN abused the judicial process to assist their clients to successfully remove a "black family" from the community thus committed Coercion, Abuse of Process and Malpractice claims as including Conspiracy to Defraud  for the purpose of Systemic Racism and denial of Civil Rights. The Attorneys were the tools used for this deception as a continued practice of racism by them and their firms.   Had the attorneys complied to the Michigan Rules of Professional Conduct, due process would have occurred and Defendants would not have been used as a tool for discrimination. Defendants Seth Koches and his firm as officers

of the court committed fraud upon the court. This firm was the instrument for Coercion and thus is liable to Plaintiffs for damages.

9. Defendant Karrie Zeits and her firm Defendant SONDEE, RACINE & DOREN, PLC abused the judicial process to assist their clients to successfully remove a "black family" from the community thus committed Coercion, Abuse of Process and Malpractice claims as including Conspiracy to Defraud   for the purpose of Systemic Racism and denial of Civil Rights. The Attorneys were the tools used for this deception as a continued practice of racism by them and their firms.   Had the attorneys complied to the Michigan Rules of Professional Conduct, due process would have occurred and Defendants would not have been used as a tool for discrimination. Defendants Karrie Zeits and her firm as officers of the court committed fraud upon the court. This firm was the instrument for Coercion and thus is liable to Plaintiffs for damages.

10. UNKNOWN FINANCERS OF LITIGATION is probably are members of the HOA. The money from this source is directly paid to the attorneys or through The Shores HOA. The money is not coming from resources of the Shores HOA such as the annual dues, since there are insufficient funds for the filed litigation to continue to fund the appeals, thereby another source is supplying the funding. An entity that probably has interest in Lot 12, such as Christine E. Kaeser Trust owns lot 12 and later bought lot 13. They or another source/name/entity with interest and/or could have an ulterior motive of buying lot 11, removing the home, removing the black family and funding the litigation as  n Ulterior Motive in assisting or paying for the financing of the litigation of The Shores/ Leelanau Township. The unknown entity could be a group of home owners or another source of

funding with the ulterior motive in conspiracy with other Defendants thus violating Plaintiff's Constitution Rights. As they say follow the money, you will find the ulterior motive. Defendants Karrie Zeits and her firm and/or Defendants Seth Koches and firm knows of this unknown entity since they bill them, therefore they will be required to servedthe Defendant's person(s)/entity(s)' copies to be served upon them. They know of this parties' existence and by accepting money from a third party for the CON of an ulterior motive is in violation of the Michigan Rules of Professional Conduct using a third parties' money through the Shores HOA/Leelanau Township trying to enforce a non-existent zoning violation and/or protective restriction without the due process of the contract and/or law for a third party's ulterior motive.

## GENERAL ALLEGATIONS

11. Plaintiff hereby incorporates by reference all previous paragraphs.

12. As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and State Statutes, Ordinances and Codes continue as support of systemic racism, fraud, conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

13. Plaintiff is a licensed architect and licensed builder that have worked with Zoning Departments and Building Departments for almost four decades.

14. Plaintiff William Wizinsky bought on October 1, 1990, Lot #11 in The Shores subdivision.

15. On August 10, 1992, Plaintiff submitted plans for a treehouse to be built on the property to Tom Beeler of the Architectural Committee (the revisionary owner) for approval of the structure.

16. In 1992, Tom Beeler approved the plans for the structure by signing the plans. **Exhibit 6**

17. He signed them at the location the treehouse was to be built.

18. Tom Beeler in 1992 as the revisionary owner had the authority in him if he wanted to waive a restriction and approve the project.

19. The first HOA Board in the first meeting had to approve all Tom Beeler's decisions.

20. The first HOA Board had a long discussion about Plaintiff's treehouse/gazebo.

21. The first HOA Board approved Plaintiff's treehouse/gazebo.

22. This approval is reflected in the minutes of the first HOA Board Meeting.

23. These approvals were accepted by all following Boards until July 2015, and not by the Board of Defendant The Shores HOA.

24. Plaintiff submitted the building plans in 1992 to the zoning department of Leelanau Township where a Land Use Permit was issued. **Exhibit 7**

25. Plaintiff submitted the building plans in 1992 to the building department of Leelanau County. **Exhibit 8**

26. The building changed the use from treehouse to GAZEBO, because a treehouse is not an approved foundation by BOCA.

27. The building department required changes in the plans. Plaintiff changed the connection to the trees and to an approved foundation system attaching it to the ground.

28. The Building Department issued a permit in 1992 based on the changes to the plans. **Exhibit 8**

29. The Building Department told Plaintiff to use the GAZEBO as a sleeping place he had to carry in drinking water and have a portable toilet.

30. As a result of the new foundation system, Plaintiff had to make the structure smaller and raise the structure about four feet to properly fit in between the trees versus attached to the trees. Attaching to the trees allowed more flexibility, than digging foundations near tree roots.

31. The four-foot higher structure still met the zoning requirements related to height.

32. The Building Department inspected the gazebo and approved the structural. **Exhibit 9**

33. There was no issue of the home being raised by the building department or zoning department to fit in between the trees.

34. There was no issue by The Shores Home Owners Association with it being raised for 23 years.

35. There was no issue of it being raised by Tom Beeler the residual owner of the property who approved the gazebo.

36. There was no issue with it being raised by Willard Kolarik who helped maintain the structure over its life and was the person who enforced the protective restrictions.

37. Plaintiff s used the GAZEBO over the next 23 years as a summer weekend getaway without a single complaint by The Shores to any government agency.

38. The structure or use of it has poised no issues to the community until July 2015.

39. Plaintiffs adopted an African American child, the use of the property than became a problem because Plaintiffs introduced an African American into the community.

40. Defendants The Shores by attacking the building use and its destruction would deny use by a newly formed "black family" in this affluent all white community.

41. Plaintiffs home was damaged in 2015 by a storm where 5 trees had fallen on the home.

42. Defendant The Shores HOA saw the damaged home and used this opportunity to unlawfully deny Plaintiffs and his family the use of their land.

43. Defendant The Shores plan was unlawful, breach of contract under the protective restrictions and without authority from such documents.

44. Todd Hoogland the association President told Plaintiff in 2015 stated "that the structure will be gone."

45. Todd Hoogland additionally told Plaintiff that Plaintiff would never be able to use his property again.

46. Todd Hoogland has fulfilled that promise by unlawful and illegal means over about four years, where Plaintiffs under duress was forced to put their property up for sale as a

requirement of a Settlement Agreement from the fraudulent litigation to run them off the property. **Exhibit 5**

47. The Defendant The Shores were fully aware that the structure was legal because Tom Beeler informed them, he approved it.

48. Tom Beeler never provided The Shores an Affidavit to the contrary, with any restrictions or alleged agreements concerning the home.

49. Defendants The Shores created "a gang of conspirators" in creating the hostile community with a cause of action to create the hostile environment to deny Plaintiffs the peaceful use of their property for as they had previously for 23 years.

50. Defendant The Shores HOA after failing on the destruction of the home continued all avenues to deny Plaintiffs the peaceful use of the property, including continuing to today six years years later with a hostile environment where Plaintiffs would not be able to use their property ever again in peace.

51. Willard Kolarik, the caretaker knew the truth who was employed by the various Boards through the 25 plus years, specifically since he was hired to bring the gazebo back into the woods and had been paid to maintain it when it was damaged by trees before.

52. Minutes of Shore Owners Meeting, September 12, 2012 the Board knew the gazebo was legal. Under Old Business:

> *"Dave responded to the question raised at last  year's meeting regarding the abandoned structure on Lot 11*__*, Dave reported that the Board has looked into the history regarding this structure and had concluded no action should be taken."*__

53. Defendant The Shores knew there was no legal means to deny Plaintiffs the use of their property.

54. Trees and tree branches have fallen on the gazebo several times, damaging the staircase more than once.

55. Plaintiff hired Willard Kalarik to make the repairs, without ever having to go before the Board for those repairs.

56. Under the law if a restriction is waived, it is waived for all residents.

57.  If this was a requirement of the regulations and applied to all residents, Mr. Kalarik would have had to go before the Board/Architect committee for each and every repair made in the community since he had serviced many other homes in the community. This has never been a requirement.

58. Defendants The Shores HOA Board is specifically targeting Plaintiff in this incident and is treating the Plaintiff differently from other residents including enforcement of the restrictions because they want Plaintiff's family gone, this is discrimination.

59. Plaintiff can no longer use the property because he does not want his wife or daughter life endangered, be mentally abused, yelled at, threatened as Plaintiff was during the 8 weeks he was in Northport in 2015 trying to get dead trees down.

60. A review of the history of the Architectural Committees and previous Boards actions will confirm the actions are not ordinary but atypical actions taken by this Defendant The Shores HOA against Plaintiffs with a different application of the Protective Restrictions against Plaintiffs than other members of the HOA.

61. A review of this history will show the present Defendants The Shores HOA is applying different interpretations of the protective restrictions on Plaintiffs than anyone else in the community.

62. The Board does not have the authority to undo a waiver of a restriction by another Board, architectural committee or residual owner.

63. The contract/protective restrictions allowable action by Defendant The Shores if a restriction was violated is to file litigation after Plaintiff does not come into to compliance after the due process requirements are fulfilled of a notice, and hearing by the Board under section 30 of the contract. Plaintiff submitted the building plans in 1992 to the building department of Leelanau County. **Exhibit 6**

64. Defendants Individuals of The Shores HOA Board did not follow the requirements of the contract and breached the contract in 2015.

65. Defendant The Shores instead approved the repair of the structure, after Plaintiff retained a lawyer. **Exhibit 11.**

66. Defendants The Shores were made aware of their only power under the protective restrictions was litigation for enforcement of the restrictions on July 24, 2015 by their attorney in an email stating that it would cost $10,000 to file litigation.

67. Defendant Karrie Zeits did not tell Defendant The Shores prior to litigation a notice is required and a hearing of the board with charges of the violations is required under Section 30 of the contract.

68. Defendant Karrie Zeits did not inform Defendant The Shores of their requirements of due process under Section 30 of the contract which grants litigation after the due process.

69. Defendants The Shores chose not to use a legal process in 2015 because they did not want to give Plaintiffs legal due process and because Defendants The Shores knew Plaintiffs were not in violation of any restrictions and Plaintiff had a legal right to use their property as they did for 23 years.

70. On July 4, 2015 Plaintiffs visited the gazebo and saw the damage from five falling trees.

71. Plaintiffs realized immediate action was required to preserve the gazebo; it would not survive another tree falling on it or possibly a winter snow load.

72. Plaintiff as a licensed architect and builder, has hired excavators and tree removers before. Plaintiff knew for the safety of the workers a bucket truck was required.

73. Plaintiff knew an access path was required to get the big equipment back in the woods and back out safely.

74. Plaintiff knew there were no restrictions requiring the taking down of dead, diseased or dying trees or a requirement for an access path to get the equipment into the property.

75. Plaintiff called Willard Kalarik to inform him of the situation and offered him the work or could he recommend some local contractors to do the work.

76. Plaintiff did not even get competitive bids because he had worked with Mr. Kalarik for 23 years and found him to be hard working and with impeccable integrity.

77. Willard Kalarik, as caretaker of the property, had worked for the Shores for 25 years and knew the regulations and how they were interpreted and never stated a need of any approval since there are no restrictions and have never been applied for this situation.

78. Willard Kolarik gave Plaintiff the name and phone number of Mr. DeVreindt of DeVreindt Excavating and Mr. Little to cut down the trees.

79. Plaintiff met these people on site on or about July 20, 2015 and received bids of not to exceed $2,800 for excavating with culvert. For the tree removal, Mr. Little gave a price of $1,500 using a bucket truck.

80. Plaintiff met with the excavator of Mr. DeVreindt  and Willard Kalarik on site to make sure the work would meet the requirement of, or unwritten standards of The Shores  on or about July 19, 2015.

81. Willard Kalarik informed the excavator the type of culvert size and length to use and what was expected.

82. This was written into the contract between Plaintiff and Mr. DeVreindt in front of Willard Kalarik, a representative of the The Shores HOA.

83. Plaintiff and the excavator signed the contract, and Plaintiff gave a $500 deposit.

84. The work for the access path was to start the next Monday, July 22, 2015 and immediately following, the trees would be cut down by Mr. Little using a bucket truck.

85. Plaintiff went down State knowing the trees would be down and his next trip up he could start repairs.

86. Plaintiff had put a budget together, materials to order and starting seeking labor for the work.

87. Plaintiff had contacted the building department and talked to a Mr. Pope. He said they were busy and shorthanded. It could take many weeks to process the application.

88. Plaintiff informed him the structure was seriously damaged and needed immediate repair.

89. Mr. Pope stated: make the repairs and then file the permit application.

90. On or about July 22, 2015 the excavator arrived to the site to do the work.

91. Plaintiff called the excavator to see how he was doing, and was informed he was pulled off the site by order of the Defendants The Shores HOA.

92. Willard Kalarik, by order of the Todd Hoogland representing Defendant The Shores, stopped the excavator from fulfilling his contractual obligations, and told him to leave Plaintiffs property.

93. The Defendant The Shores  if they had a problem or thought Plaintiff was in violation of the protective restrictions contract, they should have called Plaintiff immediately to ask for him to stop the work versus taking such unlawful action.

94. Defendant The Shores did this with zero Court Authority, without charges of a protective restriction violation or without a hearing.

95. Defendant The Shores unlawfully trespassed on Plaintiff's property and unlawfully interfered in a contract without any due process required in the contract, which is a breach of the contract.

96. Plaintiff called Willard Kalarik, and was told the Defendant The Shores informed him the Board wants a site plan.

97. Willard Kalarik who has managed the property for 25 years who knows the restrictions better than anyone and how they are enforced, since he is the one who enforces them, never stated" Bill you need a site plan".

98. At this point, Plaintiff thought this was a procedure issue.

99. Plaintiff William Wizinsky contacted the  Defendant The Shores, President Todd Hoogland as soon as he found out a plan was required since it already existed for the access path (07/22/15- 11:15 AM) and he told him he had one to submit for approval to be e-mailed that day.

100. Instead, Plaintiff was clearly informed the following from Todd Hoogland:

*The Association would never approve any plan submitted to them to protect the structure from further damage by falling trees, allow any repair or alteration, or allow an access drive to remove trees or repair or alter or to protect the existing structure on the property from further damage.*

101.   Todd Hoogland told Plaintiff they would not approve anything and "let nature take its course." Todd Hoogland stated "they wanted the structure gone."

102. Defendant The Shores believed if the trees destroyed the structure completely that the structure could not be rebuilt, therefore they decided to commit criminal acts and unlawful actions to insure the destruction of a legal gazebo.

103. Todd Hoogland made it perfectly clear that they (the HOA Board) were going to block any action taken by Plaintiffs to insure "the willful and malicious destruction of property" by the dead and dying trees falling on the structure insuring the destruction of the gazebo.

104. Plaintiff at this point realized the Defendant The Shores HOA criminal intent was the destruction of private property by preventing him from taking dead trees down and denial of Plaintiff's use of his property as he had for 23 years.

105. Plaintiff called the excavator to get him back to the property. He stated he was threatened. He stated he really wanted this work, he needed to feed his family, but cannot afford to be sued.

106. Plaintiff called his local attorney and had him write a document; Plaintiff would indemnify the excavator from litigation if it occurred.

107. The excavator was then told if he did the work, he would never work in the area again.

108. When Defendants The Shores HOA Board decided to threaten Mr. DeVreindt, they denied this hard-working man the right to feed his family.

109. Defendants The Shores in their desire of the destruction of the gazebo trampled on locals with threats and denied these people the right to make a living.

110. Money that would have been paid to small local businesses went to a larger family business from Traverse City instead.

111. Defendant The Shores has no authority to stop a contractor from working on anyone's property without a Court Order.

112. Defendants The Shores HOA Board has no authority to deny the removal of dead trees; nor does the protective restrictions.

113. Plaintiff told Defendant The Shores he would precede ahead, since there are no approval requirements for dead and dying tree removal or an access path, specifically since it is for the protection of a legal structure.

114. Plaintiff told Defendants The Shores HOA Board he would make the required repairs and alterations as per the Protective Restrictions and previous approvals to ensure compliance and to protect his property from further damage.

115. Plaintiff told Defendants The Shores HOA Board he did not want to have to sue the association for damage that could have been prevented, by denial of repair and removal of the dead trees.

116. Plaintiff advised Defendant Todd Hoogland that he had an executed contract with his excavator and interfering with an executed contract was unlawful or contractors working on his property and is actionable in court.

117.  Todd Hoogland ignored this warning and Defendants threatened the excavator where he breeched his contract with Plaintiff and cost Plaintiff additional costs as a direct result of such interference.

118. Plaintiff advised Defendant The Shores to sue him in 2015 as per the protective restrictions if they felt he was in violation of any restrictions, but he was going to protect his property, and protect his property rights. Stop interfering in his business.

119. Defendants The Shores hired an attorney Karrie Zeits who wrote a letter asking Plaintiff to cease and desist.

120. Plaintiff teaches construction law and was told by Defendants The Shores HOA they were going to destroy his structure pure and simple as that, and knew they were acting with no authority, criminally, and in violation of tort law.

121. Plaintiff told Defendant The Shores HOA they need to go to Court to get a legal "Cease and Desist Order" if they feel Plaintiff was in violation of the restrictions and they could sue him after for such violation, but they do not have the authority to prevent him from saving his structure.

122. Defendants could not get a "court order" from any court, because the restrictions do not apply or would be interpreted such or were not meant to be used to destroy property.

123. No Court would order the willful destruction of property, therefore Defendant The Shores made the decision to operate unlawfully and outside their authority and Plaintiffs protective rights of the legal system and the contract of the protective restrictions.

124. Mr. Little also was pressured into not doing the work and told Plaintiff he was too busy.

125. Plaintiff was down State working, trying to find contractors to look at the property.

126. Plaintiff had plans and a scope of work prepared to try to get new contractors.

127. Defendant The Shores posted the attorneys letter on his property to scare away bidding contractors, which has no legal standing and was done as direct interference into Plaintiff's ability to conduct business.

128. Plaintiff had to drive five hours to remove the unlawful posting and stay up north to get bids.

129. Plaintiff on or about July 28, 2015 hired attorney David Rowe to represent him to allow him to cut dead trees down on his property and be allowed to make repairs to protect his structure from further damage.

130. David Rowe contacted Defendant Karrie Zeits Defendants attorney to get the dead trees

down and repairs done.

131. On or about July 29, 2015, Deering Tree Service came to the property to give Plaintiff a

bid which was $3,700 for just cutting down the trees.

132. Plaintiff was forwarded this e-mail:

> **From:** Zeits, Karrie [mailto:kzeits@shrr.com]
> **Sent:** Wednesday, July 29, 2015 2:21 PM
> **To:** drowe@nmichlaw.com
> **Subject:** The Shores Subdivision - Lot 11
>
> Dave:
>
> Attached please find correspondence related to the above.  Since our earlier phone
> conference, my client has informed me that a Deering's Tree Service Truck is in the vicinity of
> your clients' property....Thank you, and please let me know if you have any questions.
>
> Karrie

133. The above e-mail shows that Defendants The Shores HOA Board were stalking

Plaintiff's property.

134. Plaintiff has a legal right to conduct business on his property without interference from

Defendants.

135. Deering Tree service was then called by Defendant The Shores HOA Board or a

conspirator of the Board and told they would be sued.

136. Deering Tree Service no longer returned Plaintiff's phone calls to provide services to

Plaintiff.

137. Plaintiff was working with Popp Excavating and received a price of $5,000 to do the

excavation.

138. The following e-mail was sent to Popp Excavation from Defendants:

> **From:** Norman Golm [mailto:ncgolm@gmail.com]
> **Sent:** Tuesday, July 28, 2015 12:37 PM
> **To:** Debra Rice <office@poppexcavating.com>; Beth & Todd Hoogland <foxview2@gmail.com>
> **Subject:** Cease and Desist Order

*I talked with you a few minutes ago. We witnessed one of your trucks at lot 11 of the Shores Subdivision, I am on the Board of the Shores Subdivision and would like to inform you that the Shores has posted a cease and desist order on the property until a proper set of submittal plans are submitted and approved by the board. A copy of the order is attached.*

139. Defendants The Shores HOA Board had no right to post anything on Plaintiff's property without getting a legal court order, stating from the Court in such matters. This email show direct interference. The Defendants stated they would never approve any plan submitted, not that one is required for access path, therefore this was a rouse for the destruction of private property.

140. Popp Excavating response was:

**From:** *Luke <Luke@poppexcavating.com>*
**To:** *wwizinsky <wwizinsky@aol.com>*
**Subject:** *FW: Cease and Desist Order*
**Date:** *Tue, Jul 28, 2015 1:16 pm*
**Attachments:** *Cease and Desist Letter (7_24_15).DOCX (1124K)*

*Bill,*

*We just received this e-mail from this gentleman on the Board of the Shores development so at this time we cannot move forward with this project.*

*Best regards,*
*Luke Popp*

141. The protective restrictions do not grant Defendant The Shores any authority to interfere in Plaintiff business dealings. Defendant Board's only authority As per Section 30 is to issue a citation and have a public hearing of the HOA Board and then sue if Plaintiff does not come into compliance. If they believed a violation has been committed from the lawsuit, they then can get a stop and desist order, which Defendants were aware of by their attorney Karrie Zeits.

142. Plaintiff had to stay up north and instead of losing two weeks of his time to repair the gazebo, the Plaintiff lost eight weeks' time/work from unlawful direct interference.

143. Defendants direct interference continued still occurred despite the attorneys worked out a solution so Plaintiff could remove dead trees from his property and make repairs.

144. After the agreement by the attorneys was achieved, as Plaintiff was showing new contractors the work Defendant Todd Hoogland at the street and others conspirators were yelling at his contractor(s) in the woods as Plaintiff was going through the scope of work to get bids.

145. Every contractor who walked on to Plaintiff's property was told they would be sued to deter the work to be performed, if they performed any work on his property.

