UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM G. WIZINSKY and
ANN M. WIZINSKY,

       Plaintiffs,

v.

LEELANAU TOWNSHIP, THE SHORES
HOMEOWNERS ASSOCIATION, T. SETH
KOCHES, KARRIE A. ZEITS; BAUCKHAM,
SPARKS, THALL, SEEBER & KAUFMAN, PC;
SONDEE, RACINE & DOREN, PLC; LEELANAU
COUNTY, CHET JANIK, PAUL HUNTER,
STEVE PATMORE and UNKNOWN FINANCERS
OF LITIGATION,

       Defendants.

Case No.  1:21-CV-496

HON.  JANET T. NEFF
MAG. JUDGE SALLY J. BERENS

_____

## DEFENDANT STEPHEN HOLMES' BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

### INTRODUCTION

This is the third lawsuit Plaintiffs have filed in this Court arising out of the same underlying set of facts. The first, Case No. 1:19-cv-191, was dismissed as being duplicative of the second – Case No. 1:19-cv-894. The second case was dismissed in an Opinion and Order by Judge Neff dated September 30, 2020, (*Id*. ECF No. 82) adopting Judge Berens's Report and Recommendation. (*Id*. ECF No. 75). A judgment was entered on September 30, 2020. (*Id*. ECF No. 83). The judgment was affirmed by the Sixth Circuit on July 1, 2021. (**Exhibit A**). At bottom, the Plaintiffs claim they have been wrongfully treated because they were prevented from utilizing a structure on their property as a dwelling. For the reasons that follow, the

Plaintiffs' 130-page, 974 paragraph, 17 count Complaint, fails to state a claim upon which relief can be granted and should be dismissed.

## STANDARD OF REVIEW

Rule 12(b)(6) authorizes the court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss for failure to state a claim, a court must construe the complaint in the light most favorable to the non-movant and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## STATEMENT OF FACTS

The following facts are taken from the Report and Recommendation in Case No. 1:19-cv-894:

### A. A Gazebo is Built

William and Ann Wizinsky own Lot 11 in the Shores Subdivision located in Leelanau Township, Leelanau County, Michigan. This lot, commonly known as 12063 Foxview Drive, Northport, Michigan 49670 (the "Property") is within the Shores Home Owners Association (the "HOA"), a co-defendant. In 1992, Plaintiffs sought permission from the HOA, the Township, and the County to build a treehouse/gazebo on the Property. The township issued a Land Use Permit for a gazebo with a specific use identified as "shed." The permit did not

authorize Plaintiffs to use the structure as a dwelling. Upon completion, the gazebo, which sat off the ground on stilts, was classified as Class D-10, Single-Family Detached for the purposes of property taxes. This classification has never been challenged by the Plaintiffs.

Twenty-three years later in 2015, Plaintiffs added a first story to this preexisting structure without the approval of the HOA for the expansion. They also failed to obtain any permits or approvals from the Township or County for this construction. After adding this expansion to the gazebo it was damaged by a storm, causing Plaintiffs to apply for approval to repair storm damage to the gazebo.  The Township and County subsequently discovered these new additions and learned that the existing gazebo structure did not conform to the plans that had been approved in 1992 and that no Certificate of Occupancy has been granted. In addition, it is determined that no final inspection of the structure had ever been performed.

### B. Permits for Repair and Complaint with the State

In addition to his application for a permit to repair the storm-damaged gazebo, Plaintiffs applied for a permit to construct the now-existing addition to the gazebo. The HOA requested that the health department investigate the Plaintiffs' occupancy of the gazebo, leading to a directive to the Plaintiffs to vacate the gazebo under approval and installation of water and septic systems occurs. The County determined that a permit to repair the storm damage to the gazebo was acceptable, but the Township declined to issue a retroactive permit for constructing the addition.

The Township informed Plaintiffs that they must remove the non-conforming and unapproved addition until he either obtained a variance or prevailed in an appeal on his denied application for a permit. The Township further reiterated that the gazebo could not

be used as a dwelling. The County ultimately granted a restricted certificate of occupancy following the completion of the repair work, but it too informed Plaintiffs that the gazebo could not be used as a dwelling.

Around the same time the County granted a restricted certificate of occupancy, Plaintiffs filed a complaint with the Michigan Department of Civil Rights (the "MDCR"). In their complaint Plaintiffs claimed the Township discriminated against Plaintiff, who is White, because his adopted daughter was African-American. The denial of a permit and the ability to repair his home was allegedly racially motivated. The MDCR dismissed the complaint in April 2018 due to insufficient evidence to proceed. Plaintiffs allege the MDCR investigator had found significant circumstantial evidence of racism, but not enough for prosecution, something the investigator categorically denied saying.

### C. The Plaintiffs are Sued in State Court

Plaintiffs, having violated the HOA's restrictive covenants and the Township's ordinances were served with a state court lawsuit in October 2018. The Township and the HOA asserted a claim Plaintiffs for nuisance per se, with the HOA also asserting claims for violation of the HOA restrictive covenants. The HOA also brought a libel claim against Plaintiffs related to the published accusations of racial discrimination which Plaintiffs refused to retract. In the face of the suit Plaintiffs mediated the dispute and entered into a settlement agreement.

The settlement agreement called for Plaintiffs to list the Property for sale within 30 days and condition any sale on removal of the gazebo. The HOA and Township agreed not to pursue any enforcement action against Plaintiffs for their violations of the restrictive covenants and ordinances. The parties further agreed that if the Property did not sell by

October 2021, a pocket judgment that provided for the removal of the gazebo would be entered. The parties further agreed that, should Plaintiffs breach the settlement agreement at any time, the pocket judgment would be entered. There was also agreement from the Plaintiffs that they would refrain from filing any investigation request, administrative complaints, or civil claims related to any acts that allegedly occurred prior to the date of the settlement agreement. The state court entered a stipulated order of dismissal but retained jurisdiction in order to enforce the terms of the settlement agreement if it proved necessary.

Plaintiffs breached the settlement agreement quickly when they refused to sign a mutual release. This led the Township and HOA to move for enforcement of the settlement agreement and entry of the pocket judgment, which the court granted. The court further ordered Plaintiffs to remove the gazebo and any other non-natural objects from the Property within 90 days. The court further deemed the mutual release pointed to by the Township and the HOA to be executed and effective. The Plaintiffs, not agreeing with the outcome, filed a motion to set aside the settlement agreement based on fraud in the inducement or duress. The court determined that Plaintiffs failed to establish any grounds to set aside the settlement agreement and reiterated that the pocket judgment and mutual release were binding and enforceable.