146. Even though not required, but advised by his attorney, Plaintiff submitted an access path drawing which was eventually approved by Defendants. They also through their attorney approved the repairs of the gazebo. **Exhibit 11.**

147. Plaintiff call Mr. DeVreindt to conclude his contract since the Board approved the access path.

148. Mr. DeVreindt continued to breach his contract in fear of retaliation of performing the work.

149. Plaintiff call Popp Excavating, they also felt the risk of being sued was not worth doing the work.

150. The requirement of getting approval of an access path was a rouse, since the threats of litigation continued after The Shores HOA Board approved the plan.

**151.** On August 12, 2015 Defendant Norman Golm filed a false complaint to a Ty Wessell the county commissioner as evidenced in an email to the building inspector after the Board's so-called cooperation, as another attempt to deny Plaintiffs property rights. This was after approval for the repair of the gazebo by their attorney with full knowledge of the Board. This occurred after the access path was put in on August 11, 2016.  **Exhibit 12**

152. Plaintiffs had the township's forester mark the trees that had to be removed and he kindly wrote a letter for Plaintiff to give to the Board confirming the trees had to be removed.

153. Defendant The Shores HOA Board knew this first hand since they trespassed on posted Plaintiff's property numerous times and knew that the dead trees directly above the gazebo would demolish the gazebo.

154. The county has an ordinance requiring the removal of dead trees, Defendant The Shores blocked Plaintiffs ability to comply with this ordinance.

155. Todd Hoogland had made a complaint to the Health Department to a William Crawford, stating Plaintiff and crew were staying in the gazebo and had no sanitation.

156. The gazebo was not habitable to stay in and this was a false report.

157. Based on this Plaintiffs received a letter from the Health Department which was later attached to his Certificate of Occupancy by Defendant County. **Exhibit 37**

158. Plaintiff and the Health Department worked out a solution for future sanitation.

159. William Crawford allowed use of the building as it has been for 23 years with carried in water and a chemical toilet. **Exhibit 22.**

160. William Crawford of the approved the chemical toilet and its installation. **Exhibit 22**

161. In September 2016, a year later, another false report was filed by Todd  Hoogland to the Joe Hubbell the Prosecuting Attorney who contacted the Health Department a William Crawford. **Exhibit 22**

162. FOIA Documents received from Defendant County show emails to the prosecuting Attorney that Plaintiff was in compliance with the Health Department. **Exhibit 22**

163. The County was fully aware from there own emails that Plaintiffs were compliant with the Health Department. There were no Health Department issues. So, when they attached the 2015 Health Department Letter to the Certificate of Occupation as a reason for an unlawful restriction. Defendants County, Janik and Hunter committed fraud.

164. The purpose of restricting the use of the structure as a dwelling was to keep an African American family from using the home.

165. This unlawful restriction violated the 2015 Michigan Residential Code Book R110.2 and R110.3. **Exhibit 41**

166. This fraudulent Certificate of Occupancy assisted all other Defendants as a reason for filing the fraudulent litigation, therefore Defendant County assisted and conspired with all Defendants in the filing of the litigation for the purpose of Coercion, Abuse of Process.

167. In an e-mail from Plaintiffs' attorney on July 29, 2015

> -----Original Message-----
> From: David Rowe <DRowe@nmichlaw.com>
> To: wwizinsky <wwizinsky@aol.com>
> Cc: Katy Bertodatto <KBertodatto@nmichlaw.com>
> Sent: Wed, Jul 29, 2015 2:43 pm
> Subject: FW: The Shores Subdivision - Lot 11
> Bill,

> See below and attached.  Karrie indicated that they would allow you to have access in order to shore up your building and remove the trees but they want to approve the trees greater than 18".  I sent an email confirming that this would not include diseased trees of greater than 18'.

Dave

168. The attached letter from the Board's Attorney dated July 29, 2015  stated  the approval in this paragraph:

> *"It is not the **Association's intent to** prevent your clients from maintaining or **securing the integrity of the shed/gazebo** on lot 11 by replacing some support posts."*

169. With this sentence, **Exhibit 11**,the Plaintiff had the approval of Defendant The Shores to secure the integrity of the gazebo.

170. Once Defendant The Shores and their Defendant Karrie Zeits/Firm did this, they forfeited any claim of past violations of protective restrictions and they confirmed the right to Plaintiff's Gazebo to exist.

171. Defendant The Shores and their Defendant Karrie Zeits/Firm  also forfeited any right to future litigation based on the repairs.

172. When this was stated Defendant The Shores HOA was still blocking the ability to remove dead trees off the homes.

173. Plaintiff had to make repairs with the dead trees on the building and redistribute the weight of the dead trees to new foundation, since the chances of getting the trees down before winter seemed impossible.

174. Defendant The Shores has no legal restrictions or authority over structural issues in the construction of a building or repair of a building.

175. Defendant The Shores and their Defendant Lawyer Karrie Zeits and firm are not structural engineers or architects and are not licensed to approve or deny or change anything designed by a licensed professional to secure the structure integrity.

176. Defendants all received an engineering letter from a licensed structural engineer stating the changes made were required to secure the structural integrity of the building. **Exhibit 36**

177. Several dead trees were leaning on the building and applying significant dead load on the structure leaning it to the south. The structure and foundations were not designed to carry such additional load.

178. Despite the appearance of cooperation to their attorney, Defendants The Shores HOA sabotaged the ability to retain contractors by telling them they would be sued.

179. Defendants The Shores HOA were extremely successful in chasing away contractors even after the attorneys had come to an agreement for the dead trees to come down.

180. Had Defendant The Shores HOA Board not interfere with Plaintiff's first two contractors or the second two contractors the trees would have come down and a simpler fix could have been completed, leaving the building as it was standing for 23 years and structurally secure for the winter.

181. Once the trees would have been removed with the dead load leaning the building south. The building could have been pulled straight.

182. Once the trees were gone new beams, columns and staircase would have occurred as it was originally designed. This would have been a lot simpler fix.

183. Defendant's The Shores goal was the removal of the building as stated by Todd Hoogland verbally several times and by Defendant's actions.

184. No configuration in any means would have been acceptable by Defendant The Shores HOA.

185. The configuration of the building was not an issue the structure was the issue.

186. If you remove the structure, you remove the black family.

187. Evidence to the above three allegation is in the Settlement Agreement, where the issues sued for protective restrictions, where Defendants did not request a new configuration but the removal of the home. **Exhibit 5**

188. Evidence to no configuration as acceptable is in the Settlement Agreement, where the issues sued for protective restrictions, where Defendants did not request a new configuration but the sale of the property; denied use to 18 days a year for three years after giving notice to the Mr. Patmore the Zoning official of use; no short-term rentals and removal of the home after three years if the property does not sell. **Exhibit 5**

189. Defendants did not have this authority for a zoning violation or protective restriction violation as stated in the Settlement Agreement.

190. The removal of the "taxed as a home" **Exhibit 10,** Gazebo was an Ulterior Motive for the litigation.

191. The removal of the Gazebo was the removal of the black family.

192. The purpose of the litigation was the removal of the "black family" by item 1 in the Settlement Agreement was the Wizinsky's had to put their property up for sale within 30 days of the signing of the litigation.

193. The Leelanau Township Ordinances or the protective restrictions do not grant that authority to force someone to put their property up for sale.

194. A zoning violation is a $100 fine in Leelanau Township. **Exhibit16.**

195. Plaintiffs never received a $100 fine.

196. The above allegation is a due process violation and unequal treatment under the law violation.

197. A zoning violation allows a hearing in an open meeting for a defense prior to litigation in Leelanau Township. **Exhibit 16.**

198. Plaintiffs never received a public hearing for a defense prior to litigation.

199. The above allegation is a due process violation and unequal treatment under the law violation.

200. After the horrible wind storm that occurred in early August 2015, the odds of getting the trees down looked less likely. Fortunately, no additional damage occurred to the gazebo.

201. Plaintiff had the approval of the Association for this work, because to **"secure the integrity,"** it had to be designed to take more hits by trees, since the Defendants were successful at chasing away all contractors to cut down dead trees.

202. Plaintiff submitted sealed structural plans and engineering letter supporting the required reinforcement The Shores and the building department Defendant County and Defendant Township. **Exhibit 36**

203. Under the zoning ordinance, SECTION 10.5 NON-CONFORMING USES, STRUCTURES, BUILDINGS AND LOTS.

*1. Permitted building or structure improvements - A residential building or structure which is nonconforming may be altered or rehabilitated if such activity will make it more conforming to the regulations of this Ordinance.*

*2. Minor expansion of residential buildings or structures - The Zoning Administrator may approve the expansion of a residential nonconforming building or structure provided the expansion does not increase the nonconforming aspect of the structure, or the expansion complies with the required setback, height and lot coverage requirements for the zone in which it is located. The expansion shall not increase, by more than 50%, the established footprint of the nonconforming building or structure.*

*5. Permitted repairs - Nothing in this Ordinance shall prevent the repair, reinforcement, reconstruction or other such improvements of a legal nonconforming building or structure, or part thereof, rendered necessary by wear and tear, deterioration, flood, fire or vandalism, provided the repair does not increase the established footprint or cubic content of the original nonconforming structure. The Protective Restrictions has no restrictions related to structural.*

204. Defendant Steve Patmore the zoning official had the legal obligation and the authority to allow the structural changes made to the property to insure its survival.

205. Defendant County had the legal obligation to issue the repair permit to insure the home was not further damaged.

206. Plaintiff had resigned to having his day laborers shore the structure up to make it through the winter and then pack up and go home, hoping the restructuring would allow the structure to survive additional dead trees falling on it and in it a snow load on it and in the interior. Although Plaintiff covered all openings with plastic, the winds would shred it on the cliff.

207. A miracle happened: Plaintiff had a contractor show up in an unmarked vehicle, whereas Defendants The Shores HOA did not know the contractor's identity in order to threaten him with litigation if he performed work on Plaintiff's property.

208. On or about September 11, 2015, Alpiers showed up to put in the access path and cut the dead trees.

209. On that day, almost every governmental agency by Defendant The Shores and their conspirators was called to try to stop the contractor from putting in the access path and cut down dead trees. The zoning department, the building department, the soil erosion department and even the fire department showed up to Plaintiff's property.

210. Defendant The Shores HOA believed these agencies had the authority to stop dead trees from being cut down.

211. Defendants The Shores HOA craziness has put real fear into Plaintiff's wife that harm could occur to their daughter if she was brought to Northport.

212. On that day, the access path was to be put in, the first thing in the morning, Alpiers family run business, the contractor from Traverse City, main office was called and this man's mother was threatened to be sued.

213. Defendant The Shores had this woman in hysteria and she called her son on site.

214. This is how the Defendant The Shores and conspirators treat the community to achieve their unlawful goal.

215. Alpiers had a crew on site with all their equipment and a legal binding contract.  They decided to do the work and was not intimidated as the local contractors by Defendant The Shores HOA .

216. Later in that day, Alpiers had to stop work and could not return until the land dried out because of a hard rain.

217. When Alpiers was to return, the Defendant The Shores threatened to blockade Plaintiffs property with their cars or even Foxview Road to deny access to Alpiers to complete the take down of the dead and dying trees. **Exhibit 43.**

218. Had the Defendant The Shores blocked access, Alpiers stated that they would have called the Sheriff, since the Defendant The Shores HOA had no legal authority to blockade Plaintiff's property.

219. This again is clear evidence that the enforcement of their interpretation of the protective restrictions was a rouse since this occurred after all parties agreed to the trees coming

down, the access path and the repairs. The true intent was the destruction of the gazebo thus denying Plaintiffs new Black Family denied use of their property.

220. On September 15, 2015, the trees finally came down and Plaintiff went home the next day.

221. As a licensed architect Plaintiff has worked for State Government with distributions of multi-million dollar projects/funds and understands the proper legal operations of government.

222. Plaintiff with four decades of experience, Plaintiff knows when government entities are operating as legitimate government agencies and operating within the parameters of their authority derived from the legislative acts and ordinances.

223. Plaintiff also knows when such government operations operate outside their authority and legal capacity and unlawfully.

224. Plaintiff with four decades of experience, Plaintiff knows when a zoning department or building department is operating independently and under the authority of their mandate in a legal manner.

225. Plaintiff home was damaged in 2015 by trees from a storm, he talked to Mr. Pope and he said start making the repairs to protect the property and then get the permit. It would take several weeks because they were shorthanded because Steve Haugen was on vacation in Alaska.

226. In September 2015, when Steve Haugen came out and red tag Plaintiff's home, the building department, and zoning department operations became unlawful, non-independent entities, with an agenda to fill.

227. Defendant Doug Scripts oversaw Defendant Steve Patmore the zoning official.

228. Defendant Chet Janik and Joe Hubbel the County Prosecuting Attorney interfered into the independence of the building department ;Defendant County and Defendant Hunter.

229. As a licensed architect and builder with four decades of experience, Defendant  Steve Patmore with the zoning department and Steve Haugan and Defendant Paul Hunter with the building department never acted in good faith or as a legitimate legal manner in the processing of Plaintiff's permits.

230. In a Settlement Agreement of the Leelanau County Circuit Case, the Case that in this litigation was a Coercion, Abuse of Process.

231.  Plaintiff and his wife were shocked as the number one item by Defendant Leelanau Township and Defendant The Shores wanted Defendants (Plaintiffs) to sell their property.

232. Plaintiffs previous experience with unlawful government (Detroit) requiring a person to sell their property meant it was no longer safe for Plaintiff's family to be using their property, Plaintiff would never be allowed to develop it, and Plaintiff would be possibly physically injured.

233. In mediation it was clearly stated by the mediator and discussed that the Defendant Leelanau Township  and Defendant The Shores HOA wanted Plaintiff to sell their property and they wanted Plaintiff and his family gone!

234. In mediation it was clearly stated by the mediator and discussed that the Defendants Township Board and Defendant The Shores  HOA if we prevailed in litigation we would never, ever be able to use our property in peace again. Because the harassment would continue by Defendants. There would never be allowed to use their property in peace again.

235. The issue was the treatment would only escalate of we went forward and there is no winning in cases like this for RACISM.

236. Plaintiff and his wife took this as a direct threat to their bodily, mental, and property safety. They believed physical harm would occur, specifically against their daughter.

237. Plaintiff's wife said she would never bring their daughter to Northport again out of fear for her and Plaintiff's wife's safety.

238. Plaintiff and his wife signed the agreement, and let them put in all the asinine things in it they wanted, because requiring to sell the property meant more extreme means would be used to force Plaintiffs off the land if they did not sign it. It was signed under duress based on the fraud and criminal acts by Defendants as known from  the FOIA documents.

239. All Defendants were fully aware that Plaintiff's gazebo was always taxed as a home when they sued Plaintiffs, when calling it not a dwelling.

240.  Just as in Detroit, you can try to fight the corrupt system, but in the end, you are gone!

241.  The requirement to sell the property presented a real danger to Plaintiff's family, property, and finances. It meant it was a fight they could not win in a corrupt county system and possible county court system.

242. The operations of Defendant Leelanau "County Building Department" and Defendant Leelanau Township " Zoning Department" mirrored that of the operations of the City of Detroit under the Coleman Young Administration, a corrupt system at that time period!

243. When working in a corrupt system honest people cannot win! It is that simple and Plaintiff and his wife believed the County Circuit Court may not deal squarely to protect the County Officials whom work in the same building. The hometown advantage was discussed in mediation!

244. In talking to previous lawyers about suing Defendants, they stated it would cost $40,000 and the Leelanau County Court decisions would probably be biased to protect the public

officials in the same building. They also stated the end results even if won, the Defendants would ensure increase their harassment out of revenge and ensure the uses of Plaintiffs vacation property was not usable.

245. In Mediation the mediator and Plaintiff, his wife, and attorney discussed the Mutual Release.

246. Defendant Township, Defendant Steve Patmore, Defendants The Shores when signing the Settlement Agreement did not know of the Federal Case filed, because they had not been served with it.

247. The Mediator did not tell Defendants of the pending Federal Law Suit which was filed in place of a counter claim in the Leelanau Circuit Court litigation.

248. Plaintiff and his wife understood from discussion that the signing of the Settlement Agreement, they believed it was only resolution of only the County Court Case.

249. Plaintiff and his wife understood from discussion of the mutual release that it would not adversely affect their rights of the filing and maintaining a Federal Action.

250. Plaintiff and his wife understood from discussion of the mutual release that it would not adversely affect their rights of the filing and maintaining a Federal Action.

251. Plaintiff and his wife gave up all their property rights in the Circuit Court Case, under duress, fraud and from the violation of law and possible felonies, all Defendants committed against them over four years, and the unlawfulness that would continue if they did not sign. Because a Federal Action would allow damages for those actions  committed by all the Defendants against Plaintiff's family.

252. Plaintiff and his wife would not sign the Settlement Agreement or Mutual release that would not allow Defendant's held accountable for the unlawful actions committed against Plaintiff's family.

253. Plaintiff's house was red tagged. As an architect/contractor, if Plaintiff did not respect that tag; Plaintiff could lose his livelihood.

254. Plaintiff submitted several permit applications.  Plaintiff did not care what shape the building would take, none of them would be processed.

255. Plaintiff's daughter was in the dog parade in Northport in 2017. Whereas, two years the building department and zoning department refused to process permits, if zoning was even needed.

256. Plaintiff saw his daughter as the only person of color and wondered if that was the problem.

257. Plaintiff talked to a person he had known for a while that worked for the county.

258. Plaintiff asked him is this happening because his daughter is  African American.

259. Off the record the County Official said yes.

260. Plaintiff suspicions that a permit would never be issued and the Defendant County was going to let his home rot in the rain and snow were validated.

261. Defendants County et al. and Township, and Defendant Steve Patmore was using an illegal condemnation process, for the willful and malicious destruction of private property under MCL750.377.

262. After Plaintiff filing a discrimination complaint in 2017 with the State of Michigan Civil Rights Division, Plaintiff was told by the investigator that not enough evidence existed for prosecution. No one used the "N" word, no racial slurs , a requirement by the investigator stated is needed; in which Plaintiff was informed for prosecution.

263. Just because there was insufficient evidence for prosecution does not mean racism was not the motive for Defendant County, Defendant Township and Defendant The Shores to force Plaintiffs and his family off their property.

264. Defendant County Public Officials and Court System has had public discrimination incidents as per articles of the local paper **Exhibit 2**.

265. Plaintiffs 'claims are in line with the subversive means of systemic racism in the County.

266. In settlement of the discrimination complaint filed by Plaintiff, Defendant County was required to issue Plaintiff a repair permit, by the State of Michigan Civil Rights Division.

267. That was confirmed in an email to Plaintiff that Defendant County made an "adjustment" which was confirmed to refer to the issuing the permit. **Exhibit 4**

268. **voicemail**

**MacDonald, Amy (MDCR)** (MacDonaldA@michigan.gov)To:you Details

Thu, Jun 14, 2018 2:51 pm

Good afternoon,

I am sorry, I was off yesterday and out this afternoon.  But, yes.  The adjustment, although very minor, was the permit.

Take care,

Amy MacDonald


Civil Rights Investigator
Michigan Department of Civil Rights
Cadillac Place
Suite 3-600
3054 West Grand Boulevard
Detroit, MI 48202
Cell: 989-751-6879
Phone: (313) 456-6873
Fax: (313) 456-3773

269. Amy MacDonald stated I did not need to appeal the decision and could file another complaint if the issue continued. **Exhibit 33.**

**270.  Subject:Your voicemail message**

**From:** MacDonald, Amy (MDCR) <MacDonaldA@michigan.gov>

**To:** wwizinsky@aol.com <wwizinsky@aol.com>
**Date:** Mon, Jun 18, 2018 3:45 pm

Good afternoon,

If you have new issues that come up with any of the Respondents, you can file new complaints. The only response needed on the dispo would be if you wanted to appeal the decisions on the cases.  Hope that helps!

Take care,

Amy MacDonald
Civil Rights Investigator
Michigan Department of Civil Rights
Cadillac Place
Suite 3-600
3054 West Grand Boulevard
Detroit, MI 48202
Cell: 989-751-6879
Phone: (313) 456-6873
Fax: (313) 456-3773

271.  Plaintiffs after waiting three winters, it took a very short period to get the repair permit from Defendant County.

272.  The repair permit was issued under the original 1992 land use permit as approved and directed by Defendant Steve Patmore, as reflected in his email to Plaintiff. **Exhibit 18**

**273.  RE: Zoning/Building Solution for lot 11.**

**From:  Steve Patmore <zoningadmin@suttonsbaytwp.com>**
**To:  wwizinsky <wwizinsky@aol.com>; shaugen <shaugen@co.leelanau.mi.us>**
**Cc:  ltsuper <ltsuper@leelanautwp.org>; ltzone <ltzone@leelanautwp.org>**
**Date:  Thu, Dec 14, 2017 10:04 am**
**Attachments** Letter Construction ...pdf (187 KB)

**Mr. Wizinsky,**

**Just to be clear. Consistent with my letter to Leelanau County in June 2017 (attached), a Land Use Permit is required to remove and replace an existing structure. This also includes changing the footprint of an existing structure.**

**A Land Use Permit is not required to remodel an existing structure with no change in footprint or height.**

**Documentation submitted to me shows that the original 1992 structure included exterior steps on the structure up to the main level. At some point these steps were removed.**

**A Land Use Permit will be required to reconstruct these steps.**

**Steve Patmore**

274. To use the original 1992 land use zoning permit, Defendant Steve Patmore told Steve Haugen, which is reflected in the repair plans approved to be constructed, exactly the requirements for zoning approval

**275.** No outer stairs would be allowed, as were in the original plans and as built and used for 23 years as seen written over the plans the zoning requirement, with language on the plan "REMOVE AS ZONING REQUIREMENTS." as seen below on the actual plans.

**Exhibit 19**



276. The stairs would have to fall in the 12 foot by 20 foot plus as built foot print. The lower floor was allowed to be filled in to accommodate the stairs since it fell in the original approved footprint and the height of the building met previous and present zoning requirements.

277. Defendant Township used this fraudulent approach was to make the structure unusable, since a full to code stairs would take up over 50% of the space and then deny Plaintiffs their property rights by having an operational home.

278. Defendant Township and Defendant Steve Patmore believed a legally compliant to code stairs inside the building could not be able to be built in such a tight space and have a usable home.