### D. Plaintiffs File Initial Federal Suit

In 2019 the Plaintiffs filed two actions in this Court. In the first, Plaintiffs asserted federal claims against the Township and the County. *Wizinsky v. Leelanau County, et al.*, No 19-cv-191 (W.D. Mich. 2019). In the second case, Plaintiffs alleged a wide array of both state and federal claims against the Township and some of its elected officials as well as the County and some County officials, as well as the HOA and some of its board members individually.

*Wizinsku v. Leelanau County, et al.*, No. 19-cv-894 (W.D. Mich. 2019). Plaintiffs sought to consolidate the first action with the second, but this Court dismissed the first as being duplicative of the second.

This Court found that the settlement agreement barred all claims against the Township and the HOA for discrimination or relating to the use of the gazebo as a dwelling, and further refused to allow Plaintiffs to argue over the validity of the settlement agreement and mutual release. The court further found Plaintiffs to have violated Rule 11 as the action was frivolous due in large part to the false allegations about the MDCR investigation, claims of racism, and meritless counts. While this Court declined to impose any fines, it did warn the Plaintiffs that future duplicative filings may result in him being placed on restricted filer status to ease the burden on this Court's resources. A subsequent appeal to the Sixth Circuit was made by Plaintiffs, where this Court's ruling was affirmed.

Instead of listening to the clear directive of this Court, Plaintiffs have filed the instant action, suing not just the Township and HOA, but also but also Stephen Holmes as Trustee of the Christine E. Kaeser Trust. The claims in this current action are no different than those that came twice before it and have no more merit now than when previously brought.

## ARGUMENT

### I.    THE CLAIMS AGAINST DEFENDANT HOLMES ARE BARRED BY THE DOCTRINE OF CLAIM PRECLUSION.

#### A.  Purpose of Claim Preclusion Doctrine.

The Sixth Circuit has explained the rationale behind res judicata: "a concluded case tells the parties how the law applies to them, 'settl[ing] expectations' and permitting them to 'conform their conduct accordingly.' *Id.* Thus, in most instances **it is disruptive and**

**unfair to revive a case that has already finished**. Res judicata helps avoid this outcome. See *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981) ('This Court has long recognized that ... those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties ... [this is] a rule of fundamental and substantial justice.').” *Arangure v. Whitaker*, 911 F.3d 333, 343 (6th Cir. 2018). (Emphasis added). As the Supreme Court explained in *Moitie*, the “doctrine of res judicata [was] conceived in the light of the maxim that the interest of the state requires that there be an end to litigation—a maxim which comports with common sense as well as public policy.” *Federated Dep't Stores, Inc. v. Moitie*, *supra*, 452 U.S. 394, 401–402.

The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as “res judicata.” *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). In *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75 (1984), the United States Supreme Court expressed its preference for the use of the term “claim preclusion,” rather than the more traditionally utilized term “res judicata.” *Id*. at 77, n. 1. Claim preclusion refers to the effect of a prior judgment in foreclosing a subsequent claim that has never been litigated, because it could have been advanced in an earlier action. Issue preclusion refers to the foreclosure of an issue previously litigated. *Id*. Whether state or federal preclusion law applies depends upon the source of the prior judgment. Where the prior judgment issues from a federal court, federal law governs. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir.2007); *Venture Global Engineering, LLC v. Satyam Computer Servs., Ltd*., 730 F.3d 580, 585 (6th Cir. 2013). See also, *Taylor v. Sturgell, supra*, 553 U.S. at 891 (“The preclusive effect of a federal-court judgment is determined by federal common law.”)

**B.  Plaintiffs' Claims Are Barred by Claim Preclusion.**

All of the Plaintiffs' claims are barred by the prior judgment entered by this Court in Case No. 1:19-cv-894 and affirmed by the Sixth Circuit.

"Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor v. Sturgell, supra*, 553 U.S. at 892. Claim preclusion extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Hamilton's Bogarts, Inc., supra*, 501 F.3d at 650 (Cleaned up). "Claim preclusion prevents parties from re-raising claims or defenses that were or could have been raised in the prior action." *Continental Casualty Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 835 (6th Cir. 2019). Under the claim preclusion doctrine, "a party will be precluded by an earlier judgment if (1) the judgment was a 'final decision on the merits,' (2) it involved the same parties (or parties who can be treated as legally the same), (3) the new claim or defense was litigated or "should have been 'litigated in the prior action,' and (4) 'an identity exists between the prior and present actions.'" *Id.* quoting *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003).

The first element of claim preclusion is satisfied as there was a final judgment on the merits in Case No. 1:19-cv-894 (ECF Nos. 82, 83) and that judgment has been affirmed by the Sixth Circuit Court of Appeals. *Federated Dep't Stores, Inc. v. Moitie, supra*, 452 U.S. at 399, n.3, ("The dismissal for failure to state a claim under [Rule] 12(b)(6) is a 'judgment on the merits.'").

The second element is also satisfied. The requirement that the prior proceeding involve the same parties is commonly referred to as "privity." However, as the Sixth Circuit stated, the requirement is that the first action involve the same parties "or parties who can be treated as legally the same." Holmes should be treated as the same party as either Leelanau Township or the HOA, as Plaintiffs allege he is financing their legal challenge against Plaintiffs' interests. (ECF No. 1, ¶ 10). Both Leelanau Township and the HOA were defendants in Case No. 1:19-cv-894. In *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 F.3d 1054, 1071 (6th Cir. 1995), the Sixth Circuit stated that the facts of the case "demonstrate a strong possibility that this case may yet be an appropriate one for the application of res judicata and collateral estoppel. **Merrill Lynch contends that the Florida plaintiffs, through the Association of Unit Owners, authorized, financed, and controlled the investigation and prosecution of the Becherer plaintiffs' suit**, including hiring an attorney and arranging to pay him a combination retainer and contingency fee." (Emphasis added). After remand the Sixth Circuit again addressed the issue and held that "a nonparty who controlled the original suit will be bound by the resulting judgment." *Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F.3d 415, 422 (6th Cir. 1999). That is precisely what the Plaintiffs allege against Holmes in this case. Moreover, *Becherer* involved an Offensive use of res judicata – the Defendant argued that Becherer was barred from raising additional claims in new litigation. Here, Holmes is using res judicata defensively – he is not attempting to bring claims against Wizinsky. Other federal courts addressing the issue have held association members to be in privity with the association itself. See, *Midwest Disability Initiative v. JANS Enterprises, Inc.*, 929 F.3d 603 (8th Cir. 2019); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064 (9th Cir. 2003); *Alpert's Newspaper*