279. Defendant Steve Patmore stated in an email the structure was non-conforming. **Exhibit 17.**

280. Under the ordinances, Plaintiff's home would be classified as a non-conforming structure, because the original ordinances it was built under have changed.

281. Under this ordinance the building is grandfathered-in and additions are allowed under zoning, outside the original footprint.

282. Defendant Township and  Defendant Steve Patmore participated in the zoning process and had the ability to challenge the permit being issued prior to the work being done under the permit specifically to their requirements.

283. Defendant Township and Defendant Steve Patmore did not challenge or object to the permit being issued or work be done as they required in their requirements for use of the 1992 Land Use Permit in email **Exhibit 18.**

284. Defendant The Shores HOA was fully aware that Plaintiffs had received his repair permit and did not challenge it or try to stop it issue a notice accusing Plaintiff of an alleged protective restriction, such a complaint could stop the permit process by the County.

285. Defendant The Shores HOA issued no notice or letter to halt repairs or issued anything to prevent the repairs being made.

286. Defendant The Shores HOA to correct a protective restriction had no board meeting or hearing for Plaintiffs to defend against any alleged violation.

287. There was no litigation to stop the investment of funds for the repairs by Defendant The Shores to stop Plaintiff investing money in the repairs.

288. The approved plans were public record and Defendant The Shores could review the approved plans and had the opportunity to stop the repairs as per the plans if they saw a violation of the protective restrictions before the permit was issued or the work completed.

289. Defendant Karrie Zeits asked Amy MacDonald when was the work going to commence for the repairs. And was told in the email below. **Exhibit 40**

290. **Wizinsky v. The Shores**

Thu, May 3, 2018 3:17 pm

**MacDonald, Amy (MDCR)** (MacDonaldA@michigan.gov)To:you + 1 more Details

Good afternoon,

 Thank you for both speaking with me today.  I wanted to send a brief email to let Mr. Wizinsky know that the Association has declined the last settlement offer.  And, as discussed earlier, our office is closing the file.  Mr. Wizinsky had asked that I inform you Ms. Zeits that he is planning to work on his property soon since the building permit has been obtained.  You had asked when this may occur.  Mr. Wizinsky did not have a definitive date when he and talked.

 Best of luck to you all,

 Amy MacDonald
Civil Rights Investigator
Michigan Department of Civil Rights
Cadillac Place
Suite 3-600
3054 West Grand Boulevard
Detroit, MI 48202
Phone: (313) 456-6873
Fax: (313) 456-3773

291. Defendant Karrie Zeits and Defendant The Shores HOA took no action to stop the repairs from occurring as per Section 30 of the protective restriction before Plaintiff was to invest major money into the repairs.

292. Plaintiff built exactly to the plans approved by zoning and the building department in the 2018 permit issued.

293. Plaintiff had invested over $35,000 to cut dead trees; to restructure home to support dead trees, (since Defendants The Shores prevented contractors from removing them) to remove new just built stairs and engineered support structure on exterior of original home, and build new stairs in footprint of original home; with other repairs.

294. Plaintiff's house has always been taxed as a single-family ranch on piers class D-10 home. **Exhibit 10**.

295. Defendant County when they came out to inspect were shocked that Plaintiff had a viable home with a legal staircase meeting code that took up just under 50% of the floor space.

296. Defendant County asked Plaintiff to do a few things and Plaintiff did. It was re-inspected and approved.

297. Defendant County inspected the repairs and they confirmed to being built exactly to the approved plans that had zoning approval and met all codes and issued a Certificate of Occupancy stating this: **Exhibit 20**

**"This is to certify that this building or structure has been inspected and constructed in accordance with the building permit and <u>found to be in compliance with the permit, the code, and other applicable law and ordinances."</u>**

298. Defendant Karrie Zeits/ Firm and Defendant The Shores approved the repairs by omission, knowing full well they were going to be built and by not objecting the construction as per their obligation of the contract under Section 30, prior to the construction.

299.  No objection by The Shores is approval by waiving their authority prior to construction.

300. Defendant County, Defendant The Shores, Defendant Steve Patmore, Defendant Chet Janik and Defendant Paul Hunter had to implement Plan B since the SOM Civil Rights complaint required them allow the repairs and use of the home.

301.  Plan B was the "Coersion, Abuse of Process" to keep Plaintiff's family off of their property, since Plaintiff's home was built to code and met Defendant Steve Patmore zoning requirements.

302. Plaintiff in 2017 had FOIA'ed the County and Township records after the discrimination complaint was filed.

303. The records, emails showed complete compliance in health, zoning, and that the home was taxed as a home. In 2017 none of these issues were issues.

304. None of these were issues were before the permit was issued.

305. In 2018 Plan B, the prosecuting attorney Joe Hubbell had full knowledge (through emails) that the health department approved Plaintiffs method of sanitation for how they used the property, like a hunting cabin (no hunting) or other property's as in the emails below.

**Exhibit 22.**

306. **Subject: RE: Gazebo on lot 11, the Shores 45-008-800-011-00**
 **From: Bill Crawford <WCrawford@bldhd.org>**
**To: wwizinsky@aol.com <wwizinsky@aol.com>**
Date: Wed, Sep 21, 2016 10:27 am
**Mr Wizinsky,**
**I got your phone message earlier this week and your written response and am responding that the HD complaint matter is closed with my letter of September 13, 2016. If you have further questions, feel free to contact me at 231 256-0214.**

**Bill Crawford**
**Sanitarian, BLDHD**

307. **From: wwizinsky@aol.com [mailto:wwizinsky@aol.com]**
**Sent: Saturday, September 17, 2016 12:30 PM**
**To: BillCrawford;**
shaugen@co.leelanau.mi.us; ltzone@leelanautwp.org; greenbrigid@gmail.com

**Subject: Gazebo on lot 1 1, the Shores 45-008-800-011-00**
  **Hi Mr. Crawford**
  **Please find the attached response to your letter.**

**Hi Steve Haugen,**
**It was nice talking to you this week The attached letter is FYI,**
**Hi Steve Patmore, Please find the attached letter FYI,**
  **Hi Brigid Hart, Please forward this e-mail to Todd Hoogland, I could not identify his email address.**

308. Defendant County further investigated the matter and the Defendant County and

Defendant Township and Defendant Attorneys/Firms were fully aware Plaintiff was

in compliance with the Health Department based on their own documents Plaintiff

received through FOIA. Joe Hubbell is the County Prosecuting Attorney and was

involved in the creation of the Certificate of Occupancy.

309.    **Bill Crawford<WCrawford@bldhd.org>**
        **Monday,    19, 2016 8:37**
  **Joe Hubbell**
  **FW: Scanned image from MX•M364N**
  **Attachments:**       scan@bldhd.org_20160919_082208.pdf

  **Mr. Hubbell,**
  **Attached is the response to my letter to Mr. Wizinsky. I find it an acceptable response and will be closing the HD complaint file on the matter. Let me know if you have any questions.**
    **Bill Crawford**

310.  From the attached letter in the e-mail : **Exhibit 22.**

**"During our conversation, you would be willing to use a commercial chemical toilet on the site on the site instead of the current rudimentary waste system if that would allow you to use of the property as you had previously done. I believe that would address environmental and health concerns regarding this matter and meet the intent the Leelanau County Environmental Health Regulations."**

311. This above letter was copied to Joseph Hubbell, Prosecuting Attorney, Steve Haugen Leelanau County Construction Code Official and Todd Hoogland, The Shores Homeowners Associations by both mailed and emailed to the County.

312. Everyone was fully aware of full compliance with the Health Department. Additional evidence is, Mr. Hubbell email sent on September 19, 2016 at 9:22 AM. asked about the water:

**313. "What about the lack of a water system?"**

314. Mr. Crawford responded the same day at 10:22 AM.

**315. "If there is no plumbing in the structure, which there isn't from my understanding, drinking water can be transported in and out as needed. This is similar to our requirement tenting on property."**

316. When the County issued the Certificate of Occupancy with the restriction based on the resolved 2015 Health Department, **Exhibit 37**, Letter from Defendant 2015 HD complaint, they committed FRAUD!

317. According to Defendants County and Defendant Paul Hunter, the Building Official: Joe Hubbell, the Prosecuting Attorney, ordered the fraudulent health department letter attached to the Certificate of Occupancy for a utility structure, when he knew from his 2016 emails and Mr. Crawford in an email stated this complaint is closed.

**318.** Defendant County changed the use of the building from gazebo from the 1992 permit to gazebo/shed which is on the  2018 Building permit which is a  2015 Michigan Residential code violation  under R110.2. **Exhibit 41.**

319. According to Defendant County and Defendant Paul Hunter, the Building Official: Joe Hubbell, the Prosecuting Attorney, ordered Paul Hunter to change use on the Certificate of

Occupancy issued instead of for Gazebo change use to Utility Structure which is a  2015

Michigan Residential code violation  under R110.2: **Exhibit 41.**

320. **R110.2 Change in Use**

A change in the character or use of an existing structure shall not be made, except as specified in the Michigan building code

321. According to Defendant County and Defendant Paul Hunter, the Building Official: Joe

Hubbell, the Prosecuting Attorney, ordered Defendant County through Defendant Paul

Hunter to falsify the Certificate of Occupancy by putting restrictions on the Certificate of

Occupancy that were not on the permits which is a due process violation in the 2015

Michigan Residential code violation under R110.3: **Exhibit 41.**

322. **110.3 Certificate Issued**

After the building official inspects the building or structure and finds no violations of the provisions of this code or other laws that are enforced by the department and all permit and plan review fees are paid, the building official shall issue a certificate of occupancy that contains all of the following:

   **11. Any special stipulations and conditions of the building permit.**

323. Under "Special stipulations and condition:

STRUCTURE MAY NOT BE USED AS A DWELLING PER LEELANAU TOWNSHIP ZONING ADMINSTRATOR CORRESPONDANCE DATED DEC 12, 2017 AND BENZIE LEELLANAU HEALTH DEPARTMENT CERITIFIED COORESPONDENCE DATED AUGUST 13 , 2015

324. Defendant County committed fraud by adding these STIPULATIONS. This fraud was used

to assist their conspiracy Defendants in an organized plan for the planned litigation to set

Plaintiffs up in the scheme for Coercion, Abuse of Process.

325. As seen in the 2018 Building Permit there is a place for stipulations to be in compliance with the Code Book R110.3, which they use for white people, **Exhibit 42:**

**Work Description:** Residential utility structure, Grandfathered, 12 x 30, structurally support original structure design after storm

**Stipulations:**

326. There was no reason not to put the stipulations on the permit since the stipulations were known prior to the permit issued.  The stipulations on the Certificate of Occupancy **Exhibit 20** also has a stipulations spot as per the permit. So, this is how it is done for white people!

**Special stipulations and conditions:**

STRUCTURE MAY NOT BE USED AS A DWELLING PER LEELANAU TOWNSHIP ZONING ADMINISTRATOR CORRESPONDENCE DATED DEC 12, 2017 AND BENZIE LEELANAU HEALTH DEPARTMENT CERTIFIED LETTER DATED AUG. 13, 2015

327.  Defendant County does put the stipulations on the building permit for white people in the County as normal practice. Defendants County's deceit to defraud was to deny use!

328. By putting in the stipulation from the December 12, 2017 email shows it predates the 2018 permit. Where it could be put on        the building permit.

329.  This Defendant Patmore email was obtained by fraud and coercion, abuse of process by Defendant County.

330. From the June 22, 2018 meeting memo **Exhibit 3** the County under threat of litigation forced Plaintiff to file for an unneeded Land Use Permit, which is Coercion, abuse of process.

331.  So, the conspirator Township could directly sue to deny use by a black family of the property. Defendant's County Plan B, falsifying the Certificate of Occupancy after two permits issued one in1992 and one in 2018,  both which required zoning and health

43

approval prior to issuing of a building permit, the plan approval process and the final inspection approvals used this fraud to deny use by a "Black Family" of their vacation property used previously for decades as white people. **Exhibit 20**

332.   Defendant Steve Patmore months before writing his December 12th 2017 email, initialed and dated a copy of the assessor's tax statement showing he knew Plaintiffs were taxed as a home, when he declared it was not a dwelling. **Exhibit 44.**

333.   Defendant Steve Patmore did not contact the accessing department to change being taxed as a home, when declaring it was not a dwelling. Plaintiffs were still taxed as a home.

334.   Defendant Steve Patmore did not base it on any ordinance, but in his opinion, therefore Plaintiffs could not sleep in it. This email was then attached to the fraudulent Certificate of Occupancy, calling it a utility structure in direct violation of the 2015 Michigan Residential Code Book by unlawfully changing use. **Exhibit 41.**

335.   Almost all Defendants knew the Gazebo was taxed as a home. **Exhibit 10.**

336.   Defendant Township through Defendant Steve Patmore claimed the Gazebo now as a dwelling in the Settlement Agreement, just as it is taxed, so the December 12th 2017 email, stating not a dwelling and the Certificate of Occupancy denying use based on this email was reversed by Defendant Steve Patmore in mediation in the Settlement Agreement.

**"1. Defendants shall list the property for sale within 30 days of the date of this agreement.**

**3. If the property is not sold by September 30, 2021, then the pocket judgment may be entered and the structure will be removed and the property returned to its natural state by October 30, 2021.**

**5. <u>Defendants may dwell on the property for no more than 18 nights per year starting the Friday of Memorial Day and ending on the October 31. Steve Patmore will be notified 3 days prior to any nights' stay.</u>**

**<u>13. Defendants agree to no short term rentals on the property.</u>"**

337. Item 1 of the Settlement Agreement was Coercion, an abuse of process and denied Plaintiffs their ownership of the property and inheritance of their property to their daughter of their home not based on any zoning ordinance or protective restriction.

338. Item 3 of the Settlement Agreement was Coercion, an abuse of process and denied Plaintiffs use of their home if the property is not sold in three years, denied use  by requiring Plaintiffs to remove it thus permentally denying use of a black family not based on any zoning ordinance or protective restriction.

339. Defendants' actions would never allow Plaintiffs a primary home on the property, deny development of the property and deny Plaintiff architectural fees and construction fees for development of his property or rental of a home on the property or inheritance of the developed property to their African American daughter.

340. Defendants Township, The Shores and Steve Patmore saw it as a dwelling in Item 5 of the Settlement Agreement and unlawfully limited use of his property (even though taxed for a full year as home) by Plaintiffs of  their home to 18 days a year. Thus to limit use of the home by a black family in the community. This limiteduse was only allowed after 3 days' notice to Steve Patmore.

341.  So, Item 5 was in the contract so Defendant Patmore could tell Plaintiffs neighbors the when the black family is on their property.

342. The previous allegation is Coercion, abuse of process, done with zero authority and not based on any zoning ordinance or protective restriction.

343. In Item 13 of the Settlement Agreement Defendant Township saw it as a vacation home and unlawfully denied use as a vacation home but could be used as a long-term rental by anyone else other than Plaintiffs.

344. The previous allegation is coercion, an abuse of process, done with zero authority and not based on any zoning ordinance or protective restriction at the time.

345. A zoning violation in Leelanau Township is a $100 fine.

346. The Certificate of Occupancy restrictions was not an enforceable zoning violation, because no one could confirm someone sleeping in the home without trespassing on the property.

**347.** Defendants did not even know when Plaintiffs was on the property let alone if he was sleeping in the home.

**348.** That is why 3- day notice was required so people know when Plaintiffs were using their property since no one knew when they were on the property (except possibly lot 12).

**349.** So, Defendant County through Paul Hunter set Plaintiffs up to catch him sleeping on their property, **Exhibit 24** an email for an ENTRAPMENT PLAN.

350. On June 22, 2017, Defendant Chet Janik confirmed in writing from  Defendant's Patmore "meeting minutes" the public officials racist opinion 6 weeks later,  the view that no permit was ever going to be issued to Plaintiff. **Exhibit 3**

351. This meeting was to deny Plaintiffs their property rights between the Defendants Township and County. **Exhibit 3.**

352. Plaintiffs had applied for a permit several times, several different ways and none of them were processed until two year four months later.

353. The State of Michigan Civil Rights Division required the County as settlement to issue a permit from a filed racial discrimination complaint as being the adjustment by the County.  **Exhibit 4.**

354. Plaintiffs had the red tag on their exposed home for three winters causing significant additional damage.

355. In 2017, Plaintiffs were required to submit for a new Land Use Permit as seen in an internal letter as a result of a "June 22, 2017 Meeting". In the letter it stated Plaintiffs would need a new land use permit if he tore down his just repaired home and built a new one. **Exhibit 13.**

356. That means Plaintiffs could use his 1992 Land Use permit because his building permit application did not state that he was tearing down his home and build a new one therefore a new Land use permit was not needed.

357. Thereby the 2017 letter, there was an approval by zoning to use the 1992 Land Use Plan because Plaintiffs Permit did not say tear down and build new! **Exhibit 13.**

358. Defendant County issued a citation from the Building Department, to come in compliance to force a new Land Permit Application, **Exhibit 15.**

359. Plaintiffs filed an application for the unneeded new Land Use Permit based on the citation.

360. Plaintiffs were not supposed to be a recipient of the letter **Exhibit 13,** as copied; it was an internal letter.

361. Then five months later Plaintiffs would receive the e-mail stating his home was not a dwelling and denying a land use permit on December 12, 2017. **Exhibit 17.**

362. Defendant Steve Patmore violated Ordinance 10.3 (3) because a denial is to occur in 45 days. Denial of Permits - The Zoning Administrator shall promptly (i.e. within 45 working days) inform the applicant of the denial of a Land Use Permit if, in his/her opinion, such planned building or structure or land use does not comply with the provisions of this Ordinance. **Exhibit 16.**

363. Defendant Steve Patmore did not issue a denial of the permit in 45 days.

364. Patmore the Zoning Administer knew Plaintiffs were taxed as a home with his initials on a tax statement, when he stated it was not a dwelling. **Exhibit 44.**

365. If this false charge of needing a Land Use Permit was never required, the 1992 Land Use Permit should have been used. Then there would no reason for a Land Use Permit being denied.

366. If this false charge of needing a Land Use Permit was never required, the 1992 Land Use Permit should have been used. There would no reason for zoning to have a voice stating the taxed as a home, is not be a dwelling.

367. Defendant County wanted zoning to be involved. This gave zoning the opportunity to state it was not a dwelling, thus denying use, showing conspiracy.

368. This is a set-up by the Defendants County/Township. Ultimately, Appellant Building Permit was issued using the 1992 Land Use Permit based on Mr. Patmore's December 14, 2017 email. **Exhibit 18.**

369. Defendant County is liable for issuing a permit if the Court finds a new Land Use Permit was required by not confirming zoning approval before issuing a permit.

370. Plaintiff did not file for an appeal of Mr. Patmore's denial 2017 denial email because Defendant Patmore gave Plaintiffs a resolution in an email two days later  in Mr.

Patmore's December 14, 2017 email: **RE: Zoning/Building Solution for lot 11, Exhibit 18.**

371. Defendant Mr. Patmore the Zoning Official sent Plaintiffs an email just 2 days later on December 14, 2017 the method to use the 1992 Land Use Permit. **RE: Zoning/Building Solution for lot 11. Exhibit 18.**

372.  The Civil Rights Division may have changed Patmore's decision, and Plaintiff built to the requirements dictated by zoning of removal of the exterior stairs and deck.

373.  Defendant's Patmore's email thus created a path for the building permit to be issued and copied that path to Steve Haugen the building inspector and Doug Scripps his boss. **Exhibit 18.**

374. Based on that email to Steve Haugen; the submitted plans were approved and had changes made in compliance with Patmore's Requirements as seen below, they were written on the plan by the Building Department or Zoning Department.



375. On the Plans over the original deck and stairs, it stated they have to be removed. The stairs had to be moved to inside the home, despite them being on the original plans, built approved that way in 1992. **Exhibit 19**

376. Plaintiff's received approval for the Permit on Jan. 26, 2018. Patmore's zoning requirement is documented with over the deck and plans" **Remove as Zoning Requirement". Exhibit 19**

377. Plaintiffs built exactly to Defendant Patmore requirements; therefore, Plaintiff was always in compliance with zoning.

378. Defendant Patmore was fully aware of the County issuing a permit for the building because they had no choice as per the SOM Civil rights Division.

379. Defendant Patmore email  . **RE: Zoning/Building Solution for lot 11.** shows he was involved and at that time he could have stopped the permit process by stating a zoning violation needed to be corrected.

380. Defendant Patmore was aware the repairs/alteration of moving the stairs inside was going to happen, thereby all zoning issues should have been resolved prior to repairs.

381.  Defendant Patmore had the authority and legal obligation to stop the building permit from being issued by Defendant County if he thought there was a zoning violation.

382. Plaintiffs spent over $35,000 on repairs based on the Defendant County's permit and Defendants Patmore's requirements.

383. Defendant Patmore the Zoning official was trying to render the tiny home unusable. A full to code stair case took up 50% of the floor area in the tiny home.

384. When the Building Inspectors inspected it, they were shocked Plaintiffs were able to design a functioning home with a full to code stairs on the inside.

385. The removal of the Stairs and Deck was the requirements to use the 1992 Land Use

Permit!

386. In the Circuit Court Case Plaintiffs were accused of not getting a new 2018 Land Use

Permit by Defendants Township/Shores in the litigation.  **Exhibit 39,**

**66. Sections 11.13 through 11.15 of the Townships Zoning Ordinances require that a structure once approved be constructed in comformaity with the approval plans and that a land use permit be obtained prior conducting any activity requiring  a land use permit. "**

387. The Building Department cannot even issue a Building Permit without Zoning and Health

Approval, therefore if they did it was then Defendant County is liable for damages.


388. In a memo, Memo To File written by Defendant Steve Patmore. **Exhibit 3** dated

6/22/2017 is a is definitive of prejudice of  Defendant  County,/Chet Janik and

Defendant Steve Patmore confirming Defendants wanted Plaintiffs home removed.

389. The previous allegation was made without an inspection supporting the removal.

390.  This memo also shows conspiracy to defraud as well as violation of due process and

equal treatment under the law under the 42 U.S. Code § 1985 because the goal of meeting

was to deny Plaintiffs of their property rights through deceit and fraud.