*Delivery Inc. v. The New York Times Co.*, 876 F.2d 266 (2d Cir. 1989); *In re Sprint Nextel Derivative Litigation*, 437 F. Supp. 3d 927, 937 (D. Kan. 2020); *Final Exit Network, Inc. v. Ellison*, 370 F. Supp. 3d 995, 1018 (D. Minn. 2019). See also, 18A Charles Alan Wright et al., Fed. Prac. & Proc. § 4456 (2d ed.).

The third requirement for claim preclusion is also present here as all of the claims asserted in this case either were "or could have been" raised in the 2019 lawsuit. "A plaintiff should have litigated two claims in his or her first suit, and thus may not litigate the second claim later, where, as here, the two claims 'arose from the same transaction, or series of transactions.'" *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006). "The fact that [Rawe] now asserts alternative theories of recovery and seeks a different remedy does not allow [her] to avoid claim preclusion, when those other theories could have been asserted and remedies could have been sought in the earlier action." *Id.*

The claims in the current Complaint all arose from the same series of transactions that formed the basis of the 2019 lawsuit. The Plaintiffs cannot avoid claim preclusion by naming slightly different – but wholly related – parties and by changing the labels on their causes of action. The Plaintiffs were aware at the time they filed the 2019 lawsuit of all of the facts upon which they rely to form the basis of the claims asserted in this lawsuit. As the Sixth Circuit stated in *Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003), "It is undisputed that Mitchell was aware of all of the facts giving rise to his claims at the time he filed *Mitchell I*. Indeed, Mitchell expressly alleged disability discrimination and violations of the FMLA in both his Grievance and his EEO charge filed prior to *Mitchell I*." *Id.* at 824. (Footnote omitted).

Many of the allegations in the current Complaint are verbatim repetitions of allegations from the 2019 Complaint in Case No. 1:19-cv-894. By way of example, paragraphs

10

44 through 62 of the current Complaint are the same as paragraphs 65 through 83 of the 2019 Complaint with the exception that the Plaintiffs changed the phrase "Defendants Individuals of The Shores HOA Board" to "Defendants The Shores HOA Board" in several paragraphs. The Plaintiffs alleged in both Complaints that the HOA Board "wanted Plaintiff's family gone." (Current Complaint, ¶ 58; 2019 Complaint, ¶ 79). In the 2019 Complaint the Plaintiffs alleged that his daughter – who is African-American – was in a dog parade in Northport in 2017 and that he asked a person who worked for the County "is this happening because my daughter was African American." The response was yes. (2019 Complaint, ¶¶ 249 – 253). These same allegations are included in the current Complaint. (Complaint, ¶¶ 255 – 259). Plaintiffs were aware of the ownership status of the neighboring property and their relationship with the HOA when they filed the 2019 Complaint. (2019 Complaint, ¶¶ 55 – 56). Plaintiffs also alleged in the 2019 Complaint that the Settlement Agreement was signed under duress (2019 Complaint, ¶ 331); the same allegation appears in the current Complaint. (Complaint, ¶ 512).

Simply stated, the Plaintiffs knew everything they needed to know in 2019 to assert the claims they are asserting in the current Complaint. Therefore, Plaintiffs were "aware of all of the facts giving rise to" their claims when they filed their Complaint in 2019. *Mitchell v. Chapman, supra*, 343 F.3d at 824. The third requirement for claim preclusion has been met.

The fourth requirement for claim preclusion is an identity between the previous and current actions. That requirement has been met here. "Causes of action share an identity where the facts and events creating the right of action and the evidence necessary to sustain each claim are the same. *Sanders*, 973 F.2d at 484." *Heike v. Cent. Michigan Univ. Bd. of Trustees*, 573 F. App'x 476, 483 (6th Cir. 2014). The Supreme Court explained: "The now-

accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap, barring 'claims arising from the same transaction.' *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 482, n. 22 (1982)" *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 316 (2011). See also, *Trustees of Operating Engineers Loc. 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 384 (6th Cir. 2019) ("Thus, the critical consideration is operative 'factual overlap' between the claims.")

As described in the discussion on the third factor, there is far more than mere "factual overlap" between the two Complaints. Both are based on precisely the same series of events. The fourth factor for claim preclusion has been met. The Defendant submits that each of the elements for claim preclusion have been met and the Plaintiffs' Complaint should be dismissed based on the doctrine of claim preclusion.

### C. The Plaintiffs' Claims Are Barred by Nonparty Claim Preclusion

Even if the Court were to conclude Defendant Holmes is not in privity to Leelanau Township, the Plaintiffs claims should be dismissed on the basis of nonparty claim preclusion. The Supreme Court explained the concept of nonparty preclusion:

> In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources. To the extent the defendant in the second suit may not win by asserting, without contradiction, that the plaintiff had fully and fairly, but unsuccessfully, litigated the same claim in the prior suit, the defendant's time and money are diverted from alternative uses—productive or otherwise—to relitigation of a decided issue. And, still assuming that the issue was resolved correctly in the first suit, there is reason to be concerned about the plaintiff's allocation of resources. Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.' *Kerotest Mfg. Co. v. C–O–Two Co.*, 342 U.S. 180, 185 (1952). Although neither

12

judges, the parties, nor the adversary system performs perfectly in all cases, the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard." Id., at 329.

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328 (1979), quoting *Blonder-Tongue Labs, Inc. v.*

*Univ. of Illinois Foundation*, 402 U.S. 313, 329 (1971)

The Supreme Court went on to explain why defensive use of the preclusion doctrine applied to nonparties. "Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.' [Citation omitted]. Thus defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action if possible." *Parklane Hosiery Co*, 439 U.S. at 329–330.