391. Defendant Patmore the Township Zoning Official was requested to attend by Doug

Scripps the Township Supervisor and head of the Township Board (his boss). **Exhibit 3.**

392. According to the Civil Rights Division investigation Doug Scripts and Todd Hoogland ,

The Shores HOA President are very good friends.

393. The meeting had in attendance Steve Haugen the Building Official, Chet Janik the top

County Boss County Administrator and Ty Wessell a County Commissioner to discuss a

repair building permit for Mr. Wizinsky's damaged home two years later by top officials of the County. **Exhibit 3.**

394. This is abnormal and **"interference in a permit process"** for these people to meet for a simple repair permit for a well-established tiny home of 25 years.

395. From the memo: **"Leelanau County received a building permit application from the owner last fall. (to replace structure)" Exhibit 3.**

396. The house was exposed to the elements for two winters with a Stop Order in the fall of 2015 denying repair until a permit was issued.

397. There was no request by Plaintiffs to replace structure on his application.

398. That statement of replacing the building was a lie.

399. The permit was for finishing up repairs since Plaintiff got a verbal approval from Mr. Pope of building department to make the repairs and then get the permit after.

400. Plaintiff had already invested significant funds for repairs. Therefore, he would not want to tear down and rebuild.

401. The first thing that caught Plaintiff's attention was nine months have passed from his last application and these top officials knew about it and blocked it.

402. They intentional blocked the permit process which is a due process violation under Federal Law as per case law.

403. Plaintiff had a 1992 permit, inspection and approval, that gave Plaintiff had the right to protect his property interests.

404. Defendant County denied Plaintiffs  Constitutional rights, thus violating due process for an illegal condemnation process.

405. Plaintiff received in late 2017 the FOIA documents which show no inspection since 1992, where his gazebo was approved.

406. Plaintiff would have to have known if an inspection was conducted, since the home is locked.

407. There was no record of an inspection in his November 2017 FOIA documents after the June 22, 2017 Meeting.

408. Then Defendant Chet Janik representing Defendant County stated that is now on record without any type of official inspection on record prior to this statement: **" Leelanau County has determined the existing structure is in violation of the building code.** "And, **" Leelanau County is MANDATING that the existing structure be removed."** And,**"Commissioner Wessell &C.A, Janik concerned that the existing structure is being occupied" . Exhibit 3.**

409. The home was not habitable and not being used because it was still open to the elements, so this was a lie.

410. This stop order was issued with no intension of ever issuing a permit as seen by Defendant Chet Janik mandating the building removal. **Exhibit 3.**

411. Plaintiff filed for a land use permit shortly after that meeting and it took five months for a response. **Exhibit 18.**

412. Plaintiff repeatedly ask; what was needed for a permit? As seen in the numerous emails to Defendants for the permit.

413. Chet Janik  sent  an email June 22, 2017 to Steve Haugen. **Exhibit 14.  "Steve H- Based on this written confirmation, I am assuming you will be sending out a letter to Mr. Wizinsky within the next week notifying him of the Zoning Administrator's decision and the fact the structure is out of compliance and therefore he needs to meet the current codes or remove the building within the allotted period. Failure to do so, will result in the case being referred to the Courts and the legal process will commence."**

414. This was Coercion abuse of process to threaten Court proceedings or litigation to force Plaintiffs to file for the unneeded Land Use Permit.

415.  A 1992 built building for repair does not have to meet 2017 codes because they are grandfathered in, even if an inspection was completed. This confirms the goal of the County based on no recorded code or documented ordinance violation, **the denial of a permit, a fraudulent scheme for the removal of the home.**

416. This document  **Exhibit 3,** confirms Plaintiff was never going to receive a repair permit.

417. It appears Defendant County set the goal and then had to find a way to achieve it.

418. They did in mediation when their Defendant Township partner forced the sale of the property and the removal of the home, in Defendants dictated requirements of the Settlement Agreement **Exhibit 5.**

419. Defendant County's goal was achieved through conspiracy with Defendant Township. When Plaintiff filed for a Building Permit and the County refused to process it, it was a violation of due process.

420.  It was done deliberately by top officials which interfered in the process. The only reason a permit was finally issued was because Plaintiff filed a racial discrimination complaint. **Exhibit 4.**

421.  Defendant County after inspection issued a fraudulent Certificate of Occupancy. **Exhibit 20.**

422.  Defendant County falsified the Certificate of Occupancy to deny use and outlaw use by changing the use and adding restrictions on the Certificate that was not on either the 1992 original building permit and the 2018 repair permit. **Exhibit 20.**

423.  Defendant County changed use from Gazebo to Gazebo/Shed.

424.  It is against R110.2 of the Michigan Residential Code Book to change use. **Exhibit 41.**

425.  It is against R110.3 of the Michigan Residential Code Book to put restrictions on a Certificate of Occupancy that are not on the Building Permit(s). **Exhibit 41.**

426.  There is a purpose for this, a person needs to know the restrictions before they build or they may not build it, if the restrictions deny use as intended.

427.  The original 1992 Building Permit had no stipulations on it. **Exhibit 8.**

428.  The 2018 Building Permit had no stipulations on it. **Exhibit 42.**

429.  Thereby, Defendant County violated R110.3 by putting stipulations on the Certificate of Occupancy that were not on the permits. **Exhibit 41.**

430.  Defendant County's original plan was to deny the permit and by red tagging the building denied the repair process, to allow nature destroy the building by simply not processing the permit!

**431.** It was an illegal condemnation process since the home was exposed to the elements.

432. Defendant County had to deny use as a dwelling to keep a "black family" out of the community! So, Plan B was **Exhibit 20**, denied use through the Certificate of Occupancy.

**433.** Defendant County had to outlaw sleeping in the home, "to set Plaintiffs up for litigation "by Defendant Township.

**434.** Plaintiff is on almost 2 acres of heavily wooded land, thereby no one even knows when Plaintiffs are on the property since the home is not visible from the street and not visible from Lot 12, with leaf cover during the summer.

**435.** On July 11, 2018 the fraudulent Certificate of Occupancy was issued denying use as a dwelling. **Exhibit 20.**

**436.** On July 19, 2018 Paul Hunter, the Building Official sent an email requesting a reinspection of the fireplace, despite he was just there 8 days earlier. **Exhibit 24.**

**437.**

**(No subject) Exhibit 24.**

Thu, Jul 19, 2018 9:29 am

███████@co.leelanau.mi.us (phunter@co.leelanau.mi.us)To:you DetailsBill,

Just an update. Per our conversation on 7-11-2018 at your property, a permit is needed for the wood stove in your structure. Installation instructions are required at time of inspection.

Paul Hunter.

438. Defendants County/Hunter needed an excuse to lure Plaintiffs up north, after the Certificate of Occupancy with the fraudulent restrictions, denying use, to catch Plaintiffs violating the Certificate Restrictions.

439. This plan required coordination by requiring a second inspection so they knew when Plaintiff was on the property so a private detective could be hired to spy on Plaintiff.

440. The Private Detective report used as an exhibit in the litigation was created by the Defendant County actions of first creating a fraudulent Certificate of Occupancy. **Exhibit 20.**

441.  Defendant County/Hunter by luring Plaintiffs up from a  false need of a   fireplace inspection when they viewed he just review it just 8 days earlier. So, they would know the date Plaintiff would be on the property. Since it was high vacation season and everything was booked, they assumed Plaintiff would sleep in his home.

442. The report stated an assumption Plaintiff was sleeping in their home, giving an excuse to sue as a zoning violation. **Exhibit 26.**

443. There was no actual proof of anyone sleeping in the home, only an assumption. **Exhibit 26.**

444. That assumption was based on there were no lights on. **Exhibit 26.**

445. If caught for such a zoning violation, it was a required $100 ticket/citation according to the Township 10.6 zoning ordinance. **Exhibit 16.**

446. Plaintiff spent over $35,000 defending fraudulent litigation.

447. Litigation was filed for allegedly sleeping in Plaintiff's home, based on a fraudulent Certificate of Occupancy, versus issuing a $100 fine!

448. The inspection of the fireplace was approved as July 28, 2018. **Exhibit 25.**

449. The Private Detective Report was for July 29 to July 30.  **Exhibit 26.**

450. The meeting with the Deendant's Township and Lawyer  was on the 31st. Private Detective Report: **Exhibit 26.**

**"Meeting with Township officials: At the request of Mr. Hoogland, on Tuesday, July 31st I attended a meeting at Leelanau Township Office at 11:30 AM. Present were the following township officials:**
**Township Supervisor Doug Scripps**

**Township Zoning Administrator Steve Patmore**
**Shore Board Members Todd Hoogland and Randy Harmon**
**Shore Property Owners Steve Holmes**
**Attorney Zeits, representing the Shores Association"**

451. Defendants Township/Shores hired a private detective to act as the sleep police.

452. Plaintiff and his family were lured up north by Defendant Paul Hunter and Defendant County that he wanted to inspect the fireplace again. **Exhibit 24.**

453. Plaintiff paid several hundred dollars for the fireplace permit.

454. Defendant Paul Hunter and Defendant County inspected it again and approved it for Plaintiffs home now labelled "utility structure".

455. Defendant Paul Hunter when leaving was looking around to as if they were being watched.

456. The detective in his report said he flashed a flashlight in the car (about 50 feet away through a forest at night) and he saw we were not in the car so we must have been sleeping in the building. **Exhibit 26.**

457. On September 11, 2018, the Township Board, Defendant Township as per direction of Defendant Steve Patmore guised as a Zoning Official under the guidance of their Defendant Attorney in a closed session decided to sue Plaintiffs as co-plaintiffs for a zoning violation.

458. Defendants Township/Patmore did not issue Plaintiffs a $100 fine.

459. Defendants Township/Patmore did not invite Plaintiffs to a hearing.

460. Defendants Township/Patmore did not ask Plaintiffs to come in compliance with a zoning violation prior to litigation.

461. Defendants Township/Patmore did not know if Plaintiffs would have come in compliance with the zoning violation if asked to come into compliance.

462. Defendants Township/Patmore violated Leelanau Township Zoning Ordinance 10.6. **Exhibit 16.**

463. Defendants Township/Patmore violated the Michigan Zoning Enabling Act. **Exhibit 38.**

464. Defendants Township/Patmore did not have an open meeting for the decision to sue Plaintiffs.

465. Defendants Township/Patmore violated the Open meetings act on September 11, 2018 by not having an Open meeting in discussing the litigation against Plaintiffs. **Exhibit 30.**

466. The September 11, 2018 Leelanau Township Board Meeting agenda did not state anything about Lot 11 of The Shores on it. **Exhibit 29.**

467. The September 11, 2018 Leelanau Township Board Meeting agenda did not state anything about a zoning violation on it. **Exhibit 29.**

468. The September 11, 2018 Leelanau Township Board Meeting agenda did not state anything about litigation on it. **Exhibit 29.**

469. The September 11, 2018 Leelanau Township Board Meeting agenda was deceptive to the public concerning the closed session. **Exhibit 29.**

470. There is no Foxview  Drive HOA. **Exhibit 29.**

471. The September 11, 2018 Leelanau Township Board Meeting agenda was deceptive to the public by not stating The Shores HOA on the agenda. **Exhibit 29.**

472. Under the zoning ordinances, Defendant Steve Patmore and Defendant Township can only sue to seek injunctive relief. **Exhibit 16.**

473. All evidence, Defendant Steve Patmore 2017 email **Exhibit 18** and the just months old Certificate of Occupancy showing full compliance built to the zoning standards of

Defendant Steve Patmore, no injunctive relief could be sought from the Court for a zoning violation.

474. The lawsuit filed was at least partially paid by tax dollars.

475. This money spent that was misappropriated/embezzled, because Plaintiff was in compliance with zoning.

476. Defendants Township and Patmore treated Plaintiffs differently than white people because they did not issue a $100 fine as required by the Township Zoning ordinances, where they do for other people.

477. Defendants Township and Patmore treated Plaintiffs differently than white people because they did not allow a public hearing for a defense as required by the Township Zoning ordinances, where they do for other people.

478. Defendants Township and Patmore treated Plaintiffs differently than white people because they did not allow an appeal process by the Township Zoning ordinances, where they do for other people prior to litigation.

479. This money spent that was misappropriated/embezzled, because Defendants did not follow the due process required by ordinance and statute.

480. Prior to the issuing of a Building Permit, the Health Department and Zoning Department have to sign off. The Defendant County has a list of items that include Health and Zoning to be completed prior to issuance of permit. **Exhibit 21.**

481. A Certificate of Occupancy cannot be issued without compliance with Zoning and Health Departments because a permit cannot be issued without such compliance. **Exhibit 21.**

482. Defendant County is liable for issuing a building permit, allowing construction and denying use,  if they issued a permit with no compliance with Health Department and Zoning Department.

483. Defendant County by issuing a permit, allowing construction knowing Plaintiffs were in violation of Health Department and Zoning Department is liable to Plaintiffs for damages.

484. Defendant County wanted the home removed as per **Exhibit 3.**

485. Defendant County treated Plaintiffs with disparate treatment from 2015 to present 2021.

486. This treatment is different than white people in the community.

487. Defendant County Certificate of Occupancy was fraudulent with the restrictions. **Exhibit 20.**

488. Defendant Steve Patmore 2017 email confirmed any possible older zoning violations would now be grandfathered-in and labeled as non-conforming. **Exhibit 17.**

489. A Judge could not issue any injunctive relief because Plaintiff's Certificate of Occupancy is certification of compliance for zoning! **Exhibit 20.**

490. The lawsuit was filed without due process as required by statute and ordinance.

491. Plaintiff was never informed by a letter or other means that he was in violation of a zoning issue or asked to correct the violation other than the litigation filed.

492. Normal operations of a zoning department are to send a certified letter asking for you to come into compliance with an option of an appeal process if you disagree with the citation.

493. The above allegation did not occur in Plaintiffs' case.

494. Plaintiff worked for government, Plaintiff knew they were in full compliance with zoning and their |Certificate of Occupancy is evidence of that.

495.  Defendant Steve Patmore 2017 email **Exhibit 17** states that Plaintiffs were grandfathered in, prior to the issuance of the Certificate of Occupancy.

496.  Having been designated nonconforming means a protected structure of being in compliance with zoning when built, but the zoning requirements for zoning changed since built.

497.  Defendant Steve Patmore, Defendants Township and Defendant The Shores HOA  knew Plaintiff just received a Certificate of Occupancy, and hired a private detective to see if he was now sleeping in a "utility shed".

498.  Whatever the structure, Plaintiff could not receive a Certificate of Occupancy without Zoning approval. Defendant Steve Patmore gave that authority as seen in the email and the plans. **Exhibit 18 and 19.**

499.  Defendant Steve Patmore, Defendants Township, Defendant The Shores HOA  with their attorney Defendant Mr. Koches as in the September 11, 2018 Township Board in a closed meeting the minutes: MOTION MADE BY DUNN, SECONDED BY VANPELT TO JOIN THE SHORES HOMEOWNER'S ASSOCIATION AS CO-PLAINTIFF CONCERNING ZONING VIOLATIONS, AS RECOMMENDED BY TOWNSHIP ATTORNEY SETH KOCHES, MOTION PASSED 5-0.        **Exhibit 31.**

500.  Defendant Township lawyer Defendant Seth Koches recommends going to file litigation as co-plaintiff, knowing full well this was a fraud being perpetrated against Plaintiffs and thus violated Michigan Rules of Professional Conduct.

501.  An honest attorney doing his job would have required due process for an alleged violation be done prior to filing litigation thus  Defendant Seth Koches and his firm committed malpractice.

502.  On the Labor Day weekend 2019, Plaintiff confirmed at the Northport library that the funding was embezzled from public funds to pay for a private law suite of the Shores.

503.  The zoning ordinance only allows fines and under the nuisance ordinance litigation can only be filed for injunctive relief. **Exhibit 16.**

504.  Plaintiff built exactly to the zoning specifications required and received a Certificate of Occupancy, the Court could not give injunctive relief.

505.  Plaintiff was sued to act as a vehicle for the sole purpose that the taxpayer's money to fund a private law suit.

506.  It is not normal for a zoning department to have a requirement Plaintiff had to put their property up for sale.

507.  Requiring Plaintiff to sell their property has nothing to do with zoning or protective restriction enforcement.

508.  Requiring Plaintiff to sell their property had nothing to do with a tiny house in the middle of the woods that nobody can see.

509.  Requiring Plaintiff to sell their property had everything to do with keeping Plaintiff's family from using their property or developing it with a four-season home in the future.

510.  Plaintiff knows from experience in Detroit, when corrupt government insists you sell your land they always will win!

511.  This was not an eminent domain case!

512.  So, when Plaintiffs signed the Settlement Agreement it was not out of free will    but duress. Plaintiffs were fearful of harm to their daughter, themselves, their property, and their finances.

513.  Plaintiff knows you cannot win in a corrupt system.

514.  If all the Defendants working together want Plaintiff and his family off their property, this harassment would continue to happen, no matter what.

515.  Plaintiff knew from experience if Plaintiff and his wife did not sign the Settlement Agreement, escalation would occur and continue!  Plaintiffs would never have their property rights restored, ever! So, Plaintiffs signed this document under duress and out of fear!

516.  Plaintiff sent certified letters (appeal) to the County Commissioners, Joe Hubbell, Paul Hunter, Chet Janik with documentation showing that Plaintiff was in compliance with the Health Department with other exhibits. Plaintiff requested the Certificate of Occupancy to restore of their right to sleep as they did for 23 years. **Exhibit 23.**

517.  Defendant County and other Defendants never responded to the certified letter. **Exhibit 23.**

518.  Defendant County and other Defendants never informed of an appeal process when asking for the appeal of reversing their denied use of the structure. **Exhibit 23.**

519.  As the result of the Federal Case a construction appeal occurred in 2020.

520.  The Construction Appeal Hearing was a closed meeting in violation of the Open Meetings Act.

521.  The Construction Appeal Hearing advertising was fraudulent because the website advertised was not operational for reviewing materials.

522.  The Construction Appeal Hearing basis of the decision violated the 2015 Michigan Residential Code Book.

523.  The Construction Appeal Hearing basis of the decision violated the 2015 Michigan Residential Code Book was a due process violation.

524. The Construction Appeal Hearing basis of the decision violated the 2015 Michigan Residential Code Book was an equal protection under the law violation.

525. The Construction Appeal Hearing continued the violation of law as per the Continuous Violations Doctrine.

526. As the result of the Federal Case a zoning appeal hearing occurred in 2020.

527. The Zoning Appeal Hearing did not completely comply to the Open Meetings Act.

528. The Zoning Appeal Hearing the basis of the decision was made in violation of the Leelanau Township Zoning Ordinances.

529. The Zoning Appeal Hearing, the basis of the decision was made in violation of the MZEA.

530. The Zoning Appeal Hearing  basis of the decision violations was an equal protection under the law violation.

531. The Zoning Appeal Hearing   basis of the decision violations was a due process violation.

532. The Zoning Appeal Hearing continued the violation of law as per the Continuous Violations Doctrine.

533. On September 11, 2018, there was a Leelanau Township Board Meeting where Defendant Seth Koches from the firm Defendant Bauckman, Sparks, Thall, Seeber & Kaufman was the Leelanau Township Attorney, representing the Township. **Exhibit 31.**

534. An attorney such as Defendant Seth Koches representing the Township; duty must represent the best interests of the Township.

535. An attorney such as Defendant Seth Koches representing the Township duty does not represent the best interests of a single person who pays him or even a tribunal that pays him.

536. An attorney such as Defendant Seth Koches representing the Township duty must comply to all Statutes, ordinances and codes in his representation.

537. An attorney such as Defendant Seth Koches representing the Township duty must advise his client that they would be in violation of statutes, ordinances or codes if they were violating such items.

538. Defendant Seth Koches advised his clients to directly sue Plaintiffs in violation of Township Ordinance 10.6 and the Michigan Zoning Enabling denying Plaintiffs the due process required under the statute and zoning ordinance 10.6. **Exhibit 31.**

539. Had Defendant Seth Koches advised his Client to comply to the statute and ordinance, no litigation would have been filed until all administrative remedies were exhausted.

540. Defendant Seth Koches should have advised his client this meeting is in violation of the Open Meetings Act by not being open and inviting Plaintiffs to a defense required under the Michigan Zoning Enabling Act and the Open Meetings Act. **Exhibit 31.**

541. Defendant Seth Koches should have advised his Client the Agenda was fraudulent, because it had a nonexistent HOA on the Agenda, did not mention lot #11, did not mention a zoning violation. **Exhibit 29.**

542. Defendant Seth Koches should have advised his Client the Wizinsky's should have been given notice, the right to a public hearing for this specific meeting. **Exhibits 29 & 31.**

543. Defendant Seth Koches should have advised his Client the Wizinskys should be allowed the due process required under the MZEA and Ordnance 10.6.

544. Defendant Seth Koches should have advised his client a zoning violation is $100 fine not direct litigation. The Zoning Ordinance 10.6 says **"shall"** and thereby the Wizinskys should have received a $100 fine; be told what was in violation; have the opportunity to

correct the violation on their own and be able to challenge the violation in an open zoning meeting prior to litigation being filed. **Exhibit 16.**

545. Defendant Seth Koches should have advised his Client it is against the State Constitution Article IX § 18 to mix public funds with private funds, thereby The Shores cannot file jointly with the Township in the litigation.

546. Defendant Seth Koches should have advised his Client it is against the US Constitution Equal protection; discrimination by not granting the Wizinskys the same treatment they give to all other residents of the community, specifically $100 fine and the due process required under the Zoning ordinance 10.6 and MZEA.

547. Defendant Seth Koches should have advised his Client it is against the U S Constitution of due process by not granting the Wizinskys the due process of a $100 fine and the other due process required under the Zoning Ordinance 10.6 and MZEA, which requires appeal processes in an open meeting, the right to correct a zoning ordinance on their own, a hearing and a defense prior to filing litigation.

548. Defendant Seth Koches should have advised his Client a Zoning Department has an obligation to be a neutral party in a neighborhood dispute and filing jointly is against exparte communications. **Exhibit 32.**

549. Defendant Seth Koches should have advised his Client, the Township Board not to be a joint plaintiff in this litigation.