The Sixth Circuit has a long history of applying nonparty preclusion when it is used defensively. In 1959 the Sixth Circuit applied claim preclusion when used defensively by a defendant that was not named in the original litigation. The court reasoned:

The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. *Coca Cola Co. v. Pepsi-Cola Co., supra* (6 W.W.Harr. 124, 36 Del. 124, 172 A. 260). See cases cited in 24 Am. & Eng. Encyc., 2d Ed., 731; 15 Cinn.L.Rev. 349, 351; 82 Pa.L.Rev. 871, 872. He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. Ibid. **There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation**.

No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend. See 7 Bentham's Works, Bowring's Ed., 171. Many courts have abandoned the requirement of mutuality and confined the

requirement of privity to the party against whom the plea of res judicata is asserted. *Coca Cola Co. v. Pepsi-Cola Co., supra*; *Liberty Mutual Ins. Co. v. George Colon & Co*., 260 N.Y. 305, 183 N.E. 506; *Atkinson v. White*, 60 Me. 396; *Eagle, etc. Ins. Co. v. Heller*, 149 Va. 82, 140 S.E. 314, 57 A.L.R. 490*; Jenkins v. Atlantic Coast Line R. Co*., 89 S.C. 408, 71 S.E. 1010; *United States v. Wexler, D.C*., 8 F.2d 880. See *Good Health Dairy Products Corp. of Rochester v. Emery*, 275 N.Y. 14, 9 N.E.2d 758, 112 A.L.R. 401. The commentators are almost unanimously in accord. 35 Yale L.J. 607; 9 Va.L.Reg. (N.S.) 241; 29 Ill.L.Rev. 93; 18 N.Y.U.L.Q.R. 565, 570; 12 Corn.L.Q. 92. The courts of most jurisdictions have in effect accomplished the same result by recognizing a broad exception to the requirements of mutuality and privity, namely, that they are not necessary where the liability of the defendant asserting the plea of res judicata is dependent upon or derived from the liability of one who was exonerated in an earlier suit brought by the same plaintiff upon the same facts. See cases cited in 35 Yale L.J. 607, 610; 9 Va.L.Reg. (N.S) 241, 245-247; 247; 29 Ill.L.Rev. 93, 94; 18 N.Y.U.L.Q.R. 565, 566, 567; 34 C.J. 988, 989. * * * **The cases justify this exception on the ground that it would be unjust to permit one who has had his day in court to reopen identical issues by merely switching adversaries**.

*Davis v. McKinnon & Mooney*, 266 F.2d 870, 873 (6th Cir. 1959). (Emphasis added).

*Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992), reached the same conclusion: "Although neither Judge Kenneth E. Long nor Deputy Sheriff William Timmerman had been named in the first complaint, the district court was well within its discretion in dismissing these actions pursuant to the doctrine of nonmutual claim or issue preclusion. *United States v. Mendoza*, 464 U.S. 154, 158–159 (1984); *Parkland Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979). *See, e.g*., *Hazzard v. Weinberger*, 382 F.Supp. 225, 226–229 (S.D.N.Y. 1974), *aff'd*, 519 F.2d 1397 (2d Cir. 1975) (nonmutual claim preclusion appropriate when pro se litigant brings repeated actions upon same operative facts with slight change in legal theories and 'cast of characters-defendants')."

*Platsis v. E.F. Hutton & Co*., 946 F.2d 38, 42 (6th Cir. 1991), is to the same effect. "The court determined that in certain circumstances mutuality is no longer required for claim

14

preclusion and held that this was such a circumstance because (1) the stranger to the first action is so closely related to one of the parties that a subsequent claim will merely repeat the prior claim; (2) there was no reason why the plaintiff could not have asserted these claims in the prior proceeding; and (3) the precluded plaintiff had a full and fair opportunity to litigate the issues involved during the prior proceeding."

The Supreme Court has explained: "The term 'privity,' however, has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground." See 18A Wright & Miller § 4449, at 351–353, and n. 33 (collecting cases), *Taylor v. Sturgell, supra*, 553 U.S. at 894.

Whether couched in terms of traditional claim preclusion or as nonparty claim preclusion, the judgment on the merits of the 2019 lawsuit bars the Plaintiffs from maintaining the present lawsuit.

## II.    THE PLAINTIFFS' CLAIMS ARE BARRED BY THE 2019 SETTLEMENT AGREEMENT AND RELEASE.

"An agreement to settle a pending lawsuit is a contract, governed by the legal rules applicable to the construction and interpretation of other contracts. *Kloian v. Domino's Pizza, LLC*, 273 Mich. App. 449, 452, 733 N.W.2d 766 (2006)." *Reicher v. SET Enterprises, Inc.*, 283 Mich. App. 657, 663, 770 N.W.2d 902, 907 (2009). Michigan courts enforce contracts. *Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 503 – 504, 741 N.W.2d 539 (2007) Contracts are enforced according to their terms, as a corollary to the parties' liberty to enter into a contract. *Rory v. Continental Ins. Co.*, 473 Mich. 457, 468, 703 N.W.2d 23 (2005). Michigan courts examine contractual language and give the words their plain and ordinary meanings. *Wilkie v. Auto–Owners Ins. Co.*, 469 Mich. 41, 47, 664 N.W.2d 776 (2003). "An unambiguous

contractual provision reflects the parties' intent as a matter of law, and '[i]f the language of the contract is unambiguous, we construe and enforce the contract as written.' *Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 375, 666 N.W.2d 251 (2003)." *Reicher, supra*, 283 Mich. App. At 664 – 665.  Courts may not create ambiguity when contract language is clear. *Grosse Pointe Park v. Michigan Muni. Liability & Prop. Pool*, 473 Mich. 188, 198, 702 N.W.2d 106 (2005).

This Court has previously held the Mutual Release barred the Plaintiffs' claims in the 2019 lawsuit. The basis was the language in the Mutual Release that Plaintiffs agreed "not to file new claims" regarding alleged discrimination for anything occurring prior to the date of the settlement agreement (March 14, 2019). (Settlement Agreement, ¶ 9). The Report and Recommendation (which was adopted as the Court's Opinion), states: "The Mutual Release … makes clear that the parties intended to release all claims relating to Plaintiff's use of the gazebo (including the expansion) as a dwelling in violation of the Township's zoning ordinance and the HOA's restrictive covenants." (Case No. 1:19-cv-894, ECF No. 75, PageID 4135). That ruling was explicitly affirmed by the Sixth Circuit. (Case No. 20-2017, Document 17-2, Page 5). The parties to the Mutual Release were the Plaintiffs, The Shores Home Owners Association, the Township of Leelanau and "their employees, principals, agents, insurers, successors and assigns." (**Exhibit B**).