550. Defendant Seth Koches advised his clients and assisted his clients to wrongly directly file litigation where his firm collected attorney fees for this fraud upon the Wizinskys' and the community paying for the litigation through their taxes.

551. Defendant Seth Koches has collected attorney fees from Plaintiffs for his violations of the Michigan Rules of Profession Conduct and fraud upon the Court.

552. Defendants Karrie Zeits and The Shores HOA gave permission in 2015 to "protect the structural integrity of the structure" and gave permission to put in a pathway and take down dead and dying trees. **Exhibit 11.**

553. In 2015 Plaintiffs were in compliance with protective restrictions, because of those approvals. **Exhibit 11.**

554. In 1992 Mr. Beeler had the authority to approved the structure on lot #11 and did by initialing the elevations on the plans. **Exhibit 6.**

555. In 1992 Mr. Beeler had the authority to waive any restriction he wanted to allow the structure to be built.

556. In 1992 the structure was built and Mr. Beeler never had any objections to the construction of the structure.

557. Defendants never received an Affidavit from Mr. Beeler stating the structure was not approved by him.

558. Once a structure is built and approved under the authority of the Shores HOA, another Board cannot deny that authority at a later date.

559. The 2015 The Shores Board through their attorney approved the repairs of the structure on lot 11, to protect the structural integrity of the structural. **Exhibit 11.**

560. The protective restrictions do not allow The Shores HOA to decide or make structural decisions and what is required to protect the structural integrity of a structure.

561. Only the architect or engineer sealing and signing the plans can make that determination.

562. In 2018 The Shores HOA Boards reversed the previous granted authority in 1992 and 2015 by suing Plaintiffs in 2018.

563. The previous allegation if true is a breach of contract.

564. Defendant Karrie Zeits with the firm Sondee. Racine & Doren, PLC did not fulfill the contractual requirements of the Protective Restrictions.

565. Plaintiffs were never notified of a protective restriction in 2018, after approvals in 2015 of not being in compliance and only received the allegation when they were served in 2018 with the litigation.

566. Defendants Karrie Zeits and The Shores HOA never requested Plaintiffs to come in compliance with a restriction prior to litigation in 2018, and after the approval of 2015.

567. In 2018 Defendants Karrie Zeits and The Shores HOA did not invite Plaintiffs to a Board Meeting where a hearing and a defense is required to occur on the alleged violations of the protective restrictions. **Exhibits 27 & 28.**

568. The Shores Annual meeting was on Labor Day weekend in 2018.

569. On September 11, 2018, a short time later The Shores Board decided to sue Plaintiffs directly, without a notice and a hearing.

570. Section 30 of the protective restrictions requires a notice of the alleged protective restriction. **Exhibits 27**

571. Section 30 of the protective restrictions requires a hearing of the alleged protective restriction, where the homeowner is made aware and has the opportunity to come into compliance prior to litigation. **Exhibits 27.**

572. Defendant The Shores breached their contract by not following the due process of Section 30 prior to filing litigation. **Exhibits 27.**

573. Defendants Karrie Zeits with the firm Sondee. Racine & Doren, PLC advised The Shores to sue directly by denying due process violating Section 30 and assisted The Shores breach their contract. **Exhibits 27.**

574. The purpose of litigation in the protective agreement is to require Plaintiffs to come in compliance with the protective restrictions.

575. The Settlement Agreement required by Defendant Shores and Defendant Leelanau Township intentions were not to bring Plaintiffs into compliance and is evidence of an ulterior motive.

576. There is no zoning ordinance or protective restriction that requires a property owner to put his property within 30 days of signing the contract to sell his property.

577. There is no zoning ordinance or protective restriction that requires a property owner to report to the Zoning Official 3 days prior to using the property.

578. There is no zoning ordinance or protective restriction that requires a property owner at the time of signing the agreement that granted the authority not to rent the structural in short term rentals.

579. There is no zoning ordinance or protective restriction that requires a property owner at the time of signing the agreement that granted the authority to only rent the structure to long term rentals.

580. There is no zoning ordinance or protective restriction that requires a property owner that deny use of the structure limiting sleeping in it for only 18 days a year for three years.

581. There is no zoning ordinance or protective restriction that requires a property owner to remove his just repaired structure from the property in three years if they do not sell the property.

582. These were not issues, that were in the litigation to resolve the allegations in the litigation.

583. Defendants never asked to move the structure to alleged setbacks.

584. Defendants never asked to change the structure to alleged requirements of zoning or the protective restrictions,

585. Defendants never asked to add alleged required sewer and water to the structure.

586. Instead, Defendants required limit use to 18 days a year for three years.

587. Instead, Defendants required if the property did not sell in three years the home had to be removed.

588. The two previous allegations limits use for three years and denies use by a black family.

589. The requirement of putting the property up for sale ensures a black child would not inherit the property.

590. Defendants did not want to correct a Zoning Violation or Protective Restriction; they had an **ulterior motive** to remove Plaintiff's home and deny use.

591. The Settlement Agreement is evidence of an ulterior motive since it was not a remedial action of correcting a zoning violation of protective restriction.

592. The Settlement Agreement was outside the authority of Defendant The Shores granted them in the Protective Restrictions.

593. The Settlement Agreement was outside the authority of Defendant Leelanau Township granted them the authority in the Leelanau Township Zoning Ordinances and the Michigan Zoning Enabling Act.

594. Plaintiffs has made their case of ulterior motive. Defendant Leelanau Township has no documentation of a citation issued.

595. Defendant Leelanau Township has no documentation of an open meeting where Plaintiffs had a defense prior to filing the litigation.

596. Defendant Leelanau Township has no documentation of an appeal hearing where Plaintiffs had a defense prior to filing the litigation.

597. Defendant Leelanau Township violated their own Township Zoning Ordinances by not giving Plaintiffs a fine and appeal processes prior to filing litigation.

598. Defendant Leelanau Township violated the Michigan Zoning Enabling Act by not giving Plaintiffs a citation and appeal processes prior to filing litigation.

599. Defendant Leelanau Township violated the Open Meetings Act by not giving Plaintiffs a hearing to correct the alleged zoning violation in a meeting open to the public prior to filing litigation.

600. Defendant Leelanau Township violated the US Constitution 14th amendment "; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws; by treating Plaintiffs differently than all other citizens for an alleged zoning violation prior to filing litigation.

601. The previous 4 allegations are abuse of the process which is improper in the regular prosecution of the proceeding.

602. The Supreme Court restated the elements of abuse of process as follows: (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages.[vii] An improper use of process may be ...In order to prove the tort of abuse of process, the following elements must be established: (1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; (2) the procedure is perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act is perpetrated in the use of process which is not proper in the regular conduct of the proceeding.[i] The test of abuse of process is whether a judicial process is used to extort or coerce.[ii] The key to the tort is the improper use of process after its issuance in order to accomplish a purpose for which the process was not designed. Thus, it is the purpose for which the process is used, once issued, that is important in reaching a conclusion.

603. The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed.[iii] The essence of the tort is misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice. To succeed in an action for abuse of process, a litigant must establish that the defendant: (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings.[iv]

604. Defendant Leelanau Township violated the US Constitution 5th and 14th Amendments "nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation" by Act by not giving Plaintiffs a citation and appeal processes required by law for an alleged zoning violation prior to filing litigation.

605. Defendant Leelanau Township violated the Michigan State Constitution ARTICLE 9 § 18 STATE CREDIT by becoming co-plaintiffs with the Defendant The Shores.

606. Defendant The Shores did not follow the due process required in Section 30 of the protective agreement.

607. Defendant The Shores did not honor the previous approvals by The Shores processes and thereby breached the contract.

608. The previous 4 allegations are the use of the process which is improper in the regular prosecution of the proceeding.

609. Defendant Shores has no evidence of a letter or notice stating Plaintiffs were in violation of the protective restriction asking to come into compliance in 2018 prior to file litigation.

610. Defendant Shores has no evidence of a The Shores HOA Board Meeting where Plaintiffs had a defense prior to filing litigation showing Plaintiffs were in violation of the protective restriction asking to come into compliance in 2018 prior to file litigation.

611. On June 22, 2017 Defendant County and Chet Janik, through threat of litigation issued a citation to Plaintiffs. **Exhibit 14.**

612. If Plaintiffs did not get a new Land Use Permit, they threatened litigation. **Exhibit 14.**

613. Plaintiffs did not need a new land use permit from Zoning because they were not tearing down their Gazebo and rebuilding.

614. Defendant Steve Patmore in his letter to Defendant County/Janik stated Plaintiffs only needed a new Land Use Permit if they tore down their home and rebuilt it. **Exhibit 13.**

615. Plaintiff's permit did not state that Plaintiff was going to tear down his Gazebo and rebuild it.

616. Plaintiff had no plans to tear down Gazebo because he already spent significant money to repair it.

617. The citation required Plaintiffs to get a new Land Use permit under threat of litigation when he did not need one.

618. Steve Haugen told Plaintiff if he did not get a new Land Use Permit, it would result in Court.

619. Defendant Chet Janik sent an email **Exhibit 14,** June 22, 2017 to Steve Haugen. **"Steve H- Based on this written confirmation, I am assuming you will be sending out a letter to Mr. Wizinsky within the next week notifying him of the Zoning Administrator's decision and the fact the structure is out of compliance and therefore he needs to meet the current codes or remove the building within the allotted period. Failure to do so, will result in the case being referred to the Courts and the legal process will commence."**

620. A Coercion, abuse of process claim can be made against a party that uses the threat of litigation to force them to do something they did not want or had too.

621. Defendant County/Janik as a government official threatened litigation against Plaintiffs if he did not apply for a new Land Use permit, when one was not required.

622. Plaintiff filed for the land use permit and it took Defendant Steve Patmore about five  months to respond.

623. On December 12, 2017 Defendant Steve Patmore responded and denied the permit and violated the Zoning Ordinance, because a denial is required to be answered in 45 working days. **Exhibit 17.**

624. The 1992 Permit was able to be used for the repair permit because Plaintiff was not going to tear his down his Gazebo and rebuild it. **Exhibit 13.**

625. The 1992 Permit was able to be used for the repair permit, by the Defendant County because they changed the Plans to remove the exterior stairs and deck, by writing" REMOVE AS ZONING REQUIREMENT", meeting the zoning requirements. **Exhibit 19.**

626. The December 12, 2017 email from Defendant Steve Patmore was attached to the Defendant County Certificate of Occupancy as a restriction where Plaintiff could not use his Gazebo as a dwelling. **Exhibit 17.**

627. Requiring Plaintiff to apply for an unneeded permit to use against him, is fraud!

628. The key elements of abuse of process is the malicious and deliberate misuse of regularly issued civil or criminal court process that is not justified by the underlying legal action, and that the abuser of process is interested only in accomplishing some improper purpose similar to the proper object of the process.

629. Issuing a citation requiring an unneeded Land Use Permit as per the above allegation that was not needed to force Plaintiffs off the land is an abuse of process.

630. Issuing a citation is a legal process and if not corrected that would cause litigation. This process in this case was abuse.

631. Requiring Plaintiff to apply for a permit or be sued specifically by government is coercion, an "abuse of process" specifically when the permit was not needed.

632. Defendant County MANDATED that same day Plaintiffs structure to be removed.

633. The issuance of an unlawful citation to force Plaintiffs to file for an unneeded Land Use Permit was framing Plaintiff for denial of use of the property and did cause the ultimate demolition of the home through the Defendant Patmore December 12, 2017 email which was attached to the Certificate of Occupancy. Plaintiff was sued for an alleged zoning violation for sleeping in his home.

**COUNT 1**
**VIOLATION OF 42 USC 1985**
**CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**
**OBSTRUCTION OF JUSTICE**

634.  Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

635. As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and

State Statutes, Ordinances and Codes continue as support of systemic racism, fraud, conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

636. **42 USC 1985" (2)OBSTRUCTING JUSTICE STATES** If two or more persons in any State or Territory conspire to deter...or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;"

637. Defendant attorneys (and Firms) conspired with their clients and other Defendants to deny equal protections of the laws and thus obstructed justice and thus caused Plaintiff's harm.

638. Defendants Leelanau Township and Patmore conspired with each other and other Defendants to deny equal protections of the laws and thus obstructed justice and thus caused Plaintiff's harm.

639. Defendants Leelanau County, Janik and Hunter conspired with each other and other Defendants to deny equal protections of the laws and thus obstructed justice and thus caused Plaintiff's harm.

640. Defendants The Shores HOA conspired with each other and other Defendants to deny equal protections of the laws and thus obstructed justice and thus caused Plaintiff's harm.

641. Defendants Unknown Financers of litigation conspired with each other and other Defendants to deny equal protections of the laws and thus obstructed justice and thus caused Plaintiff's harm.

642. As a direct and proximate result of violation of VIOLATION OF 42 USC 1985

643. CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS OBSTRUCTION OF JUSTICE Plaintiffs have suffered damages, but not limited to: the value of Lot 11, loss of use of his property, loss of development of property, replacement cost of home, all costs to replace similar home in another area, lost wages, economic losses, repair costs,

additional costs for repairs, additional costs to rework design for zoning, cost to tear

down after repairs approved, transfer of property for $445,000 cash (plus) since property

was made useless to Plaintiffs, mental/emotional stress, punitive damages, exemplary

damages, attorney fees as allowed by statute and anything else allowed under the law.

### COUNT II
### VIOLATION OF 42 USC 1985
### CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### DEPRIVING PERSONS OF RIGHTS AND PRIVILEGES

644.  Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if

fully set forth herein.

645.  As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy

amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and

State Statutes, Ordinances and Codes continue as support of systemic racism, fraud,

conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

646.  **42 USC 1985 "(3)DEPRIVING PERSONS OF RIGHTS OR PRIVILEGES STATES** If two or
more persons in any State or Territory conspire… or to injure any citizen in person or
property on account of such support or advocacy; in any case of conspiracy set forth in
this section, if one or more persons engaged therein do, or cause to be done, any act in
furtherance of the object of such conspiracy, whereby another is injured in his person or
property, or deprived of having and exercising any right or privilege of a citizen of the
United States, the party so injured or deprived may have an action for the recovery of
damages occasioned by such injury or deprivation, against any one or more of the
conspirators."

647.  Defendant attorneys (and Firms) conspired with their clients and other Defendants to

deny of having and exercising any right or privilege of a citizen of the United States,

caused Plaintiff's harm from that deprivation and thus is actionable.

648. Defendants Leelanau Township and Patmore conspired with themselves and other
Defendants to deny of having and exercising any right or privilege of a citizen of the
United States, caused Plaintiff's harm from that deprivation and thus is actionable.

649. Defendants Leelanau County, Janik and Hunter conspired with themselves and other
Defendants to deny of having and exercising any right or privilege of a citizen of the
United States, caused Plaintiff's harm from that deprivation and thus is actionable.

650. Defendants The Shores HOA conspired with themselves and other Defendants to deny of
having and exercising any right or privilege of a citizen of the United States, caused
Plaintiff's harm from that deprivation and thus is actionable.

651. Defendants Unknown Financers of litigation conspired with themselves and other
Defendants to deny of having and exercising any right or privilege of a citizen of the
United States, caused Plaintiff's harm from that deprivation and thus is actionable.

652. As a direct and proximate result of violation of VIOLATION OF 42 USC 1985
CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS DEPRIVING PERSONS OF
RIGHTS AND PRIVILEGES Plaintiffs have suffered damages,  but not limited to: the
value of Lot 11, loss  of use of his property, loss of development of property, replacement
cost of home, all costs to replace similar home in another area, lost wages, economic
losses, repair costs, additional costs for repairs, additional costs to rework design for
zoning, cost to tear down after repairs approved, transfer of property for $445,000 cash
(plus) since property was made useless to Plaintiffs,  mental/emotional  stress, punitive
damages, exemplary damages, attorney fees as allowed by statute and anything else
allowed under the law.

## COUNT III
## VIOLATION OF; AS DEFINED BY 22 USC § 7102 (3) COERCION, ABUSE OR THREATENED ABUSE OF LEGAL PROCESS;
## VIOLATION OF 42USC § 3617 AND 42 USC § 3604(a)
## AND
## DENIAL OF DWELLING BASED ON RACE
## THROUGH ABUSE OF PROCESS
## AND
## ABUSE OF PROCESS

653. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if

fully set forth herein.

654. As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy

amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and

State Statutes, Ordinances and Codes continue as support of systemic racism, fraud,

conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

655. Abuse of Process as per Federal Statute states 22 U.S. Code § 7102 (3)COERCION The
term "coercion" means(C)the abuse or threatened abuse of the legal process.
42 U.S. Code § 3617.Interference, coercion, or intimidation. It shall be unlawful to
coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of,
or on   account of his having exercised or enjoyed, or on account of his having aided
or encouraged any other person in the exercise or enjoyment of, any right granted or
protected by section 3603, 3604, 3605, or 3606 of this title.
42 U.S. Code § 3604(a)"…. or otherwise make unavailable or deny, a dwelling to
any person because of race, color,…."

656. Defendants Leelanau Township, The Shores HOA, Patmore , Attorneys Koches and firm,

Attorneys Zeits and firm, and unknown financer violated the above  Federal Statutes in

this count and Abuse of Process in filing of the litigation case number  18-10192-CZ.

657. Defendants Leelanau Township, The Shores HOA, Patmore , Attorneys Koches and firm,

Attorneys Zeits and firm , and unknown financer violated the above  Federal Statutes in

this count and Abuse of Process in mediation of case number  18-10192-CZ.

658. Defendants Leelanau County, Hunter and Janik violated the above Federal Statutes in this count and Abuse of Process by threat of litigation required Plaintiffs to file for another Land Use Permit when one was not needed. They then used the denial of use of the dwelling based on the denial email attached to the Certificate of Occupancy.

659. Had Defendants Leelanau County, Hunter and Janik  not violated the above  Federal Statutes in this count and  Abuse of Process the Certificate of Occupancy would have not been filed with the restrictions cannot use as a dwelling as per the Abuse of Process requiring the application for the Land Use Permit or be threatened with Court Proceedings.

660. As a direct and proximate result of violation of VIOLATION OF AS DEFINED BY 22 USC § 7102 (3) COERCION, ABUSE OR THREATENED ABUSE OF LEGAL PROCESS; VIOLATION OF 42USC § 3617 AND 42 USC § 3604(a) AND DENIAL OF DWELLING BASED ON RACE THROUGH ABUSE OF PROCESS Plaintiffs have suffered damages,  but not limited to: the value of Lot 11, loss  of use of his property, loss of development of property, replacement cost of home, all costs to replace similar home in another area, lost wages, economic losses, repair costs, additional costs for repairs, additional costs to rework design for  zoning, cost to tear down after repairs approved, transfer of property for $445,000 cash (plus) since property was made useless to Plaintiffs,  mental/emotional  stress, punitive damages, exemplary damages, attorney fees as allowed by statute and anything else allowed under the law.

**COUNT IV VIOLATION OF 42 USC 1981**
**EQUAL RIGHTS UNDER THE LAW**

661. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

662.  As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy

amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and

State Statutes, Ordinances and Codes continue as support of systemic racism, fraud,

conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

663.  **42 USC 1981 STATES (a)**STATEMENT OF EQUAL RIGHTS All persons within the
jurisdiction of the United States shall have the same right in every State and Territory
to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal
benefit of all laws and proceedings for the security of persons and property as is enjoyed
by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses,
and exactions of every kind, and to no other. **(b)"MAKE AND ENFORCE CONTRACTS"
DEFINED** For purposes of this section, the term "make and enforce contracts" includes the
making, performance, modification, and termination of contracts, and the enjoyment of
all benefits, privileges, terms, and conditions of the contractual relationship.
**(c)PROTECTION AGAINST IMPAIRMENT** The rights protected by this section are protected
against impairment by nongovernmental discrimination and impairment under color of
State law.

664.  All Defendants violated the above Federal Statutes in this count directly or in conspiracy

with other Defendants in Equal Rights Under The Law by applying different like

punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

665.  Defendants Leelanau Township, Patmore, Attorneys Koches and firm, violated the above

Federal Statutes in this count in  Equal Rights Under The Law by applying different

like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no

other as in issuing a Land Use Permit.

666.  Defendants Leelanau Township, Patmore, Attorneys Koches and firm, violated the above

Federal Statutes in this count in  Equal Treatment Under The Law by applying different

like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no

other as in the handling of the 2020 Zoning Appeal hearing and process.

667.  Defendants Leelanau Township, Patmore, Attorneys Koches and firm, violated the above

Federal Statutes in this count in  Equal Treatment Under The Law by applying different

like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no

other as in the zoning process for issuance of a Land Use Permit.

668. Defendants Leelanau Township, Patmore , Attorneys Koches and firm, violated the above

Federal Statutes in this count in  Equal Treatment Under The Law by applying different

like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no

other as in the zoning process for application of compliance with zoning with approval of

construction with a Certificate of Occupancy.

669. Defendants Leelanau Township, Patmore, Attorneys Koches and firm, violated the above

Federal Statutes in this count in  Equal Treatment Under The Law by applying different

like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no

other as in the zoning process and validation and honoring of previous approvals of Land

Use Permits.

670. Defendants Leelanau Township, Patmore, Attorneys Koches and firm, violated the above

Federal Statutes in this count in  Equal Treatment Under The Law by applying different

like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no

other as in the zoning process and application of ordinances and statute for an alleged

zoning violation.

671. Defendants Leelanau Township and Patmore violated the above Federal Statutes in this

count in  Impairment Under Color of State Law handling in their operations  of Plaintiffs

Zoning  from 2015 -2021 in violation of the MICHIGAN STATE CONSTITUTION;

ABUSE OF PROCESS; OPEN MEETINGS ACT; THE MICHIGAN ZONING

ENABLING ACT; THE LEELANAU TOWNSHIP ZONING ORDINACES AND

VIOLATION OF MCL 750.248 AND MCL750.248b FORGERY, FALSIFYING,

ALTERING PUBLIC RECORD OF THE AGENDA FOR THE    SEPTEMBER 11, 2018 TOWNSHIP BOARD MEETING; and VIOLATION OF MCL 750.174 AND MCL750.181 EMBEZZELEMENT.