As a member of the HOA, Holmes, through the trust for which he serves as Trustee, is covered by the language of the Mutual Release. The members are in privity with the HOA, meaning that they were included in the "employees, principals, agents, insurers, successors and assigns" language found in the Mutual Release. See, *Midwest Disability Initiative*, 929 F.3d at 613.  However, on the facts as they are pled by Plaintiffs, Holmes is just as clearly covered

by the terms of the Mutual Release given his actions to allegedly fund the legal challenges against Plaintiffs. Under those facts Holmes would be inextricably linked to the HOA for purposes of any kind of mutual release as the HOA's agent.

As the HOA's agent, Holmes is released by the settlement agreement and mutual release and the claims against him should be dismissed.

### III.    COUNTS I AND II OF THE PLAINTIFFS' COMPLAINT ALLEGING VIOLATION OF 42 U.S.C. § 1985 FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Count I alleges a violation of 42 U.S.C. § 1985(2). Count II alleges a violation of 42 U.S.C. § 1985 (3). The second part of § 1985(2) prohibits interference with the judicial enforcement of rights in state courts and requires proof of a conspiracy to deny equal protection motivated by racial or class-based invidiously discriminatory animus. *Kush v. Rutledge*, 460 U.S. 719, 722–724 (1983); *Fox v. Michigan State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006). 42 U.S.C. §1985(3) creates a cause of action for conspiracy to violate civil rights. "To succeed in establishing a § 1985(3) claim, the plaintiff must demonstrate '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.' *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir.2003)." *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007).

The Plaintiffs' claim under §1985(2) fails for three reasons. First, there are no facts alleged demonstrating a conspiracy to interfere with the judicial enforcement of rights in state court. As this court has previously recognized, the Plaintiffs, while represented by

counsel, were involved in litigation in state court that resulted in a voluntary settlement agreement that Plaintiffs executed. That alone is fatal to their claim of interference with state court proceedings. But that is not the only deficiency in the Complaint. The Plaintiffs separately fail to allege facts alleging a conspiracy and fail to allege facts (rather than conclusions) alleging a conspiracy motivated by class-based animus. As to the last point, the Sixth Circuit has dismissed similar claims for similar shortcomings: "Although Alexander alludes to his race and draws the 'legal conclusion[ ]' that gender discrimination occurred, he offers no 'factual allegations' to suggest that the defendants were motivated by 'invidious discrimination.' See *Iqbal*, 556 U.S. at 678–681. His § 1985 claim must therefore fail." *Alexander v. Rosen*, 804 F.3d 1203, 1208 (6th Cir. 2015)

As to the failure to adequately plead a conspiracy, the Sixth Circuit has repeatedly held that it must be done with some level of specificity: "Plaintiffs' complaint does not set forth specific allegations supporting their conspiracy claim, but rather vaguely asserts that Defendants 'conspired.' (J.A. at 87–89) Consequently, we affirm the district court's grant of summary judgment on Plaintiffs' § 1985(3) conspiracy claim." *Center for Bio-Ethical Reform, supra,* 477 F.3d at 832. So too here, the Plaintiffs offer only conclusory allegations that the Defendant engaged in a conspiracy. See, e.g., Complaint, ¶ 10: "The unknown [financers] could be a group of homeowners or another source of funding **with the ulterior motive in conspiracy with other Defendants** thus violating Plaintiff's Constitution [sic] Rights." (Emphasis added.) In ¶ 651 the Plaintiffs allege: "Defendants Unknown Financiers of litigation conspired with themselves and other Defendants to deny of having and exercising any right or privilege of a citizen of the United States, caused harm from that deprivation and thus is actionable." Paragraph 682 includes an equally conclusory assertion that "Unknown

Financer violated the law "through conspiracy." Nowhere in the Complaint do the Plaintiffs allege a single fact demonstrating that a conspiracy was formed. The conclusory assertions of a conspiracy are plainly insufficient to state a claim for relief.

Similarly, the claims under §1985(3) fail for the same reasons. There are no factual allegations demonstrating the Defendant was motivated by class-based animus and there are insufficient allegations of a conspiracy. As the Sixth Circuit stated in *Bishawi v. Northeast Ohio Corr. Ctr.*, 628 F. App'x 339, 346 (6th Cir. 2014):

"Bishawi states that the 'defendants falsified reports, misrepresented facts, filed false charges, harassed, attempted to intimidate, opress [sic], threatened, implied illegal procedures, illegal actions, misconducts, discriminated, and negligence and/or rekless [sic] disregard for the truth ... etc.' These conclusory and vague allegations are not sufficient to satisfactorily plead a § 1985 claim."

### IV.    COUNT III OF THE PLAINTIFFS' COMPLAINT ALLEGING A VIOLATION OF THE FAIR HOUSING ACT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Count III is not clearly pled. It appears to be an attempt to invoke the Fair Housing Act (FHA), 42 U.S.C. § 3601, *et. seq*. However, Count III initially invokes 22 U.S.C. § 7102(3) to cite the definition of "coercion." Title 22 of the United States Code addresses "Foreign Relations and Intercourse." § 7102 is part of the Trafficking Victims Protection Act (TVPA). The definition of "coercion" cited in ¶ 655 of the Complaint from 22 U.S.C. § 7102(3) is a definition for "this chapter" – that is, the TVPA. That definition has no applicability to the Fair Housing Act.

Count III then references 42 U.S.C. § 3604(a) and § 3617. ¶ 656 alleges Holmes violated the FHA by filing the state court action in Case No. 18-10192-CZ. ¶ 657 alleges

Holmes (among others) violated the FHA by engaging in the mediation process in the state court case – a process that resulted in the Settlement Agreement and Mutual Release. The Plaintiffs offer no factual support for the alleged violations of the FHA. There is simply the conclusory statement that the Defendants violated the FHA by (1) filing the state court litigation and (2) participating in the mediation process. These assertions do not remotely satisfy the plausibility requirement of *Twombly* and *Iqbal*.