672. Defendants The Shores HOA , Attorney Zeits and (her firm) violated the above  Federal Statutes in this count in  Equal Treatment Under The Law by applying different like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other as in violation of contractual obligation for an alleged protective restriction violation.

673. Defendants The Shores HOA , Attorney Zeits and (her firm) violated the above  Federal Statutes in this count in  Equal Treatment Under The Law by applying different like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other as in violation of the contract for honoring previous approvals by previous authorities of the HOA.

674. Defendants The Shores HOA, Attorney Zeits and (her firm) violated the above Federal Statutes in this count in Equal Treatment Under The Law by applying different like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other as in violation for honoring their own contractual approvals in their capacity of the HOA.

675. Defendants The Shores violated the above Federal Statutes in this count in Impairment by Nongovernmental Discrimination and Impairment Under Color of State Law handling in their operations  of Plaintiffs contractual agreement, approvals, process, procedures from 2015 -2021 in violation of the  MICHIGAN STATE CONSTITUTION; ABUSE OF PROCESS; BREACH OF CONTRACT; TORTIOUS INTERFERENCE IN A CONTRACT AND TORTIOUS INTERFERENCE IN BUSINESS  RELATIONSHIPS:

and  VIOLATION OF MCL  750.411h STALKING, COURSE OF CONDUCT, HARASSMENT, INTIMIDATION.

676. Defendants Zeits and firm, Koches and firm violated the above Federal Statutes in this count in Impairment Under Color of State Law handling in their operations  of their clients legal business in conspiracy against Plaintiffs from 2015 -2021 in violation of the MICHIGAN RULES OF PROFESSIONAL CONDUCT, MALPRACTICE, ABUSE OF PROCESS, FRAUD UPON THE COURT, MCL 600.1701as well as in conspiracy and working for their clients violate against Plaintiffs; the MICHIGAN STATE CONSTITUTION; OPEN MEETINGS ACT; THE MICHIGAN ZONING ENABLING ACT; THE LEELANAU TOWNSHIP ZONING ORDINACES AND VIOLATION OF MCL 750.248 AND MCL750.248b FORGERY, FALSIFYING, ALTERING PUBLIC RECORD OF THE AGENDA FOR  THE SEPTEMBER 11, 2018 TOWNSHIP BOARD MEETING;  VIOLATION OF MCL 750.174 AND MCL750.181 EMBEZZELEMENT; BREACH OF CONTRACT; TORTIOUS INTERFERENCE IN A CONTRACT AND TORTIOUS INTERFERENCE IN BUSINESS  RELATIONSHIPS: and  VIOLATION OF MCL 750.411h STALKING, COURSE OF CONDUCT, HARASSMENT, and INTIMIDATION.

677. Defendants Leelanau County, Hunter and Janik violated the above Federal Statutes in this count in  Equal Treatment Under The Law by applying different like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other as in the handling of application and issuing of a building permit.

678. Defendants Leelanau County, Hunter and Janik violated the above Federal Statutes in this count in Equal Treatment Under The Law by applying different like punishment,

pains, penalties, taxes, licenses, and exactions of every kind, and to no other as in the
handling issuance of a Certificate of Occupancy.

679. Defendants Leelanau County, Hunter and Janik violated the above Federal Statutes in this
count in Equal Treatment Under The Law by applying different like punishment, pains,
penalties, taxes, licenses, and exactions of every kind, and to no other as in the handling
of the 2020 Construction Appeal process and hearing.

680. Defendants Leelanau County, Hunter and Janik violated the above Federal Statutes in this
count in Impairment under color of State Law handling of the Construction Appeal
process and hearing by violating the 2015 Michigan Residential Code Book.

681. Defendants Leelanau County, Hunter and Janik violated the above Federal Statutes in this
count in Impairment Under Color of State Law handling of the processing of the permit
in violation of the MICHIGAN STATE CONSTITUTION, ABUSE OF PROCESS,
VIOLATION OF MCL 750.377a THE WILLFUL AND MALICIOUS DESTRUCTION
OF PROPERTY AND VIOLATION OF MCL 750.92 ATTEMPT TO COMMIT
CRIME; OPEN MEETINGS ACT AND VIOLATION OF MCL 750.248 AND
MCL750.248b FORGERY, FALSIFYING, ALTERING PUBLIC RECORD.

682. Defendant Unknown Financer of the litigation directly and or indirectly violated
Nongovernmental Discrimination and Impairment Under Color of State Law through
conspiracy and funding of the litigation.

683. As a direct and proximate result of violation of  VIOLATION OF 42 USC 1981EQUAL
RIGHTS UNDER THE LAW  Plaintiffs have suffered damages,  but not limited to: the
value of Lot 11, loss  of use of his property, loss of development of property, replacement
cost of home, all costs to replace similar home in another area, lost wages, economic

losses, repair costs, additional costs for repairs, additional costs to rework design for

zoning, cost to tear down after repairs approved, transfer of property for $445,000 cash

(plus) since property  was made useless to Plaintiffs,  mental/emotional  stress, punitive

damages, exemplary damages, attorney fees as allowed by statute and anything else

allowed under the law.

**COUNT V**
**VIOLATION OF 42 USC 1982 PROPERTY RIGHTS OF CITIZENS AND**
**VIOLATION OF THE 14TH ADMENDMENT OF THE US CONSTITUTION**

684. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if

fully set forth herein.

685. As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy

amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and

State Statutes, Ordinances and Codes continue as support of systemic racism, fraud,

conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

686. 42 USC 1982 STATES All citizens of the United States shall have the same right, in
every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease,
sell, hold, and convey real and personal property.

687. Section 1. of the Fourteenth Amendment of the US Constitution  states: "All persons born
or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the
United States and of the state wherein they reside. No state shall make or enforce any law
which shall abridge the privileges or immunities of citizens of the United States; nor shall
any state deprive any person of life, liberty, or property, without due process of law; nor
deny to any person within its jurisdiction **the equal protection of the laws**

688. All Defendants actions were to deny ownership, development, repair of home, wanted

demolition of home, to deny use of Plaintiff's property by a black family and inheritance

to the black daughter, thereby violated 42USC 1982.

689. All Defendants actions, were different to Plaintiffs than white people and not equal

protection of the laws.

690. All Defendants violated 42 USC 1982 against Plaintiffs.

691. All Defendants violated the Fourteenth Amendment of the US Constitution  against Plaintiffs, the equal protection of the laws.

692. As a direct and proximate result of violation of  VIOLATION OF 42 USC 1982 PROPERTY RIGHTS OF CITIZENS AND VIOLATION OF THE 14TH ADMENDMENT OF THE US CONSTITUTION Plaintiffs have suffered damages,  but not limited to: the value of Lot 11, loss  of use of his property, loss of development of property, replacement cost of home, all costs to replace similar home in another area, lost wages, economic losses, repair costs, additional costs for repairs, additional costs to rework design for zoning, cost to tear down after repairs approved, transfer of property for $445,000 cash (plus) since property was made useless to Plaintiffs,  mental/emotional stress, punitive damages, exemplary damages, attorney fees as allowed by statute and anything else allowed under the law.

## COUNT VI
## VIOLATION OF 42 USC 1983
## VIOLATION OF SUBSTANTIVE DUE PROCESS
## AND VIOLATION OF THE 14TH ADMENDMENT OF THE US CONSTITUTION

**693.** Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

694. As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and State Statutes, Ordinances and Codes continue as support of systemic racism, fraud, conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

**695.  42 USC 1983 STATES** <u>Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress,</u> except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**696.  Section 1. of the Fourteenth Amendment of the US Constitution  states: "**All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; **nor shall any state deprive any person of life, liberty, or property, without due process of law;** nor deny to any person within its jurisdiction the equal protection of the laws

697.  All Defendants directly or indirectly through conspiracy denied Plaintiffs substantial due process and violated the 14th Amendment against Plaintiffs.

698.  Defendants Township, Patmore, Koches and firm denied Plaintiffs the written due process required to Plaintiffs under the Open Meetings Act, the Michigan Zoning Enabling Act, the Leelanau Township Zoning Ordinances prior to filing litigation as per Zoning Expert Witness Affidavit Carmine P. Avantini, **Exhibit 34.**

**699.**  Because of the previous allegation Plaintiffs were conned, using coercion, and abuse of process into signing a Settlement Agreement.

**700.**  In the 2020 Zoning Appeal Hearing, because of the Settlement Agreement, Defendants Township, Patmore Koches and firm denied Plaintiffs of the written due process required to Plaintiffs under the  Michigan Zoning Enabling Act, the Leelanau Township Zoning Ordinances as required for a zoning appeal where the focus should have been on the specific zoning ordinances thereby violated Plaintiff's due process constitutional rights.

701. Defendant Patmore violated Plaintiffs due process rights by not responding to the Land Use Permit submission in 45 days and violated the Leelanau Township Ordinances, **Exhibit 16.**

702. Defendants Seth Koches and firm as Township Attorneys denied Plaintiffs the due process in the Open Meetings Act, the MZEA and the Leelanau Township Zoning Ordinances prior by filing litigation prior to the administrative remedies and thus violated Plaintiffs Constitutional Rights as per Zoning Expert Witness Affidavit Carmine P. Avantini, **Exhibit 34.**

703. Defendants Seth Koches and firm as Township Attorneys denied Plaintiffs the due process in the of the MZEA and the Leelanau Township Zoning Ordinances during the 2020 Zoning Appeal Meeting.

704.  Defendants Seth Koches and firm violated the exparte communication requirements and due process requirements of a zoning department by conspiring with all Defendants and specifically with Defendants The Shores HOA, Karrie Zeits and firm through the entire process and specifically is filing a joint plaintiff litigation as per an article in **Exhibit 32.**

705. Defendant The Shores HOA denied the contractual due process under the contract Section 30  **Exhibit 27,** of a notice, a public hearing prior to filing litigation.

706. Defendant The Shores HOA shared expenses from Defendant Leelanau Township to fund the litigation where Defendants  had an ulterior motive and conspired to ensure denied due process through funding the litigation.

707. Defendants The Shores HOA/Township used outside money from Defendant Unknown Financers of Litigation to fund the litigation where that third party had an ulterior motive and conspired to ensure denied due process through funding the litigation.

708. Defendants Karrie Zeits and firm conspired with her client and other Defendants, knew the due process of the contract, as an HOA attorney should know the required due process of an HOA as in the contract and as required as per Article 30; **Exhibit 28** and case law.

709. Defendants County and Janik denied the due process by not processing the permit and obstructing the permit process as in **Exhibits 3, 14 and 15.**

710. Defendants County and Janik were required to approve the permit by the State of Michigan Civil Rights Division for settlement of a racial discrimination complaint as per **Exhibit 4.**

711. Defendants County, Janik and Hunter violated Plaintiffs due process rights through fraud.

712. Defendants County, Janik and Hunter violated Plaintiffs due process rights through violations of the 2015 Michigan Residential Code Book.

713. Defendants County, Janik and Hunter violated Plaintiffs due process rights in the 2020 Construction Appeal Hearing by violating the 2015 Michigan Residential Code Book and the Open Meetings Act.

714. Defendants County, Janik and Hunter violated Plaintiffs due process rights in the 2021 SOM BCC Hearing through conspiracy and by violating the 2015 Michigan Residential Code Book.

715. As a direct and proximate result of violation of  VIOLATION OF 42 USC 1983 VIOLATION OF SUBSTANTIAL DUE PROCESS AND VIOLATION OF THE 14TH ADMENDMENT OF THE US CONSTITUTION Plaintiffs have suffered damages,  but not limited to: the value of Lot 11, loss  of use of his property, loss of development of property, replacement cost of home, all costs to replace similar home in another area, lost

wages, economic losses, repair costs, additional costs for repairs, additional costs to rework

design for zoning, cost to tear down after repairs approved, transfer of property for

$445,000 cash (plus) since property was made useless to Plaintiffs,  mental/emotional

stress, punitive damages, exemplary damages, attorney fees as allowed by statute and

anything else allowed under the law.

**COUNT VII**
**VIOLATION OF 42 USC 1983**
**VIOLATION OF EQUAL TREATMENT UNDER THE LAW**
**AND VIOLATION OF THE 14TH ADMENDMENT OF THE US CONSTITUTION**

716.  Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if

fully set forth herein.

717. As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy

amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and

State Statutes, Ordinances and Codes continue as support of systemic racism, fraud,

conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

718. **42 USC 1983 STATES** Every person who, under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects,
or causes to be subjected, any citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by
the Constitution and laws, shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress, except that in any action brought against a
judicial officer for an act or omission taken in such officer's judicial capacity, injunctive
relief shall not be granted unless a declaratory decree was violated or declaratory relief was
unavailable. For the purposes of this section, any Act of Congress applicable exclusively to
the District of Columbia shall be considered to be a statute of the District of Columbia.

719. **Section 1. of the Fourteenth Amendment of the US Constitution  states: "**All persons
born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens
of the United States and of the state wherein they reside. No state shall make or enforce any
law which shall abridge the privileges or immunities of citizens of the United States; **nor
shall any state deprive any person of life, liberty, or property, without due process of
law;** nor deny to any person within its jurisdiction the equal protection of the laws

720. All Defendants directly or indirectly through conspiracy denied Equal Treatment Under the Law and violated the 14th Amendment against Plaintiffs.

721. Defendants Township and Patmore follow the rule of law, the Open Meeting Act, MZEA and Leelanau Township Zoning Ordinances for white people.

722. Defendants Township and Patmore did not consider Plaintiffs white people any longer after the adoption of their mixed-race child.

723. Defendants Township and Patmore considered Plaintiffs as a black family.

724. The MZEA and the Leelanau Township Zoning Ordinances state shall issue a citation/$100 fine for a zoning violation.

725. Plaintiffs never received a citation or $100 fine and thus were treated differently under the law.

726. The MZEA and the Leelanau Township Zoning Ordinances state several appeals processes that Defendants apply for white people.

727. Plaintiffs were denied an appeal process prior to litigation filed, because of direct litigation, that applied to the Wizinskys but not white people.

728. Defendants Township and Patmore by suing directly, denied Plaintiffs a citation, a hearing in an open meeting for a defense, prior to litigation that they apply to other people.

729. Defendants Township and Patmore ignored the rule of law and treated Plaintiffs with Disparate Treatment.

730. Defendants Township and Patmore in the Zoning Appeal Hearing did not follow the requirements the MZEA and Township Zoning Ordinances; had the hearing had occurred prior to litigation.

731. Defendants Township and Patmore denied equal treatment under the law at the Zoning Appeal Hearing to Plaintiffs.

732. Defendants County and Janik denied equal treatment under the law in getting a permit.

733. As per **Exhibit 3**, Defendants County and Janik wanted the structure removed and therefore was never going to issue a permit.

734. Plaintiff William G. Wizinsky filed a racial discrimination complaint with SOM Civil Rights Division.

735. As a result of the complaint Defendant County agreed in settlement of the complaint to issue the building permit.

736. Defendant County had to deny use of the property to Plaintiffs and came up with Plan B. On the permit they changed use of the structure from Gazebo to Gazebo/Shed which is a violation of the 2015 Michigan Residential Construction Code.

737. The  2015 Michigan Residential Construction Code. R110.2 Change in Use.Changes in the character or use of an existing structure shall not be made except as specified in Sections 407 and 408 of the International Existing Building Code.

738. Defendant County, Janik and Hunter violated the 2015 Michigan Residential Construction Code R110.2 Change in Use against Plaintiffs.

739. Defendant County had to deny use of the property to Plaintiffs and came up with Plan B. On the permit **Exhibit 42** there is a place on the permit to place issues, stipulations and restrictions to be in compliance with the 2015 Michigan Residential Construction Code.

740. The 2018 permit had no issues, stipulations or restrictions in the area reserved for them to be in compliance with the 2015 Michigan Residential Construction Code.

741. On the Certificate of Occupancy Defendant County placed restrictions on use in the area reserved for them on the Certificate of Occupancy.

742. The  2015 Michigan Residential Construction Code110.3 Certificate Issued states:

After the building official inspects the building or structure and finds no violations of the

provisions of this code or other laws that are enforced by the department and

all permit and plan review fees are paid, the building official shall issue a certificate of

occupancy that contains all of the following:

(k)Any special stipulations and conditions of the building permit.

743. There were no stipulations or conditions on the 2018 Building Permit. **Exhibit 42.**

744. There were no stipulations or conditions on the 1992 Building Permit. **Exhibit 8.**

745. There should have been no special stipulations and conditions on Certificate of Occupancy that were not on the building permit.

746. Defendant County and Hunter violated R110.2.

747. One stipulation on the Certificate of Occupancy was based on a resolved Health Department issue.

748. Plaintiffs bought a chemical toilet and the Health Department approved its installation. **Exhibit 22.**

749. Therefore, Defendants County and Hunter committed fraud by attaching a known resolved issue to the Certificate of Occupancy.

750. Defendant Janik is the County Top Boss and wanted the home removed as per **Exhibit 3** and issued the orders to deny use and set Plaintiffs up in conspiracy with other Defendants to have the home removed through violations of the Michigan Residential Code Book.

751.  Defendant County did not treat Plaintiffs as equal treatment under the law in the 2020 Construction Appeal Hearing.

752.  Defendant Attorney Koches and firm had the obligation to treat Plaintiffs (as tax payers of a home) the Township Attorney of equal treatment under the law.

753.  Defendant Attorney Koches and firm did not treat Plaintiffs of equal treatment under the law of an Open Meeting, as per the Leelanau Township Zoning Ordinances, as per the MZEA, as per the 2020 Construction Appeal hearing, as conspiracy with other Defendants to deny Plaintiffs of their civil rights and property rights.

754.  Defendant Attorney Zeits and firm had the obligation to treat Plaintiffs (as HOA members) the HOA Attorney of equal treatment under the contract and under the law.

755.  Defendant Attorney Zeits and firm did not treat Plaintiffs (as HOA members) the HOA Attorney of equal treatment under the contract and under the law as per, Section 30 of the Protective Restrictive Contract and thus violated 42 USC **1981 (c)PROTECTION AGAINST IMPAIRMENT.**

756.  Defendant Unkown Financer of Litigation as third party through conspiracy denied Plaintiffs of equal treatment under the law.

757.  As a direct and proximate result of violation of  VIOLATION OF 42 USC 1983 VIOLATION OF EQUAL TREATMENT UNDER THE LAW AND VIOLATION OF THE 14TH ADMENDMENT OF THE US CONSTITUTION Plaintiffs have suffered damages,  but not limited to: the value of Lot 11, loss  of use of his property, loss of development of property, replacement cost of home, all costs to replace similar home in another area, lost wages, economic losses, repair costs, additional costs for repairs, additional costs to rework design for zoning, cost to tear down after repairs approved,

transfer of property for $445,000 cash (plus) since property    was made useless to

Plaintiffs,  mental/emotional  stress, punitive damages, exemplary damages, attorney fees

as allowed by statute and anything else allowed under the law.

## COUNT VIII
## VIOLATION OF 42 USC 1983
## VIOLATION OF FREEDOM OF SPEECH

758.  Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if

fully set forth herein.

759.  As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy

amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and

State Statutes, Ordinances and Codes continue as support of systemic racism, fraud,

conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

760.  The First Admentment of the US constitution states: Congress shall make no law
respecting an establishment of religion, or prohibiting the free exercise thereof; or
abridging the freedom of speech, or of the press; or the right of the people peaceably to
assemble, and to petition the Government for a redress of grievances.

761.  The first amendment of the US Constitution allows peaceful protest and freedom of

speech.

762.  On the week of Labor Day 2018 Plaintiff had a peaceful protest to how his family was

treated by The Shores HOA and Public Officials of Leelanau Township and County.

763.  Plaintiff passed out a brochure **Exhibit1**, to the public which contained the Settlement

Agreement.

764.  The public was not happy with the Settlement Language and the injustice committed by

the Defendants against Plaintiff's family.

765. As a result of the issues raised the public questioned the public officials of their actions.

766. This caused problems in public meetings.

767. Those minutes of those public meetings were never published as in other prior public meetings.

768. To prevent future protest by Plaintiff William Wizinsky Defendants filed a Motion that Plaintiff violated the Settlement Agreement.

769. Defendants' want to tear down the home sooner to ensure Plaintiff had no place to stay to protest again in person.

770. Plaintiffs did not violate the Settlement Agreement.

771. Defendant Attorney Zeits read into the transcript an email sent to public officials alleging Plaintiff's email was seeking and investigation, a violation of the Settlement Agreement.

772. Defendant Attorney Zeits stop reading the email right before where it stated in the email Plaintiff was not seeking an investigation but seeking law changes.

773. Defendant Attorney Zeits violated the Michigan Rules of Professional Conduct by presenting in Court a misrepresentation of the truth, when she knew the truth in the next few sentences.

774. Defendant Attorney Zeits committed fraud upon the court by presenting in Court a misrepresentation of the truth, when she knew the truth in the next few sentences.

775. The Court was biased to ensure no more public protest would occur to protect the public officials actions and even expose the Court to ridicule of racism.

776. The Court found in favor of the Motion to deny a sleeping place in the County to Plaintiffs to prevent further protest.

777. These actions by all Defendants and their influence were to shut down the exposure of the systemic racism.

778. Appellant had to post a $10,000 bond for the demolition of his just repaired home.

779. Appellants taxed as a home, home was torn down by Defendants.

780. Plaintiffs never stayed in the County again.

781. Plaintiff's never protested live in person in the County again.

782. These actions were a violation of Plaintiffs First Amendment Rights, the right to protest and to deny freedom of speech.

783. As a direct and proximate result of violation of  VIOLATION OF 42 USC 1983 VIOLATION OF FREEDOM OF SPEECH  Plaintiffs have suffered damages,  but not limited to: the value of Lot 11, loss  of use of his property, loss of development of property, replacement cost of home, all costs to replace similar home in another area, lost wages, economic losses, repair costs, additional costs for repairs, additional costs to rework design for zoning, cost to tear down after repairs approved, transfer of property for $445,000 cash (plus) since property  was made useless to Plaintiffs,  mental/emotional stress, punitive damages, exemplary damages, attorney fees as allowed by statute and anything else allowed under the law.