"The FHA prohibits discrimination 'against any person in the terms, conditions, or privileges **of** sale or rental of a dwelling ... because of race....' 42 U.S.C. § 3604(b)." *GRAOCH Assocs. # 33, L.P. v. Louisville/Jefferson County Metro Human Relations Comm'n*, 508 F.3d 366, 374 (6th Cir. 2007). "Congress passed the federal Fair Housing Act (FHA) as Title VIII of the Civil Rights Act of 1968 to prohibit housing discrimination on the basis of, inter alia, race, gender, and national origin." *Larkin v. State of Mich. Dep't of Soc. Servs.*, 89 F.3d 285, 288 (6th Cir. 1996). *Larkin* involved a claim of disability discrimination, but its holding would apply to any class protected by the FHA. A plaintiff can prove that, *inter alia*, enforcement of a zoning ordinance violates the FHA in one of two ways: "(1) that the defendants were motivated by an intent to discriminate against the handicapped ('discriminatory intent' or 'disparate treatment'); or (2) that the defendant's otherwise neutral action has an unnecessarily discriminatory effect ('disparate impact')." *Id.* at 289. There is not a single factual allegation in the Complaint that can be read as attributing an intent to discriminate on the basis of race to Holmes. As the Court stated in its 2020 Opinion, "Plaintiff offers nothing more than conclusory statements that the [ ] Defendants acted with racial animus ..." (ECF No. 75, PageID 4145). The Plaintiffs offer no new factual allegations to attempt to make out a claim for racial animus. The Complaint therefore fails as a matter of law.

The Plaintiffs' FHA claim fares no better on a disparate impact theory. The Supreme Court has recognized a disparate impact theory under the FHA but has explicitly outlined its limited nature: "The limitations on disparate-impact liability discussed here are also necessary to protect potential defendants against abusive disparate-impact claims. ... And as to governmental entities, **they must not be prevented from achieving legitimate objectives, such as ensuring compliance with health and safety codes**." *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 544 (2015). (Emphasis added). "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.* at 543. A plaintiff faces a "robust causality requirement." *Id.* at 542.

Here, the Plaintiffs have not pled a single fact that would demonstrate that enforcement of the Township's ordinances have had a discriminatory effect. This is a single property owner who alleges he was prevented from using a gazebo as a residence. The FHA is simply not implicated. And this all assumes that the Plaintiffs' gazebo even qualifies as a "dwelling" under the FHA. It does not. The FHA defines a dwelling as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." 42 U.S.C. § 3602(b). A gazebo that lacks heat, water, or sanitary facilities does not qualify as a dwelling.

V.      **COUNT IV OF THE PLAINTIFFS' COMPLAINT ALLEGING A VIOLATION OF 42 U.S.C. § 1981 FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

The claim under 42 U.S.C. § 1981 fails to allege facts making out a prima facie case. "In order to establish a claim for racial discrimination under section 1981, a plaintiff must plead and prove that (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a)." *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006). Based on the vague allegations in the Complaint it is difficult to understand the basis for the Plaintiffs' § 1981 claim. The Complaint repeatedly invokes the phrase "applying different like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other," which is the last clause of § 1981(a). (See, Complaint, ¶¶ 664 – 670, 672 – 674, 677 – 679). The Complaint then references the issuance of a land use permit, a 2020 Zoning Appeal hearing, the issuance of a certificate of occupancy, and alleged zoning ordinance violations. These allegations fail as matter of law because they are nothing more than formulaic recitals of a legal standard, not factual allegations and need not be taken as true. "'[A] legal conclusion couched as a factual allegation' need not be accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)." *Nwanguma v. Trump*, 903 F.3d 604, 607 (6th Cir. 2018).

Even assuming the Plaintiffs are members of a protected class (which is a dubious proposition) and even assuming the rote recitation of the language from the statute clears the pleading hurdle of Rule 12 (an even more dubious proposition), the Plaintiffs' § 1981 claim still fails because they have not alleged a single fact to demonstrate discriminatory intent on the part of the Defendant. The Complaint also fails to allege facts of the third element of a prima facie case – that a right enumerated in § 1981 was abridged.

With respect to the first element, intent to discriminate is a necessary to state a prima facie case under § 1981. *Amini v. Oberlin College, supra*, 440 F.3d at 358. The Plaintiffs offer no factual allegations to support a claim that Holmes acted with racially discriminatory intent. Nowhere in the Complaint is there a single factual allegation that **any** defendant acted with discriminatory intent. All the Plaintiffs do is make the bald assertion that every action taken by every defendant was the result of "systemic racism." This is insufficient as a matter of law. Direct evidence of discriminatory intent is evidence which, if believed, requires the conclusion that unlawful discrimination was a motivating factor in the defendants' actions. *Id*. at 359. No such evidence exists or has been pled.

The third element requires the Plaintiffs to allege facts that, if believed, would demonstrate that they were subjected to "punishment, pains, penalties, taxes, licenses or exactions" that "white citizens" were not subjected to under the same circumstances. The Complaint is similarly devoid of any factual allegation that would demonstrate that sort of differential treatment. Therefore, Count IV fails as a matter of law.[1]

### VI.    COUNT V OF THE PLAINTIFFS' COMPLAINT ALLEGING A VIOLATION OF 42 U.S.C. § 1982 AND THE EQUAL PROTECTION CLAUSE FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The claim under 42 U.S.C. § 1982 fails to allege facts making out a prima facie case. That statute states:

---

[1] While circumstantial proof of the defendant's discriminatory intent can be used to satisfy the first element of a § 1981 claim, the Complaint must first present a prima facie case. Because the Complaint fails to allege facts meeting the third element of a prima facie case, there is no need to engage in an analysis of any circumstantial proof of discriminatory intent. *Amini v. Oberlin College, supra*, 440 F.3d at 359.

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

The Supreme Court has explained that it "has broadly construed this language to protect not merely the enforceability of property interests acquired by black citizens but also their right to acquire and use property **on an equal basis with white citizens**." *City of Memphis v. Greene*, 451 U.S. 100, 120 (1981). (Emphasis added). Plaintiffs only attempt to meet the pleading requirements of a § 1982 claim is to assert in the most conclusory way possible that the Defendant's actions "were different to Plaintiffs than white people and not equal protection of the laws." (Complaint, ¶ 689). This conclusory assertion completely fails to state a claim for relief. The Complaint does not identify "white people" who were treated differently than Plaintiffs were treated under similar circumstances. That failure is fatal to the § 1982 claim.