**COUNT IX**
**VIOLATION OF 42 USC 1983**
**VIOLATION OF TAKING OF PROPERTY WITHOUT COMPENSATION AND**
**VIOLATION  OF THE FIFTH ADMENTMENT  OF THE US CONSTITUTION**

784.  Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

785.  As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and State Statutes, Ordinances and Codes continue as support of systemic racism, fraud, conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

786.  **The Fifth Amendment of the US Constitution** states: No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, **nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.**

787.  All Defendants wanted the removal Plaintiffs structural on his property.

788.  All Defendants conspired together to achieve the goal of removal of the structure from the property.

789.  All Defendants conspired together to achieve the goal of removal of the structure from the property without compensation to Plaintiffs.

790.  There was no legal means to remove the structural unless Defendants bought the property and removed it.

791.  There is a legal means to buy a piece of property through zoning for nonconforming structures.

792.  Defendant Patmore declared the structure nonconforming in **Exhibit 17.**

793. Defendant The Shores, Defendants Township and Patmore had a legal means to remove
the alleged nonconforming structure by purchasing the property.

794. Defendant The Shores HOA was offered a means for the removal of the structure by
Plaintiffs, but it would require compensation for the removal.

795. Defendant The Shores HOA chose not to compensate Plaintiffs for the removal of the
structure and chose Coercion, abuse of process as a means for removal of the structure.

796. Defendants Township and Patmore did not offer to buy the property for the removal of
the structure.

797. Defendants Township and Patmore chose not to compensate Plaintiffs for the removal of
the structure and chose Coercion, abuse of process as a means for removal of the
structure.

798. Plaintiffs were never compensated for the removal of the structure.

799. Plaintiffs were never compensated for denied use of the structure.

800. Plaintiffs were never compensated for denied use of the property.

801. Defendants Township and Patmore unlawfully through violation of the MZEA and
Leelanau Township Zoning Ordinance and fraud denied use of the structure as it has
always been taxed as a home, without compensation.

802. Defendants Township and Patmore unlawfully through violation of the MZEA and
Leelanau Township Zoning Ordinance and fraud continued this in the 2020 Zoning
Appeal       Hearing without compensation to Plaintiffs.

803. Defendants County, Janik and Hunter unlawfully through violation of the 2015 Building
    Codes and fraud outlawed use of the structure as it has always been taxed as a home,
    without compensation.

804. Defendants County, Janik and Hunter unlawfully through violation of the 2015 Building
    Residential Codes, the Open Meetings Act and fraud continued this in the 2020
    Construction Appeal Hearing without compensation to Plaintiffs.

805. All Defendants directly or indirectly through conspiracy violated 42 USC 1983
    VIOLATION OF TAKING OF PROPERTY WITHOUT COMPENSATION AND
    VIOLATION OF THE FIFTH ADMENDMENT OF THE US CONSTITUTION, against
    Plaintiffs.

806. As a direct and proximate result of violation of  VIOLATION OF 42 USC 1983
    VIOLATION OF TAKING OF PROPERTY WITHOUT COMPENSATION AND
    VIOLATION OF THE FIFTH ADMENDMENT OF THE US CONSTITUTION
    Plaintiffs have suffered damages,  but not limited to: the value of Lot 11, loss  of use of
    his property, loss of development of property, replacement cost of home, all costs to
    replace similar home in another area, lost wages, economic losses, repair costs, additional
    costs for repairs, additional costs to rework design for zoning, cost to tear down after
    repairs approved, cost to tear down after repairs approved, transfer of property for
    $445,000 cash (plus) since property  was made useless to Plaintiffs,  mental/emotional
    stress, punitive damages, exemplary damages, attorney fees as allowed by statute and
    anything else allowed under the law.

## COUNT X
### FRAUD , A CON AND
### VIOLATION OF 18 USC § 1341 – FRAUDS AND SWINDLES AND
### 18 US CODE § 1343 - FRAUD BY WIRE, RADIO, OR TELEVISION

807. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

808. As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and State Statutes, Ordinances and Codes continue as support of systemic racism, fraud, conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

809. 18 US CODE § 1341 – FRAUDS AND SWINDLES states: Whoever, having devised or intending to devise any **scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations,** or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

810. For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

811. 18 U.S. Code § 1343 - FRAUD BY WIRE,RADIO, OR TELEVISION states: **Whoever, having devised or intending to devise any** scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations,

<u>or promises,</u> **transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the <u>Robert T. Stafford Disaster Relief and Emergency Assistance Act</u> (<u>42 U.S.C. 5122</u>)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.**

812. All Defendants pulled a con, fraud and conspiracy to defraud on Plaintiffs through there actions, inactions and violations of contract and /or US and Michigan Constitutions, State Statutes, Ordinances and/or codes.

813. The litigation filed was fraudulent for coercion, for abuse of process against Plaintiffs

814. The litigation filed was fraud upon the court.

815. Defendants Attorneys and firms tried to collect money for their fraud.

816. Defendants Attorneys and firms did collect money for their fraud.

817. All Defendants directly or through conspiracy pulled a con, fraud and conspiracy to defraud on Plaintiffs using the mail or other delivery system thereby have violated 18 US CODE § 1341 – FRAUDS AND SWINDLES.

818. All Defendants directly or through conspiracy pulled a con, fraud and conspiracy to defraud on Plaintiffs through email and/or electronic filing thereby have violated 18 US CODE § 1343 - FRAUD BY WIRE, RADIO, OR TELEVISION.

819.  As a direct and proximate result of violation of  VIOLATION OF18 USC § 1341 –

FRAUDS AND SWINDLES AND 18 U.S. Code § 1343 - FRAUD BY WIRE,RADIO,

OR TELEVISION Plaintiffs have suffered damages,  but not limited to: the value of Lot

11, loss  of use of his property, loss of development of property, replacement cost of

home, all costs to replace similar home in another area, lost wages, economic losses,

repair costs, additional costs for repairs, additional costs to rework design for zoning, cost

to tear down after repairs approved, transfer of property for $445,000 cash (plus) since

property  was made useless to Plaintiffs, mental/emotional  stress, punitive damages,

exemplary damages, attorney fees as allowed by statute and anything else allowed under

the law.

## COUNT XI
## VIOLATION OF 18 USC § 1349 – ATTEMPTS AND CONSPIRACY

820.  Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if

fully set forth herein.

821.  As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy

amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and

State Statutes, Ordinances and Codes continue as support of systemic racism, fraud,

conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

822.  18 US CODE§ 1349.ATTEMPT AND CONSPIRACY states: Any person who attempts
or conspires to commit any offense under this chapter shall be subject to the same
penalties as those prescribed for the offense, the commission of which was the object of
the attempt or conspiracy.

823.  All Defendants conspired together to commit fraud.

824.  All Defendants conspired together to cover up the fraud they committed.

825.  All Defendants violated  18 USC § 1349 – ATTEMPTS AND CONSPIRACY.

826.  As a direct and proximate result of violation of VIOLATION OF 18 USC § 1349 –

ATTEMPTS AND CONSPIRACY Plaintiffs have suffered damages,  but not limited to:

the value of Lot 11, loss  of use of his property, loss of development of property,

replacement cost of home, all costs to replace similar home in another area, lost wages,

economic losses, repair costs, additional costs for repairs, additional costs to rework

design for zoning, cost to tear down after repairs approved, transfer of property for

$445,000 cash (plus) since property  was made useless to Plaintiffs, mental/emotional

stress,  punitive damages, exemplary damages, attorney fees as allowed by statute and

anything else allowed under the law.

## COUNT XII
## VIOLATION OF THE PUBLIC DUTY DOCTRINE

**827.**  Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if

fully set forth herein.

828.  As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy

amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and

State Statutes, Ordinances and Codes continue as support of systemic racism, fraud,

conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

829.  Defendants cannot use the public immunity claim in support of systemic racism.

830.  Defendants cannot violate Constitutional law and claim immunity.

831.  Defendants actions were deliberate, understood the law and targeted Plaintiffs by not

treating Plaintiffs as equals all others.

832. Defendants' Public officials and municipalities have a duty to accurately apply the codes and ordinances equally to the public.

833. Defendants' Public officials and municipalities did not apply the codes and ordinances equally to Plaintiffs as to the general public.

834. As a direct and proximate result of violation of VIOLATION OF THE PUBLIC DUTY DOCTRINE Plaintiffs have suffered damages, but not limited to: the value of Lot 11, loss of use of his property, loss of development of property, replacement cost of home, all costs to replace similar home in another area, lost wages, economic losses, repair costs, additional costs for repairs, additional costs to rework design for zoning, cost to tear down after repairs approved, transfer of property for $445,000 cash (plus) since property was made useless to Plaintiffs, mental/emotional stress, punitive damages, exemplary damages, attorney fees as allowed by statute and anything else allowed under the law.

## COUNT XIII
## DEFAMATION

835. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

836. As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and State Statutes, Ordinances and Codes continue as support of systemic racism, fraud, conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

837. 28 U.S. Code § 4101 – Definitions states:(1)DEFAMATION

838. The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person.

839. Plaintiff William G. Wizinsky is a licensed architect and builder.

840. Defendants Township filed litigation for violation of the zoning ordinances.

841. Defendants Patmore assisted Defendant Township for the allegations of filed litigation for violation of the zoning ordinances.

842. There were no zoning violations that Plaintiffs violated.

843. There was no citation or fine levied for an alleged zoning violation.

844. Prior to the litigation there was no appeal process for an alleged zoning violation.

845. The Leelanau Township Zoning Ordinances required a $100 fine for a zoning violation.

846. Defendants Township and Patmore did not comply to their own Township Zoning Ordinances by not issuing a citation or fine.

847. Defendant County and Janik alleged Plaintiff's structure violated the code book in writing on June 22, 2017 in an email **Exhibits 3 and 14.**

848. Defendant County and Janik wanted Plaintiff's structure remove in writing on June 22, 2017 in an email **Exhibit 3 and 14.**

849. There was no code violations when this was stated.

850. In 2018 when a permit was issued **Exhibit 42** there was no code violation.

851. In 2018 when a permit was issued **Exhibit 42** there was no zoning violation.

852. The 2018 permit could not be issued **Exhibit 42** with an existing code violation.

853. The 2018 permit could not be issued **Exhibit 42** with an existing zoning violation.

854. Defendant County as seen in "Requirements for a Building Permit" **Exhibit 21,** a permit cannot be issued without compliance with the codes.

855. Defendant County issued a Building Permit in 2018, **Exhibit 42.**

856. Defendant County as seen in "Requirements for a Building Permit" **Exhibit 21,** permit cannot be issued without compliance with zoning.

857. The 2018 Certificate of Occupancy ensures the structure was in compliance with codes when issued. **Exhibit 20.**

858. The 2018 Certificate of Occupancy ensures the structure was in compliance with zoning when issued. **Exhibit 20.**

859. Therefore, Plaintiffs were not in violation of zoning or codes when inspected and issued a Certificate of Occupancy.

860. Plaintiffs were falsely charged as in violation of the codes.

861. Plaintiffs were falsely charged as in violation of zoning.

862. The building was removed based on these false charges.

863. A local paper published an article about the building to be removed based on zoning violations.

864. A local paper published an article about the building to be removed based on code violations.

865. Defendant The Shores alleged Protective Restriction Violations.

866. There were no protective restrictive violations because any such violations were waived through the approval processes.

867. Defendants are guilty of defamation based on the building being removed on false charges.

868. Plaintiff William G Wizinsky reputation was defamed as a licensed architect and Contractor by Defendants for false allegations.

869. If a licensed architect cannot comply to the zoning ordinances, the codes, and requirements of a protective agreement on his own structure, how would he then be hired to perform work for a client.

870. If a licensed builder cannot comply to the zoning ordinances, the codes, and the requirements of a protective agreement on his own structure, how would he then be hired to perform work for a client.

871. Plaintiff William Wizinsky as a licensed professional had performed work on other projects in Leelanau County prior to the litigation.

872. Plaintiff William Wizinsky as a licensed professional has not performed work on other projects in Leelanau County after the litigation.

873. The defamation by Defendants have denied Plaintiff William G. Wizinsky from performing work in Leelanau County.

874. Defendant have caused damage to Plaintiffs have caused damage to reputation and emotional distress, have presented Plaintiffs person in a false light, or have resulted in criticism, dishonor, or condemnation of Plaintiffs.

875. All Defendants conspiracy together caused defamation of Plaintiffs.

876. As a direct and proximate result of violation of  DEFAMATION Plaintiffs have suffered damages,  but not limited to: the value of Lot 11, loss  of use of his property, loss of development of property, replacement cost of home, all costs to replace similar home in another area, lost wages, economic losses, repair costs, additional costs for repairs, additional costs to rework design for zoning, cost to tear down after repairs approved, transfer of property for $445,000 cash (plus) since property          was made useless to Plaintiffs,  mental/emotional  stress, punitive damages, exemplary damages, attorney fees as allowed by statute and anything else allowed under the law.

### COUNT XIV
### VIOLATION OF THE MICHIGAN RULES
### OF PROFESSIONAL CONDUCT

877.   Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

878. As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and State Statutes, Ordinances and Codes continue as support of systemic racism, fraud, conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

879. The MRPC states **Rule: 1.6  Confidentiality of Information**

**880. The lawyer is part of a judicial system charged with upholding the law. One of the lawyer's functions is to advise clients so that they avoid any violation of the law in the proper exercise of their rights.**

**881. First, the lawyer may not counsel or assist a client in conduct that is illegal or fraudulent. See Rule 1.2(c). Similarly, a lawyer has a duty under Rule 3.3(a)(4) not to use false evidence. This duty is essentially a special instance of the duty prescribed in Rule 1.2(c) to avoid assisting a client in illegal or fraudulent conduct. The same is true of compliance with Rule 4.1 concerning truthfulness of a lawyer's own representations.**

**882. If the lawyer's services will be used by the client in materially furthering a course of criminal or fraudulent conduct, the lawyer must withdraw, as stated in Rule 1.16(a)(1).**

883. Attorney Seth Koches and firm violated the Rules of Professional Conduct Rule: 1.6 by not withdrawing from the case by using their services for furthering the course of fraudulent conduct by suing directly without statutory due process and treating Wizinskys unequal treatment under the law, by using public funds for a private law suit, by not allowing a citation, a hearing, a defense in violation of statutes: the Open Meetings Act, the Michigan Zoning Enabling Act, the Leelanau Township Zoning Ordinances; violated and misrepresentation in written pleadings and in oral argument that the Wizinskys violated a zoning ordinance and/or protective restriction when no violation existed.

884. Attorney Karrie Zeits and firm violated the Rules of Professional Conduct Rule: 1.6 by suing directly without contractual due process and treating the Wizinskys unequal treatment under the contract, by accepting/using public funds for assistance in a private law suit and misrepresentation in written pleadings and in oral argument that Wizinskys violated a protective restriction and /or zoning violation, when no violation existed. Also, Karrie Zeits and firm by assisting Attorney Seth Koches not allowing a citation, a hearing, a defense in violation of statutes: the Open Meetings Act, the Michigan Zoning Enabling Act, the Leelanau Township Zoning Ordinances; violated and misrepresentation

in written pleadings and in oral argument that Wizinskys violated a zoning ordinance or

protective restriction when none existed.

885.  The MRPC states **Rule: 1.7  Conflict of Interest: General Rule (a)A lawyer shall not represent a client if the representation of that client will be directly adverse to another client (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests**

886.  Attorney Seth Koches and firm may be in violation of Rule 1.7 Conflict of Interest in

representing himself and Leelanau Township in the Michigan Supreme Court Appeal.

887.  Attorneys Seth Koches (and firm) and Karrie Zeits  (and firm) may be in violation of

Rule 1.7 Conflict of Interest in representing themselves and their client's  Leelanau

Township and The Shores in this very case.

888.  Attorneys Seth Koches (and firm) and Karrie Zeits  (and firm) may be in violation of

Rule 1.7 Conflict of Interest in representing themselves and their client's  Leelanau

Township and The Shores in this very case , by taking money from a public source for

private litigation.

889.  Attorneys Seth Koches (and firm) and Karrie Zeits (and firm)  may be in violation of

Rule 1.7 Conflict of Interest in representing themselves and their client's  Leelanau

Township and The Shores in this very case, by taking money for finances of a third party

as per Defendant Unknown Financer of Litigation.

890.  The MRPC states **Rule: 8.4  Misconduct It is professional misconduct for a lawyer to: (a)violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;**

891.  Both Attorneys (and firms) working as co-plaintiffs' attorneys  violated Rule: 8.4 (a)

Misconduct  their clients filing one law suit as a team, violated Rule: 8.4 (a) Misconduct

by signing the complaint and pleadings as well as oral argument are responsible for their

own violations of Michigan Rules of Professional Conduct as well as their partners

violations of Rules of Professional Conduct.

892. The MRPC states **Rule: 8.4  Misconduct It is professional misconduct for a lawyer to: (b) engage in conduct involving dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer;**

893. Attorney Seth Koches (and firm)  violated the Rules of Professional Conduct Rule: 8.4

Misconduct (b) by suing directly without statutory due process and treating Wizinskys

unequal treatment under the law,  by using public funds for a private law suit, by not

allowing a citation, a hearing, a defense in violation of statutes: the Open Meetings Act,

the Michigan Zoning Enabling Act, the Leelanau Township Zoning Ordinances; violated

and misrepresentation in written pleadings and in oral argument that the Wizinskys

violated a zoning ordinance and/or protective restriction.

894. Attorney Karrie Zeits(and firm)  violated the Rules of Professional Conduct Rule: 8.4

Misconduct (b) by suing directly without contractual due process and treating the

Wizinskys unequal treatment under the contract,  by accepting public funds for

assistance in a private law suit,  and misrepresentation in written pleadings and in oral

argument that Wizinskys violated a protective restriction/zoning violation. Also, by

assisting Attorney Seth Koches not allowing a citation, a hearing, a defense in violation

of statutes: the Open Meetings Act, the Michigan Zoning Enabling Act, the Leelanau

Township Zoning Ordinances; violated and misrepresentation in written pleadings and in

oral argument that Wizinskys violated a zoning ordinance.

895. Both Attorneys and (and firms) by taking through fraud money from Plaintiffs crossed

the line from civil fraud to criminal fraud through their violations of MRPC.

**896.** The MRPC states **Rule: 8.4  Misconduct It is professional misconduct for a lawyer to: ( c)engage in conduct that is prejudicial to the administration of justice;**

897. Attorney Seth Koches  (and firm) violated the Rules of Professional Conduct Rule: 8.4 Misconduct (c) by suing directly without statutory due process and treating Wizinskys unequal treatment under the law,  by using public funds for a private law suit, by not allowing a citation, a hearing, a defense in violation of statutes: the Open Meetings Act, the Michigan Zoning Enabling Act, the Leelanau Township Zoning Ordinances; violated and misrepresentation in written pleadings and in oral argument that the Wizinskys violated a zoning ordinance and/or protective restriction.

898. Attorney Karrie Zeits (and firm) violated the Rules of Professional Conduct Rule: 8.4 Misconduct (c) by suing directly without contractual due process and treating the Wizinskys unequal treatment under the contract,  by accepting public funds for assistance in a private law suit,  and misrepresentation in written pleadings and in oral argument that Wizinskys violated a protective restriction/zoning violation. Also, by assisting Attorney Seth Koches (and firm)  not allowing a citation, a hearing, a defense in violation of statutes: the Open Meetings Act, the Michigan Zoning Enabling Act, the Leelanau Township Zoning Ordinances; violated and misrepresentation in written pleadings and in oral argument that Wizinskys violated a zoning ordinance and/or protective restriction.

**899.** The MRPC states Rule: **8.4  Misconduct It is professional misconduct for a lawyer to: knowingly assist a judge or judicial officer in conduct that is a violation of the Code of Judicial Conduct or other law.**

900. Attorney Seth Koches (and firm) violated the Rules of Professional Conduct Rule: 8.4 Misconduct (e)using a biased court system for  enforcement of systemic racism for the removal of a black family from the community in violation of the US Constitution, State

Constitution and other Federal and State Statutes, ordinances and codes directly and

through conspiracy.

901. Attorney Karrie Zeits (and firm) violated the Rules of Professional Conduct Rule: 8.4

Misconduct (e)using a biased court system for  enforcement of systemic racism for the

removal of a black family from the community in violation of the US Constitution, State

Constitution and other Federal and State Statutes ordinances and codes directly and

through conspiracy.

**902.** The MRPC states **Rule: 4.2 (b) (c) Communication With a Person Represented by Counsel (b) An otherwise self-represented person receiving limited representation in accordance with Rule 1.2(b) is considered to be self-represented for purposes of this rule unless the opposing lawyer knows of, or has been provided with, a written notice of limited appearance comporting with MCR 2.117(B)(2)(c) or other written communication advising of the limited scope representation. Oral communication shall be made first to the limited scope representation lawyer, who may, after consultation with the client, authorize oral communications directly with the client as agreed.  Until a notice of termination of limited scope representation comporting with MCR 2.117(B)(2)(c) is filed, or other written communication terminating the limited scope representation is provided, all written communication, both court filings and otherwise, shall be served upon both the client and the limited scope representation attorney.**

903. Attorney Seth Koches  (and firm) and Karrie Zeits (and firm) violated the Rules of

Professional Conduct Rule 4.3(b) (c) by not serving Plaintiff a Motion and/or negotiating in

good faith a mutual release and/or giving him the same rights and courtesies given to a licensed

attorney.

**904.** The MRPC states **Rule: 4.3  Dealing With a Self-Represented Person**

**(b)Clients receiving representation under a notice of limited appearance comporting with MCR 2.117(B)(2)(c) or other written communication advising of the limited scope   representation are not self-represented persons for matters within the scope of the limited appearance, until a notice of termination of limited appearance representation comporting  with MCR 2.117(B)(2)(c) is filed or other written communication terminating the limited    scope representation is in effect. See Rule 4.2.**

905. Attorney Seth Koches (and firm)  and Karrie Zeits  (and firm) violated the Rules of

Professional Conduct Rule 4.3(b)  Dealing With a Self-Represented Person by not serving him

a Motion and/or negotiating in good faith a mutual release and/or giving him the same rights and

courtesies given to a licensed attorney.