The claim for an equal protection violation under the Fourteenth Amendment is – if possible – even weaker. Paragraph 691 asserts: "Defendants violated the Fourteenth Amendment of the U.S. Constitution against Plaintiffs, the equal protection of the laws." This is wholly inadequate to state a claim for relief. "The Equal Protection Clause safeguards against the disparate treatment of similarly situated individuals as a result of government action that 'either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 905 (6th Cir. 2019) (cleaned up). Plaintiff must allege facts that, if believed, would demonstrate they were "intentionally treated differently from others similarly situated." *Id.* at 906. The Complaint fails to make any such factual allegations and Count V should be dismissed.

VII.    **THE PLAINTIFFS' CLAIMS OF CONSTITUTIONAL VIOLATIONS FAIL AS A MATTER OF LAW AS DEFENDANT HOLMES WAS NOT ACTING UNDER COLOR OF LAW.**

"In order to prevail on a Section 1983 claim, a plaintiff must establish the violation of a constitutional right by a person acting under color of state law." *Mills v. City of Barbourville*, 389 F.3d 568, 574 (6th Cir. 2004). "Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The "under color of state law" requirement for § 1983 liability is the same as the "state action" requirement of the Fourteenth Amendment. *Paige v. Coyner*, 614 F.3d 273, 278 (6th Cir. 2010). However, "state action may be found if, though only if, there is such a 'close nexus between the State and **the challenged action**' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001) (Emphasis added). The Supreme Court identified the circumstances required for attributing state action to a private entity:

> Our cases have identified a host of facts that can bear on the fairness of such an attribution. We have, for example, held that **a challenged activity** may be state action **when it results** from the State's exercise of "coercive power," *Blum,* 457 U.S., at 1004, 102 S.Ct. 2777, when the State provides "significant encouragement, either overt or covert," *ibid.,* or when a private actor operates as a "willful participant in joint activity with the State or its agents," *Lugar, supra,* at 941, 102 S.Ct. 2744 (internal quotation marks omitted). We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," *Pennsylvania v. Board of Directors of City Trusts of Philadelphia,* 353 U.S. 230, 231, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957) *(per curiam),* when it has been delegated a public function by the State, cf., *e.g., West v. Atkins, supra,* at 56, 108 S.Ct. 2250; *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 627–628, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), when it is "entwined with governmental policies," or when government is "entwined in

[its] management or control," *Evans v. Newton,* 382 U.S. 296, 299, 301, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966).

*Brentwood Academy, supra,* 531 U.S. at 296. (Emphasis added). (See, *Carl v. Muskegon County*, 763 F.3d 592, 595 (6th Cir. 2014) "Our court has identified three tests to resolve the state-actor inquiry: the public-function test, the state-compulsion test, and the nexus test.")

The Complaint contains not a single factual allegation that the Defendant was acting under color of law based on any of the three circumstances described by the Supreme Court. All of the federal constitutional claims, therefore, fail to state a claim upon which relief can be granted.

The Defendant will address the substance of the constitutional claims as a matter of completeness, although there was no action on the part of Defendant Holmes.

## VIII.    COUNT VI OF THE COMPLAINT ALLEGING A SUBSTANTIVE DUE PROCESS VIOLATION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Although the Plaintiffs have labeled Count VI as one of substantive due process violations, there are no factual allegations supporting such a claim. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." To succeed on a substantive due-process claim, Plaintiffs must show that an "arbitrary and capricious government action deprived [them] of a constitutionally protected property interest." *Warren v. City of Athens*, 411 F.3d 697, 707 (6th Cir. 2005). Additionally, the measure of whether a deprivation of a substantive-due-process right has actually occurred is "whether a defendant's alleged conduct was so heinous and arbitrary that it can fairly be said to 'shock the conscience.' *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996)." *Guertin v. State*, 912

F.3d 907, 946 (6th Cir. 2019). The Sixth Circuit has concluded both deprivation of a protected constitutional interest and conscience-shocking behavior is required to state a substantive due process claim. See *Am. Express Travel Related Servs. Co., Inc. v. Kentucky*, 641 F.3d 685, 688 (6th Cir. 2011).

The litany of supposed deprivations contained in the Complaint simply do not suffice to make out the elements of a substantive due process claim. Even assuming the Plaintiffs possessed a protected interest in the eclectic list (which they do not), none of the conduct attributed to the Defendant constitutes actions that shock the conscience as a matter of law. "[S]ubstantive due process is implicated only by government actions (and sometimes failures to act) that are 'so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that [they] amount[ ] to a brutal and inhumane abuse of official power literally shocking to the conscience.' *Lillard*, 76 F.3d at 725." *Guertin, supra*, 912 F.3d at 947. The Sixth Circuit held in *Guertin* that the conduct of City of Flint officials did not shock the conscience in the Flint Water Crisis. The conduct alleged in the Plaintiffs' Complaint fails that standard as a matter of law. Count Vi fails to state a claim upon which relief can be granted.

### IX. COUNT VIII OF THE COMPLAINT ALLEGING AN EQUAL PROTECTION VIOLATION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Count VIII alleges an equal protection violation. The Equal Protection Clause of the Fourteenth Amendment prohibits invidious discrimination against similarly situated individuals. *Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment

either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

The Complaint asserts the Plaintiffs were considered to be Black and were treated "differently." (Complaint, ¶ 725). The Complaint also alleges the Plaintiffs were denied an appeal process "that Defendants apply for white people" (Complaint ¶ 726), and that they were denied an appeal process prior to litigation being filed, "that applied to white people." (Complaint, ¶ 727). These conclusory assertions are utterly insufficient to state an equal protection claim. In the equal protection context, a "[c]omplaint [that] fails to make a plausible allegation that similarly situated organizations and individuals . . . have not been subject to the same alleged treatment by Defendants" has not met the *Iqbal* standard. *Center for Bio-Ethical Reform, Inc. v. Napolitano*, supra, 648 F.3d at 379. Where "[t]he allegations contained in the . . . [c]omplaint as to disparate treatment amount to conclusory and unadorned assertions that, consequently, are not well-pleaded," they are "not entitled to a presumption of truth at this stage in the litigation." *Id*.

The Plaintiffs' equal protection claim fails as a matter of law.