**906.** The MRPC states **Rule: 4.1 Truthfulness in Statements to Others In the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person. . A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. <u>Making a false statement may include the failure to make a statement in circumstances in which silence is equivalent to making such a statement.</u> When the falsity of the original statement by the lawyer resulted from reliance upon what was told to the lawyer by the client and if the original statement if left uncorrected may further a criminal or fraudulent act by the client, the provisions of Rule 1.6(c)(3) give the lawyer discretion to make the disclosure necessary to rectify the consequences. ….. Estimates of price or value placed on the subject of a transaction and a party's intentions as to an acceptable settlement of a claim are in this category, and so is the existence of an undisclosed principal except where nondisclosure of the principal would constitute fraud. *FRAUD BY CLIENT***

907. Attorney Seth Koches  (and firm) and Karrie Zeits (and firm) violated the Rules of

Professional Conduct Rule 4.1  by not being truthful through the whole process and in

mediation and the Settlement Agreement was not remedial, outside the scope of their clients

authority, was an abuse of process, to remove a black family from the community.

**908.** The MRPC states **Rule: 3.2  Expediting Litigation A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.**

909. Lawyer Seth Koches (and firm) violated Rule: 3.2  by not representing the best interests

of  his client Leelanau Township but the best interests of  the Township Board, by

directly suing on their behalf and denying the statutory due process and equal protection

of Federal and State Statutes and the US Constitution to the Wizinskys. Thereby they left

the client Leelanau Township liable to the Wizinskys' claims of violations of

Constitutional Law and other Federal and State Statutes.

910. Lawyer Karrie Zeits (and firm) violated Rule: 3.2  by not representing the best interests

of  her client The Shores HOA but the best interests of  the Shores  Board, by directly

suing on their behalf and denying the statutory due process and equal protection of  the

contract, Federal and State Statutes and the US Constitution to the Wizinskys. Thereby

they left the client The Shores HOA liable to the Wizinskys' breach of contract claim,

claims of violations of Constitutional Law and other Federal and State Statutes.

911. The MRPC states **Rule: 3.1  Meritorious Claims and Contentions: The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also has a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed.**

912. Lawyer Seth Koches  (and firm) violated Rule: 3.2  by not fulfilling the legal duties he

had to his client Leelanau Township  and the Wizinskys as part-time residents of the

Township by following the required and legal obligation  of both procedural and

substantial state due process and equal treatment under the law based on the US

Constitution, Federal, State Statutes and Leelanau Township Zoning Ordinances.

**Exhibit 34.**

913. The Wizinskys pays property taxes on their property and home and thereby is paying

Seth Koches (and firm) as the Township Attorney, a Township part time resident is a

client of Seth Koches and has the rights to due process and equal treatment required by

law of the Open Meeting Act, the Township Zoning Ordinances and the Michigan

Zoning  Enabling Act . **Exhibit 34.**

914. The Wizinskys did not receive the same due process and equal treatment under the law

by Seth Koches (and firm) as is given to other Township residents, thereby Seth Koches

(and firm) violated the US Constitution, Federal and State Statutes.

915. Lawyer Karrie Zeits (and firm) violated Rule: 3.2  by not fulfilling the legal duties she

had to her client The Shores HOA and the Wizinskys as ownership in the HOA and

whom pays dues into the HOA which pays her legal fees by following the required and

legal obligation of both procedural and substantial due process and equal treatment under

the HOA Protective Restrictions as well as case law **Exhibit 28** ,based on the US Constitution, Federal, and State Statutes.

916. The Wizinskys pays Dues on their property/home and thereby is paying Karrie Zeits as a property/homeowner is a client of the Karrie Zeits and has the rights to due process and equal treatment required by law and the protective restrictions.

917. The Wizinskys did not receive the same due process and equal treatment under the Protective Restrictions as by other members of the HOA by Karrie Zeits thereby Karrie Zeits and firm violated the Wizinskys' US Constitution, Federal and State Statutes.

918. Defendant Lawyer Karrie Zeits (and firm) violated Rule: 3.2 by assisting Defendant Lawyer Koches (and firm) violated Rule: 3.2 by not fulfilling the legal duties he had to his client Leelanau Township and the Wizinskys as part-time residents of the Township by following the required and legal obligation of both procedural and substantial state due process and equal treatment under the law based on the US Constitution, Federal, State Statutes and Leelanau Township Zoning Ordinances.

919. **Rule: 3.1 Meritorious Claims and Contentions: The action is frivolous, however, if the lawyer is unable either to make a good-faith argument on the merits of the action taken or to support the action taken by a good-faith argument for an extension, modification, or reversal of existing law.**

920. Attorney Seth Koches (and firm)Violated Rule 3.1 because he knew there were no zoning violation, that the Wizinskys changed the Gazebo exactly to the requirements of zoning by Mr. Patmore and knew the County issued a Certificate of Occupancy in compliance with zoning. Defendant Seth Koches (and firm) when filing the litigation that if a violation existed it was only $100 fine. The litigation was coercion, a rouse and abuse of process.

**921.** Attorney  Karrie Zeits (and firm) violated Rule 3.1 because she knew that the protective restrictions were originally waved, the Gazebo was approved by previous Shores Authority, that she herself approves the repairs, thereby knew the protective restrictions did not apply and there was no good faith argument to be made because there was no protective restriction in violation. The litigation was a rouse and abuse of process.

**922.** Defendant Attorney  Karrie Zeits (and firm) Violated Rule 3.1 by assisting Attorney Seth Koches (and firm ) violated Rule: 3.1 Candor toward the tribunal of both the Leelanau Township  Board Meeting of September 11, 2018 and the 2020 Zoning Appeals Hearing by participating in fraudulent conduct that undermines the integrity of the adjudicative process.

**923. The MRPC states Rule: 3.3  Candor Toward the Tribunal (a) A lawyer shall not knowingly:**

**make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;**

**fail to disclose to a tribunal controlling legal authority in the jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or**

**offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal**

**(b)If a lawyer knows that the lawyer's client or other person intends to engage, is engaging, or has engaged in criminal or fraudulent conduct related to an adjudicative proceeding involving the client, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.**

**(e )When false evidence is offered, ….  The advocate should seek to withdraw if that will remedy the situation.**
**Consequently, although a lawyer in an adversary proceeding is not required to present an impartial exposition of the law or to vouch for the evidence submitted in a cause, the lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false.**
**However, an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only**

when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation. The obligation prescribed in Rule 1.2(c) not to counsel a client to commit or assist the client in committing a fraud applies in litigation. Regarding compliance with Rule 1.2(c), see the comment to that rule. See also the comment to Rule 8.4(b).

**LEGAL ARGUMENT**

Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities. Furthermore, as stated in paragraph (a)(2), an advocate has a duty to disclose directly controlling adverse authority that has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.  Paragraph (a)(3) requires that a lawyer refuse to offer evidence that the lawyer knows to be false, regardless of the client's wishes.

**PRESERVING INTEGRITY OF ADJUDICATIVE PROCESS.**

Lawyers have a special obligation to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process, such as bribing, intimidating, or otherwise unlawfully communicating with a witness, juror, court official, or other participant in the proceeding, unlawfully destroying or concealing documents or other evidence, or failing to disclose information to the tribunal when required by law to do so.  Thus, paragraph (b) requires a lawyer to take reasonable remedial measures, including disclosure, if necessary, whenever the lawyer knows that a person, including the lawyer's client, intends to engage, is engaging, or has engaged in criminal or fraudulent conduct related to the proceeding.  See Rule 3.4.

924. Attorney Seth Koches (and firm) violated Rule: 3.3 Candor toward the tribunal of both the Leelanau Township  Board Meeting of September 11, 2018 and the 2020 Zoning Appeals Hearing by participating in fraudulent conduct that undermines the integrity of the adjudicative process.

925. Attorney Karrie Zeits (and firm) violated Rule: 3.3 Candor toward the tribunal of The Shores Board by participating in fraudulent conduct that undermines the integrity of the adjudicative process.

**926.** Defendant Attorney Karrie Zeits (and firm) assisted Attorney Seth Koches (and firm) violate Rule: 3.3 Candor toward the tribunal of both the Leelanau Township Board Meeting of September 11, 2018 and the 2020 Zoning Appeals Hearing by participating in fraudulent conduct that undermines the integrity of the adjudicative process.

**927.** The MRPC states **Rule: 3.4 Fairness to Opposing Party and Counsel A lawyer shall not:**

**falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;**

**(c ) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists; The procedure of the adversary system contemplates that the evidence in a case is to be marshaled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improper influence of witnesses, obstructive tactics in discovery procedure, and the like.**

928. Attorney Seth Koches (and firm) violated Rule: 3.4 the obligation of an Open Meetings Act, allowing a defense by the Wizinskys in the closed Township Board Meeting where the decision was to sue directly was made in violation of the Township Zoning Ordinances and the Michigan Zoning Enabling Act, which is allowed by all other white people.

929. Attorney Seth Koches (and firm) violated Rule: 3.4 the obligation of the decision in the Township Zoning Board Meeting by not allowing the Zoning Board to make the decision were there a violation of specific ordinances, where as they apply the application of zoning ordinances to white people in the Township as the basis of their decision.

930. Defendants Attorneys Koches (and firm) and Zeits ( and firm) wrote litigation and litigated on the knowledge that there was no actual zoning violation or protective restriction. Thereby misrepresented the truth; presented to all tribunals and the Court as

material fact in oral argument and written pleadings and thus violated the Michigan Rules of Professional Conduct.

931. Defendants Attorneys Koches (and firm) and Zeits (and firm) wrote litigation and litigated on the knowledge that there was no actual zoning violation or protective restriction that allowed direct litigation, without the due process allowed to all other (white) people.  Thereby they violated the Protective Restriction contract, MZEA, Township Zoning Ordinances the cause of actions upon the Wizinskys. Thereby misrepresented the truth; presented to all tribunals and the Court as material fact in oral argument and written pleadings and thus violated the Michigan Rules of Professional Conduct.

932. Defendants Attorneys Koches (and firm) and Zeits (and firm) wrote litigation and litigated on the knowledge that there was no actual zoning violation or protective restriction that allowed direct litigation, without the due process allowed to all other (white) people.  Thereby they violated the Protective Restriction contract, the MZEA, Township Zoning Ordinances the cause of actions upon the Wizinskys. They never remediated this, therefore this misrepresentation was allowed to stand. Thereby misrepresented the truth; presented to all tribunals and the Courts as material fact in oral argument and written pleadings and thus violated the Michigan Rules of Professional Conduct.

933. Defendants Attorneys Koches (and firm) and Zeits through assistance and directly (and firm) wrote litigation and litigated on the knowledge that there was no actual zoning violation or protective restriction that allowed direct litigation, without the due process allowed to all other (white) people.  Thereby they violated the Protective Restriction

contract , the MZEA, Township Zoning Ordinances the cause of actions upon the

Wizinskys. They never remediated this; therefore, this misrepresentation was allowed to

stand. Thereby misrepresented the truth; presented to all tribunals and the Courts as

material fact in oral argument and written pleadings and thus violated the Michigan Rules

of Professional Conduct and committed FRAUD through the process and in negotiations

in mediation of the Settlement Agreement.


934. The MRPC states **Rule: 3.9  Advocate in Nonadjudicative Proceedings**

**A lawyer representing a client before a legislative or administrative tribunal in a
nonadjudicative proceeding shall disclose that the appearance is in a representative
capacity and shall conform to the provisions of Rules 3.3(a) through (c), 3.4(a)
through (c), and 3.5.**
**In representation before bodies such as legislatures, municipal councils, and
executive and administrative agencies acting in a rule-making or policy-making
capacity, lawyers present facts, formulate issues, and advance argument in the
matters under consideration. The decision-making body, like a court, should be able
to rely on the integrity of the submissions made to it. A lawyer appearing before
such a body should deal with the tribunal honestly and in conformity with
applicable rules of procedure**

935. Attorney Koches  (and firm) violated Rule 3.9 in his presentation in the 2018 Leelanau

Township Board Meeting and the 2020  Zoning Appeal  Hearing  by not dealing with the

Tribunals honestly and in conformity of the applicable rules of procedure, of due process,

open meeting, and denying of statute required standards for decision making. Thereby

misrepresented the truth; presented to all tribunals and the Courts as material fact in oral

argument and written pleadings and thus violated the Michigan Rules of Professional

Conduct.

936. Attorney Keits (and firm) violated Rule 3.9 of the Tribunal of The Shores Board by direct

litigation by not dealing with the Tribunal The Shores HOA Board honestly and in

conformity of the applicable rules of procedure by denying the Wizinskys the contractual due process of a hearing required by contract which requires notification as per case law, a citation and a defense in an open Board meeting prior to litigation.

**937.** Attorney Keits (and firm) assisted Attorney Koches  (and firm) violate Rule 3.9 in his presentation in the 2018 Leelanau Township Board Meeting and the 2020  Zoning Appeal  Hearing  by not dealing with the Tribunals honestly and in conformity of the applicable rules of procedure, of due process, open meeting, and denying of statute required standards for decision making. Thereby misrepresented the truth; presented to all tribunals and the Courts as material fact in oral argument and written pleadings and thus violated the Michigan Rules of Professional Conduct.

**938.** Attorneys Koches (and firm) and Zeits (and firm) denial of due process was because there was no zoning ordinance or protective restriction which would be revealed in such required process thereby, they misrepresented the truth; presented to all tribunals and the Courts as material fact in oral argument and written pleadings and thus violated the Michigan Rules of Professional Conduct and committed FRAUD through the process and in negotiations in mediation of the Settlement Agreement.

939. As a direct and proximate result of violation of  VIOLATION OF THE MICHIGAN RULES OF PROFESSIONAL CONDUCT Plaintiffs have suffered damages,  but not limited to: the value of Lot 11, loss  of use of his property, loss of development of property, replacement cost of home, all costs to replace similar home in another area, lost wages, economic losses, repair costs, additional costs for repairs, additional costs to rework design for zoning, cost to tear down after repairs approved, transfer of property for $445,000 cash (plus) since property was made useless to Plaintiffs,  mental/emotional

stress, punitive damages, exemplary damages, attorney fees as allowed by statute and anything else allowed under the law.

## COUNT XV
## MALPRACTICE

**940.**  Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

941. As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and State Statutes, Ordinances and Codes continue as support of systemic racism, fraud, conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

**942.** The Courts see Attorneys in a different light than Pro Per people because as officers of the Court they have strict requirements for their profession such as the **MICHIGAN RULES OF PROFESSIONAL CONDUCT.**

943. The American Bar Association has a similar or exact same document as a standard nationally for **RULES OF PROFESSIONAL CONDUCT.**

944. A violation of the Michigan Rules of Professional Conduct by an attorney is grounds for a Malpractice Claim.

945. There are two types of claims for malpractice a client-attorney malpractice claim and a nonclient-attorney malpractice claim.

946. Leelanau Township is the client of Defendants Seth Koches and his firm.

947. The Wizinskys pay taxes on their property and on the home that use to be on the property. Those taxes pay the wages of the Township Attorney Defendants Seth Kotches and his firm.

948. Thereby the Leelanau Township attorney Seth Kotches and firm has a legal obligation to uphold the law equally by all the people full time and part-time residents in the Leelanau Township.

949. Thereby the Wizinsky's as part-time residents are clients of the Leelanau Township Attorney as a part-time resident and has the same protections under the Township Zoning Ordinances, the Michigan Zoning Enabling Act and the Open Meeting Act as the Township people.

950. Defendant Attorney Seth Kotches and his firm in directly suing the Wizinskys "a client" as a part-time resident without the due process required by law violated the  laws , ordinances, state statutes and federal  law, and knowingly assist or induce another to do so, or do so through the acts of another the contract, local laws , ordinances, state statutes and federal  law, as  to Karrie Zeits by being co-plaintiffs, thereby violated the Michigan Rules of Professional Conduct is liable for their actions and in-actions, unequal treatment under the law is malpractice.

951. Attorney Karrie Zeits and her firm in directly suing the Wizinskys "a client" as a part-time resident without the due process required by law violated the contract, and knowingly assist or induce another to do so, or do so through the acts of another the  local laws , ordinances, state statutes and federal  law, as a to Seth Kotches(and firm) by being co-plaintiffs, thereby violated the Michigan Rules of Professional Conduct is liable for their actions and in actions, unequal treatment under the law for malpractice.

952. Defendants Attorneys Zeits and Koches (and firms) client's fraud scheme was dependent on an attorney's services and thereby is common law fraud liability.

953. Defendants Attorneys Zeits and Koches (and firms)  knowingly entered into direct litigation without the required due process and was coercion, an abuse of process, thereby have liability.

954. Defendants Attorneys Zeits and Koches (and firms)  knowingly assisted their client's in a CON using the litigation to force Appellant's off the property outside the scope of their clients authority.

955. Defendants Attorneys Zeits and Koches (and firms)  employed by their clients made misrepresentation of material fact to pull off the CON on the Wizinskys and their attorney.

956. Defendants Attorneys Zeits and Koches (and firms)  as part of the CON, new the Wizinskys would rely on the misrepresentation which was the purpose of the CON.

957. The Wizinskys relied on the CON and signed the Settlement Agreement  a business transaction that cause them harm based on Defendants Attorneys Zeits and Koches (and firms) misrepresentation.

958.  A negligent misrepresentation claim is malpractice.

959. As a direct and proximate result of MALPRACTICE Plaintiffs have suffered damages, but not limited to: the value of Lot 11, loss  of use of his property, loss of development of property, replacement cost of home, all costs to replace similar home in another area, lost wages, economic losses, repair costs, additional costs for repairs, additional costs to rework design for zoning, cost to tear down after repairs approved, transfer of property for $445,000 cash (plus) since property was made useless to Plaintiffs,   mental/emotional stress, punitive damages, exemplary damages, attorney fees as allowed by statute and anything else allowed under the law.

## COUNT XVI
## FRAUD UPON THE COURT

**960.** Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if
fully set forth herein.

961. As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy
amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and
State Statutes, Ordinances and Codes continue as support of systemic racism, fraud,
conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

**962.** Definition of FRAUD ON THE COURT- Fraud on the court occurs when the judicial
machinery itself has been tainted, such as when an attorney, who is an officer of the
court, is involved in the perpetration of a fraud or makes material misrepresentations to
the court. Fraud upon the court makes void the orders and judgments of that court.

**963.** Defendant Attorneys and their firms (other attorneys in firm) are officers of the court.

964. Defendant Attorneys firms allows their attorneys, endorses their attorney's
misrepresentation upon the court.

965. Defendant Attorneys perpetrated fraud on the court by assisting their clients in the frauds
perpetrated on Plaintiffs and presented those misrepresentations to the court.

966. There were no zoning or protective restrictions violations.

967.  Defendant Attorneys (and firms) did not give due process under the law and contract and falsely represented the material facts directly and by omission in pleadings and in oral argument.

968.  Defendant Attorneys and their Defendant Firms actions and inactions mislead the court and thus committed fraud upon the court.

969.  As a direct and proximate result of violation of  FRAUD UPON THE COURT Plaintiffs have suffered damages,  but not limited to: the value of Lot 11, loss  of use of his property, loss of development of property, replacement cost of home, all costs to replace similar home in another area, lost wages, economic losses, repair costs, additional costs for repairs, additional costs to rework design for zoning, cost to tear down after repairs approved, transfer of property for $445,000 cash (plus) since property  was made useless to Plaintiffs,  mental/emotional  stress, punitive damages, exemplary damages, attorney fees as allowed by statute and anything else allowed under the law.

## COUNT XVII
## MALICIOUS USE OF PROCESS

**970.**  Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

971.  As per the Continuous Violations Doctrine, all Defendants actions, inactions, conspiracy amongst Defendants, violation of the US Constitution, Michigan Constitution, Federal and State Statutes, Ordinances and Codes continue as support of systemic racism, fraud, conspiracy to defraud, coercion, abuse of process against Plaintiffs in a continuing manner.

972.  If Plaintiffs wins any issue on appeals, the coercion, abuse of process can become malicious abuse of process, therefore this count is pending and included.

973.  All Defendants' actions were a malicious use of process to force a newly created black family off their property of over 25 years.

974.  As a direct and proximate result of violation of  VIOLATION OF MALICIOUS USE OF PROCESS Plaintiffs have suffered damages,  but not limited to: the value of Lot 11, loss of use of his property, loss of development of property, replacement cost of home, all costs to replace similar home in another area, lost wages, economic losses, repair costs, additional costs for repairs, additional costs to rework design for zoning, cost to tear down after repairs approved, transfer of property for $445,000 cash (plus) since property   was made useless to Plaintiffs,  mental/emotional  stress, punitive damages, exemplary damages, attorney fees as allowed by statute and anything else allowed under the law.

WHEREFORE, Plaintiffs are seeking $10,000,000; since what happened to Plaintiff's family was deliberate, with intent to force them off their property of 30 years. Defendants made the property useless to Plaintiffs which can never be replaced, since this land was unique. It denied Plaintiffs of their history and lifestyle of over 23 happy years with their home, property and the community. Plaintiff had confirmed by two sources that it was because of racism from Plaintiff's adoption of his African American daughter. Plaintiffs prays that this Honorable Court enter a judgment in his favor of Plaintiffs against all Defendants through the Jury with all means of relief available including injunctive relief, financial damages, exemplary damages, punitive damages and in an amount that this Court agrees just for denial of constitutional rights, civil rights, property rights, violation of federal and state statutes by Public Officials, Public Government Entities, Attorneys, and other Defendants ; plus costs, interest and attorney fees.

Respecively submitted,

William G. Wizinsky

Ann M. Wizinsky
Plaintiffs In Pro Per
(until Council is retained)
250 Pleasant Cove Drive
Dated: June 13, 2021                                 Novi, MI 4837

I Ann M. Wizinsky authorize my Husband William G. Wizinsky to represent both our interests in this litigation.

Ann M. Wizinsky

## **JURY DEMAND**

Plaintiffs William G. Wizinsky and Ann M. Wizinsky hereby demands a trial by jury.

Respectively submitted,

William G. Wizinsky

Ann M. Wizinsky
Plaintiffs In Pro Per
(until Council is retained)
250 Pleasant Cove Drive
Novi, MI 48377

Dated: June 13, 2021