### X.    COUNT VIII OF THE COMPLAINT ALLEGING A FIRST AMENDMENT VIOLATION FAILS AS A MATTER OF LAW.

Count VIII alleges a First Amendment claim, apparently for a violation of the Plaintiffs' free speech rights and "right to protest." (Complaint, ¶ 782). The right to protest is part and parcel of the right to free speech; it is not an independent First Amendment right. *Cf*., *Sevy v. Barach*, 815 F. App'x 58, 66 (6th Cir. 2020) (Governmental officials may not engage in "retaliation for [Plaintiff's] exercise of free speech, such as protest and public criticism of officers . . .").

In order to establish a prima facie claim of First Amendment retaliation, the Plaintiffs must allege facts demonstrating that (1) they engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against them that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by their protected conduct. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010). The Plaintiffs' First Amendment claim fails because there is not a single fact alleged that would allow one to conclude any actions taken by the Defendant were motivated by the Plaintiffs' protests. The Complaint does not even attempt to address this aspect of the claim. Instead, the Complaint yet again asserts in the most conclusory way possible that the Defendants are liable for their actions. ("To prevent future protest by Plaintiff William Wizinsky Defendants filed a Motion that Plaintiff violated the Settlement Agreement." Complaint, ¶ 768). Once again, this is insufficient to state a cause of action as a matter of law.

## XI.    COUNT IX OF THE COMPLAINT ALLEGING AN UNCONSTITUTIONAL TAKING OF PROPERTY FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Count IX alleges an unconstitutional taking of property under the Fifth Amendment. The Plaintiffs allege that the removal of the gazebo from their property constituted an uncompensated taking. (Complaint, ¶¶ 798 – 800). Count IX fails as a matter of law.

First, the Plaintiffs have not been deprived of all use of their property. A "taking" occurs if a property owner is denied all economically beneficial or productive use of the property in question. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992). Here the Plaintiffs do not allege they have been denied all beneficial use of their property. That alone is fatal to their takings claim.

Additionally, the removal of the damaged gazebo was in the nature of an nuisance abatement. Plaintiff has no claim of an unconstitutional taking where alleged taking arises from a nuisance abatement action.  This has been established jurisprudence in the U.S. Supreme Court for over 100 years.  See *Mugler v. Kansas,* 123 U.S. 623 *(1887); Keystone Bituminous Coal Ass'n v DeBenedictus,* 480 U.S. 470 (1987); and *Lucas v. South Carolina Coastal Council, supra*. "[Just] compensation is not mandated when the state legitimately exercises police power to abate a property nuisance. *Davet v. City of Cleveland*, 456 F.3d 549, 553 (6th Cir. 2006)." *Embassy Realty Invs., Inc. v. City of Cleveland*, 572 F. App'x 339, 344 (6th Cir. 2014). Regardless of whether the Plaintiffs agree with the outcome, their takings claim is foreclosed by the judgment in the state court proceeding. See, *Kircher v. City of Ypsilanti*, 809 F. App'x 284, 301 (6th Cir. 2020) (holding that Fifth Amendment takings claim was barred by state court judgment rejecting takings claim because a nuisance-abatement suit did not constitute a taking under state law.) Count IX fails as a matter of law.

## XII.    COUNTS X AND XI ALLEGING VIOLATIONS OF FEDERAL CRIMINAL STATUTES FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Counts X and XI allege violations of various federal criminal statutes. These are not colorable claims. There is nothing in the plain language of criminal statutes Plaintiffs cite that Congress intended to create a civil cause of action for a violation of those statutes. The Supreme Court has held that under these circumstances, no civil cause of action arises: "We have been quite reluctant to infer a private right of action from a criminal prohibition alone." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994). The Sixth Circuit follows this rule: "[T]he general rule is that a private right of action is not maintainable under a criminal statute." *Am. Postal Workers Union, AFL-CIO, Detroit Local v.*

*Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973). See also, *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997).

Counts X and XI fail as a matter of law.

### XIII.    COUNT XII ALLEGING A VIOLATION OF THE PUBLIC DUTY DOCTRINE FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

An alleged violation of the "public duty doctrine" does not give rise to a cause of action. The public duty doctrine is a defense to claims against governmental officials under Michigan law. ". . . but we need look only to Michigan's public-duty doctrine, which 'insulates officers from tort liability for the negligent failure to provide police protection unless an individual plaintiff satisfies the special-relationship exception.' *White v. Beasley*, 453 Mich. 308, 552 N.W.2d 1, 3 (1996)." *Buck v. City of Highland Park, Michigan*, 733 F. App'x 248, 255 (6th Cir. 2018).

It is not at all clear what cause of action Plaintiffs were attempting to allege in Count XII, but there is no cause of action that exists for an alleged violation of the "public duty doctrine."

### XIV.    COUNT XIII ALLEGING DEFAMATION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Count XIII alleges defamation based on the filing of the enforcement action in state court. The filing of a Complaint is covered by the judicial proceedings privilege and is not actionable as a matter of law. "Statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried." *Oesterle v. Wallace*, 272 Mich.App. 260, 264, 725 N.W.2d 470 (2006). "The trial court correctly ruled that the filing of the federal complaint was not

actionable because of the judicial-proceedings privilege." *Bedford v. Witte*, 318 Mich. App. 60, 65, 896 N.W.2d 69, 72 (2016). Count XIII fails as a matter of law.

### XV.    COUNT XVII ALLEGING MALICIOUS USE OF PROCESS FAILS TO STATE A CLAIM WHICH RELIEF CAN BE GRANTED.

It is not at all apparent what cause of action Plaintiffs are attempting to allege in Count XVII, which is labeled "Malicious Use of Process." It is irrelevant, because the entirety of the claim consists of one sentence: "All Defendants; actions were a malicious use of process to force a newly created black family off their property of over 25 years." (Complaint, ¶ 973).

This is precisely the sort of conclusory labeling that will not survive the *Iqbal* and *Twombly* plausibility test. Count XVII therefore fails as a matter of law.

### CONCLUSION

For the foregoing reasons, Stephen Holmes requests that this Honorable Court grant his motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

DATED: August 5, 2021                    PLUNKETT COONEY

BY:___*/s/Michael S. Bogren*_____
        Michael S. Bogren (P34835)
        Attorney for Defendant HOLMES

BUSINESS ADDRESS:
333 Bridge Street, N.W., Suite 530
Grand Rapids, Michigan 49503
**Direct Dial:**   269/226-8822
mbogren@plunkettcooney.com

Open.00391.13339.26907500-1