UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM G. WIZINSKY and
ANN M. WIZINSKY,

                Plaintiffs,                              Hon. Janet T. Neff

v.                                            Case No. 1:21-cv-496

LEELANAU TOWNSHIP, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiffs William G. Wizinsky and Ann M. Wizinsky have filed a pro se complaint asserting federal and state claims against numerous Defendants arising out of a dispute concerning real property located in Michigan's Leelanau Peninsula. For ease of reference, Defendants will be grouped as follows: (1) Leelanau County, County Administrator Chet Janik, and County Building Official Paul Hunter (collectively the County Defendants); (2) Leelanau Township and Township Zoning Administrator Steve Patmore (collectively the Township Defendants); (3) The Shores Homeowners Association (HOA); (4) Karrie A. Zeits and Sonde, Racine & Doren, PLC (collectively Zeits); (5) T. Seth Koches and Bauckham, Sparks, Thall, Seeber & Kaufman, PC (collectively Koches); and (6) Steven Holmes.

Presently before me are Zeits's, Holmes's, and Koches's Rule 12(b)(6) Motions to Dismiss (ECF Nos. 23, 64, and 68); the County Defendants' Motion to Dismiss and/or for Judgment on the Pleadings (ECF No. 76); the Township Defendants' Motion to Dismiss and for Judgment on the Pleadings (ECF No. 89); and the HOA's Motion to Dismiss and/or for Summary Judgment (ECF

No. 98).[1] In addition, all Defendants, except Zeits, have filed motions for Rule 11 sanctions. (ECF Nos. 87, 88, 101, 142, 166.) The motions are fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** Defendants' motions to dismiss/for judgment on the pleadings and dismiss Plaintiffs' complaint with prejudice.[2] In addition, I recommend that the Court **GRANT** Defendants' motions for Rule 11 sanctions and order an appropriate sanction in the form of an award of attorney's fees and placement of Plaintiffs on restricted filer status.

## I.   Background

### A.    Brief Factual Overview

This action is a resurrection and/or continuation of two prior actions filed in this Court captioned *William G. Wizinsky v. Township of Leelanau, et al.* (*Wizinsky I*), No. 1:19-cv-191 (W.D. Mich.), and *William G. Wizinsky v. Leelanau County, et al.* (*Wizinsky II*), No. 1:19-cv-894 (W.D. Mich.). The pertinent facts relating to this dispute are fully set forth in the August 20, 2020 Report and Recommendation in *Wizinsky II* that the Court adopted on September 30, 2020. *Wizinsky II*, ECF No. 75 at PageID.4126–31; ECF No. 82. There is thus no need here to repeat them in detail.

---

[1] A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a pre-answer motion, while a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is a post-answer motion. *See Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003) ("The only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss. A motion to dismiss under Rule 12(b)(6) requires the moving party to request judgment in a pre-answer motion or in an answer. A motion for judgment on the pleadings under Rule 12(c) may be submitted after the defendants filed an answer."). Because the County Defendants and the HOA filed answers (ECF Nos. 20 and 27), their motions are properly characterized as Rule 12(c) motions. The Township Defendants' motion is properly characterized as a Rule 12(b)(6) motion because they did not file an answer. Because the HOA's exhibits (ECF Nos. 99-3 and 99-4), are not considered herein, its motion will not be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

[2] The County Defendants, Zeits, and the HOA have requested oral argument on their motions. These requests are denied as the briefs received from the parties adequately address the issues raised in the motions, and oral argument would not aid the decisional process.

In sum, after Plaintiffs sought approvals from the Township and County in 2015 to repair storm damage to a gazebo they had constructed in 1992 on their property known as Lot 11 of the Shores Subdivision, the Township and County discovered various violations dating back to 1992, including that the County had never issued a Certificate of Occupancy (COO). The Township and County also learned that Plaintiffs had constructed an addition to the gazebo in 2015 without obtaining any permits or approval. Eventually, the Township denied Plaintiffs' Land Use Application, and the County issued a restricted COO that precluded Plaintiffs from using the gazebo as a dwelling.

**B.    Litigation History**

Most pertinent to the instant motions is the litigation history leading up to this case, which begins with the lawsuit the HOA and the Township filed against Plaintiffs in the Leelanau County Circuit Court on or about October 5, 2018 (the state case). Zeits and Koches represented, respectively, the HOA and the Township in that proceeding, which *Wizinsky II* described as follows:

> The complaint alleged four claims: (1) nuisance per se; (2) enforcement of restrictive covenants—injunction to abate violations; (3) recovery of costs and damages for enforcement of restrictions; and (4) libel. (ECF No. 26-2 at PageID.1766–88.) The case was assigned to Hon. Kevin A. Elsenheimer. The Township was a party only as to Count I, the nuisance per se claim. On March 14, 2019, the parties, represented by counsel, entered into a Settlement Agreement, pursuant to which Plaintiff and his wife agreed to list the Property for sale within 30 days and the HOA and the Township agreed not to pursue any enforcement action for existing violations of the HOA's rules or Township ordinances. (ECF No. 17-9 at PageID.1056.) Plaintiff was required to include removal of the gazebo as a condition of any sale. The Settlement Agreement provided that, if the Property was not sold by October 30, 2021, a "pocket judgment" providing for removal of the gazebo by October 30, 2021, would be entered, but if Plaintiff breached the Settlement Agreement at any time, the HOA and the Township could enter the pocket judgment. Plaintiff also agreed to "withdraw and dismiss any investigation into alleged discrimination by [the HOA and the Township]" and not to "file any new claims or seek any new investigations for anything occurring prior to the date of this settlement." (*Id.* at PageID.1057.) Finally, the parties agreed to sign a mutual release and to dismiss the case with prejudice. Judge Elsenheimer entered a

3

stipulated order of dismissal on June 4, 2019, in which he maintained jurisdiction to enforce the terms of the Settlement Agreement. (ECF No. 61-3.)

On September 4, 2019, the HOA and the Township filed a Motion for Entry of Order, seeking entry of the pocket judgment due to Plaintiff's breach of the Settlement Agreement, including his failure to sign a mutual release. (ECF No. 26-2 at PageID.1804–08.) On October 22, 2019, Judge Elsenheimer issued a Decision and Order granting the HOA and Township's motion and ordering Plaintiff and his wife to remove the gazebo and any other non-natural objects from the Property within 90 days. (ECF No. 26-2 at PageID.1810–13.) On December 5, 2019, Judge Elsenheimer issued an order granting the HOA and Township's Motion to Enforce the Settlement Agreement, which ordered that the mutual release attached to the order is effective and deemed executed by all parties. (ECF No. 50-1 at PageID.2642–46.)

On December 9, 2019, Plaintiff and his wife filed an objection to the order enforcing the Settlement Agreement and a motion for injunctive relief based on the HOA and the Township's alleged violation of Article 9, Section 18 of the Michigan Constitution (the basis for Plaintiff's Count 10 in the instant case) and to set aside the Settlement Agreement based on fraud in the inducement or duress. On March 19, 2020, Judge Elsenheimer entered a Decision and Order denying both motions. Regarding Plaintiff's motion to set aside the Settlement Agreement, Judge Elsenheimer stated:

> In this case, the Settlement Agreement and pocket judgment were reached after mediation facilitated by Attorney Todd Millar and negotiation by the parties. All parties, including the Defendants, were properly represented by legal counsel and willingly agreed to the settlement terms. Defendants have failed to demonstrate both the required elements for fraudulent inducement and duress. Nor have the Defendants asserted, much less demonstrated, mutual mistake or severe stress preventing them from understanding the terms of the Settlement Agreement. Absent a showing of fraud, duress, mutual mistake or severe stress, the Court is bound...to enforce the Settlement Agreement/Pocket Judgment negotiated by the parties on March 14, 2019....

(ECF No. 50-1 at PageID.2639–40.) On April 1, 2020, Plaintiff filed a notice of appeal to the Michigan Court of Appeals. (ECF No. 50-1 at PageID.2649.)

*Wizinsky v. Leelanau Cnty.*, No. 1:19-cv-894, 2020 WL 6597637, at *3–4 (W.D. Mich. Aug. 20, 2020).

Plaintiff William Wizinsky, through counsel, filed *Wizinsky I* against the Township and the County in this Court two days before the parties executed the Settlement Agreement in the state

4

case. On April 17, 2019, William Wizinsky voluntarily dismissed the Township pursuant to the Settlement Agreement. Thereafter, his counsel was permitted to withdraw, and William Wizinsky proceeded pro se against the County. William Wizinsky filed *Wizinsky II*, also proceeding pro se, on October 25, 2019, against the County and Hunter, HOA board members, and several Township officials, after the parties had entered the Settlement Agreement in the state case and after Judge Elsenheimer had ordered Plaintiffs to remove the gazebo. *Wizinsky I* was eventually dismissed as duplicative of *Wizinsky II*.

On August 20, 2020, I issued a Report and Recommendation (R&R) recommending that the Court grant the County Defendants' motion to dismiss and the HOA and Township Defendants' motion for summary judgment and deny William Wizinsky's motions. The R&R further recommended that the Court grant the County Defendants' motion for sanctions but not impose a monetary sanction against William Wizinsky. In particular, the R&R concluded that the Release of Claims effected by the Settlement Agreement barred William's claims against the HOA and Township Defendants, notwithstanding William Wizinsky's allegations of fraudulent inducement and duress. 2020 WL 6597637, at *5–6. The R& R also concluded that William Wizinsky's federal claims against the County Defendants failed to state a claim and recommended that the Court decline to exercise supplemental jurisdiction over the state-law claims against the County. *Id.* at *8–11.

The Court adopted the R&R on September 30, 2020, and entered judgment for Defendants. *Wizinsky* II, ECF Nos. 82 and 83. William appealed to the Sixth Circuit, which affirmed the judgment about two weeks after Plaintiffs filed this action. *Wizinsky v. County of Leelanau*, No. 20-2017 (6th Cir. July 1, 2021) (unpublished order). The Sixth Circuit concluded, among other things, that the release "clearly applied" to William Wizinsky and the HOA and Township

Defendants; that William Wizinsky failed to show that he signed the Settlement Agreement under duress or due to fraudulent inducement; that his arguments that the HOA and Township Defendants lacked a legal basis to file suit and instead should have issued him a fine or pursued an administrative proceeding had no bearing on whether William Wizinsky voluntarily entered the Settlement Agreement; and the Settlement Agreement effectively mooted the question of whether the County's classification of the gazebo was proper. *Wizinsky II*, ECF No. 86 at PageID.4983–84. The Sixth Circuit denied William Wizinsky's petition for rehearing on August 2, 2021. (ECF No. 76-12.)

Following dismissal of *Wizinsky II*, and in spite of this Court's and the Sixth Circuit's determination that the issue was moot, Plaintiffs appealed the County's July 2018 issuance of a restricted COO to the County Construction Board of Appeals, which denied the appeal in October 2020. [3] (ECF No. 76-14.) Plaintiffs appealed that decision to the State Construction Code Commission (SCCC). In November 2020, before the SCCC issued its decision, the gazebo was demolished. (ECF No. 76-15.) *See Shores Home Owners Ass'n v. Wizinsky*, Nos. 353321, 356520, 356761, 2021 WL 4808345, at *4 (Mich. Ct. App. Oct. 14, 2021). On motion, the SCCC denied Plaintiffs' appeal because the gazebo had been torn down and the issuance of a COO as Plaintiffs had requested was moot. (ECF No. 76-18.) Plaintiffs appealed that decision to the Michigan Court of Appeals, which consolidated it with their existing appeals from the state case. On October 14, 2021, the Michigan Court of Appeals issued a decision denying all appeals and affirming the trial court's orders and the SCCC's determination that Plaintiff's petition was moot. The court found

---

[3] Plaintiffs falsely state that this Court *required* the County and the Township to have a Zoning Appeal Hearing and a Construction Code Appeal Hearing. (ECF No. 181 at PageID.4700.) In fact, the R&R pointed out that by entering into the Settlement Agreement, Plaintiffs effectively rendered such proceedings moot. 2020 WL 6597637, at *9.

that the trial court properly determined that the Settlement Agreement was valid and binding and Plaintiffs failed to demonstrate that it was the product of fraud or duress. *Id.* at 6–8. The court further rejected Plaintiffs' assertion that the filing of the state case deprived them of due process by precluding them from pursuing a zoning appeal, as nothing in the applicable statue precluded Plaintiffs from simultaneously challenging a zoning decision before the zoning board of appeals or in circuit court. *Id.* at *10–11. Finally, the court found that Plaintiffs' continued complaints of racial discrimination were irrelevant to the rulings and orders rendered by the trial court and the SCCC. *Id.* at *11.

## II.  Motion Standard

Defendants have filed both motions to dismiss pursuant to Rule 12(b)(6) and motions for judgment on the pleadings pursuant to Rule 12(c). In deciding a motion under Rule 12(c), a court applies the same standard applicable to motions under Rule 12(b)(6). *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008).

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating its assertions in a light most favorable to Plaintiff to determine whether it states a valid claim for relief.[4]  *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the

---

[4] Because Plaintiffs are proceeding pro se, the Court must construe their complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, this liberal pleading standard "is not without its limits, and does not 'abrogate basic pleading essentials in pro se suits.'" *Clark v. Johnston*, 413 F. App'x 804, 817 (6th Cir. 2011) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Stated differently, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001).

assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court has held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-79.

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.   Discussion

#### A.      Rule 12(b)(6) and 12(c) Motions

##### 1.      Settlement Agreement and Release

At this juncture, four courts, including this Court, the Sixth Circuit, the Leelanau County Circuit Court, and the Michigan Court of Appeals, have held that the Settlement Agreement and the Mutual Release are valid and binding on all the parties. Plaintiffs' assertions of fraud and duress are no longer open to debate; none was present. Plaintiffs' new angle to escape the Settlement Agreement—indeed, apparently the entire basis for this lawsuit—is their allegation that Defendant Holmes financed all or part of the state case, and that Defendants' failure to disclose this fact to Plaintiffs and the state court was a fraud on Plaintiffs and the court, infected the validity of the

state case, and provides grounds for relief from the Settlement Agreement. Their theory lacks merit.

First, to the extent Plaintiffs may assert that the nondisclosure of this fact constituted fraud and induced them to enter into the Settlement Agreement, they do not allege in this case, nor have they ever alleged, that the HOA's (or the Township's) source of financing for the state case was a material issue discussed during the mediation that produced the Settlement Agreement. *See M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 30 (1998) (discussing "concealment of material facts" in analyzing the requirements for a silent fraud claim). Plaintiffs do not claim that they or their counsel inquired about that issue or that, having done so, Defendants or their counsel concealed the information when they should have disclosed it in response to an express inquiry. Defendants were under no duty to disclose the information (assuming its truth) and had no reason to believe that it had any bearing on the discussions. Indeed, there is no reason to believe that the subject was even remotely germane to the parties' discussions. It is thus not enough for Plaintiffs to now claim that they would not have entered into the Settlement Agreement had they known that Holmes financed the litigation.

As for Plaintiffs' assertion of fraud on the court, Fed. R. Civ. P. 60(d)(3) authorizes relief from a judgment on that ground. The Supreme Court has recognized that federal courts have inherent equitable power to vacate judgments obtained by fraud on the court. *See Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 244–45 (1944), *overruled on other grounds by Standard Oil Co. of Cal. v. United States*, 429 U.S. 17 (1976). But Plaintiff's assertion of the doctrine before this Court to obtain relief from the Settlement Agreement (or from any of the state court's orders) is misplaced, as "fraud on the court is an equitable remedy allowing a federal court to grant relief from a federal judgment, not a state judgment." *Conry v. Barker*, No. 14-cv-02672,

2015 WL 5636405, at *10 (D. Colo. Aug. 11, 2015); *see also Followell v. Mills*, 317 F. App'x

501, 505 n.1 (6th Cir. 2009) (noting that the party seeking relief from a judgment ordinarily must

do so in the court where the alleged fraud occurred). As explained in *LaMie v. Wright*, 1:12-cv-

1299, 2014 WL 1686145 (W.D. Mich. Apr. 29, 2014):

> The proper avenue for relief by a party who believes that a previous judgment was
> procured by fraud on the court is for the party to bring a post-judgment motion or
> an independent action in equity to vacate the judgment. *See Gleason v. Jandruco*,
> 860 F.2d 556, 558 (2d Cir.1988); *Chewning*, 35 F.Supp.2d at 491. The universal
> rule in the federal courts, however, is that an equitable action to set aside a judgment
> may only be heard by the court whose judgment is challenged. *See Weisman v.
> Charles E. Smith Mgmt., Inc.*, 829 F.2d 511, 514 (4th Cir. 1987); *accord Sessley v.
> Wells Fargo Bank, N.A.*, No. 2:11–cv–348, 2012 WL 726749, at *9 (S.D. Ohio
> Mar. 6, 2012) (if plaintiff believed that a state court foreclosure judgment was
> obtained by fraud on the state court, plaintiff's remedy was by way of motion for
> relief filed in the state court, not by way of a collateral attack in federal court); *see
> generally* 11 Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal
> Practice & Procedure § 2868 at 568–69 (3d ed. 2012). Thus, if plaintiff believes
> that the Probate Court judgment was induced by fraud, his remedy is to seek relief
> in the Probate Court, not to bring a collateral attack in the federal court.

*Id.* at *14. Similarly, in this case, Plaintiffs are seeking relief in the wrong forum for the alleged

fraud on the state court.

Even if Plaintiffs could maintain their attack in this forum, their allegation that Holmes

provided some or all of the financing for the state case is neither here nor there, and certainly does

not demonstrate fraud on the court. There is nothing unusual about third-party funding of litigation,

and it does not transform the litigant into the surrogate for the financier. Courts are *generally* only

concerned with matters of jurisdiction, standing, and whether the plaintiff states a claim, not with

who is footing the bill. For these reasons, Plaintiffs fail to demonstrate *any basis* for fraud on this

Court in *Wizinsky II*.

As noted in *Wizinsky II*, the language of the release is not ambiguous and bars all claims

occurring prior the date of the Settlement Agreement that are based on the HOA's and Township's

refusal to allow Plaintiffs to use the gazebo as a dwelling or their acts that prevented them from

doing so. 2020 WL 6597637, at *5–6. In addition to the parties, the release extends to "their employees, principals, agents, insurers, successors and assigns." *Id.* at *5 (quoting Mutual Release). Therefore, at a minimum, the release bars Plaintiffs' claims in this case relating to the gazebo against the HOA and the Township Defendants. In addition, because they acted as attorneys, and thus agents, for the HOA and Township, Zeits and Koches (and their respective firms) are also covered by the terms of the release. *See Commissioner v. Banks*, 543 U.S. 426, 436 (2005) ("The relationship between client and attorney, regardless of the variations in particular compensation agreements or the amount of skill and effort the attorney contributes, is a quintessential principal-agent relationship." (citing Restatement (Second) of Agency § 1, cmt. e (1957))).

Finally, Defendant Holmes claims the benefit of the Mutual Release based on his status as a member of the HOA, as well as Plaintiffs' allegation that he provided funding for the state case. (ECF No. 65 at PageID.1891–93.) However, nothing about either situation suggests, on its face, that Holmes falls within any category of persons identified in the release, at least for purposes of a motion to dismiss. In particular, Holmes asserts that he was the HOA's agent. (*Id.* at PageID.1893.) "An agent is a person having express or implied authority to represent or act on behalf of another person, who is called his principal." *Stephenson v. Golden* (On Rehearing), 279 Mich. 710, 734 (1937). While some fact or facts might exist that could establish that Holmes was the HOA's agent, neither Plaintiffs' conclusory allegations nor Defendant Holmes's bare assertion that he was an agent suffices at this stage to show that Holmes can claim the benefit of the Mutual Release as an agent of the HOA. Moreover, under Michigan law, a release is generally treated as a contract. *Shay v. Aldrich*, 487 Mich. 648, 667 (2010). Privity of contract exists between contracting parties and intended beneficiaries. *Montgomery v. Kraft Foods Global, Inc.*, No. 1:12-

CV-149, 2012 WL 6084167, at *13 (W.D. Mich. Dec. 6, 2012), *aff'd*, 822 F.3d 304 (6th Cir. 2016); *see also Shay*, 487 Mich. at 665 (noting that "a third-party beneficiary effectively 'stands in the shoes' of the original promisee and 'has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee'" (citing *Williams v. Polgar*, 391 Mich. 6, 14 (1974) as "recognizing third-party beneficiaries as an exception to the common-law privity rule")). Holmes does not argue or demonstrate that he is an intended beneficiary, as opposed to simply an incidental beneficiary, of the Mutual Release. Accordingly, this argument is rejected.

In sum, consistent with *Wizinsky II*, the Settlement Agreement and Mutual Release bar all of Plaintiffs' claims in this case against the Township Defendants, the HOA, Zeits, and Koches. While Plaintiffs' instant claims include allegations regarding post-Settlement Agreement, post-*Wizinsky* II events based on "the 2020 Zoning Appeal hearing and process" and the demolition of the gazebo and/or the timing thereof (ECF No. 1 at PageID.81, 88, 95, 97–98, 100, 109), the Settlement Agreement (ECF No. 1-6), the pocket judgment, and Judge Elsenheimer's related Order entered in October 22, 2019 (which remains binding on the parties and this Court) clearly evince the parties' intent that the terms of those documents fully and finally resolved all matters relating to the gazebo and that Plaintiffs could not thereafter revive their rights to assert claims based on those issues simply by initiating an administrative appeal or filing a federal lawsuit.

### 2.      Claim Preclusion

All Defendants contend that Plaintiffs' claims are barred by the doctrine of res judicata or claim preclusion.[5] Because the *Wizinsky II* judgment arose in federal court, its preclusive effect

---

[5] The County and Township Defendants, Koches, and Holmes assert res judicata/claim preclusion with regard to *Wizinsky* II, while Zeits asserts res judicata as to the state case. The HOA asserts res judicata/claim preclusion as to both the state case and *Wizinsky* II. Claim preclusion based on

is determined by federal common law. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *see also* Restatement (Second) of Judgments § 87 ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court.").

The doctrine of claim preclusion, sometimes referred to as res judicata, provides that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies, with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir.1994); *see Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982). Claim preclusion therefore not only bars the parties from relitigating issues that were actually litigated, but also from relitigating issues that *could have been raised* in the prior action. *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). The doctrine serves to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). A court will apply claim preclusion where the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in a subsequent action which should have been litigated in the prior action; and (4) an identity of the causes of action. *Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F.3d

---

*Wizinsky II* presents a more straightforward analysis as William Wizinsky, with whom Ann Wizinsky is in privity, was the plaintiff in that case. As noted in *Wizinsky* II, there remains some uncertainty as to whether the Michigan Supreme Court would apply the transactional test to cases in which the parties have switched sides from one case to another. 2020 WL 6597637, at *5 n.4 (citing *Etherton v. Service First Logistics, Inc.*, 807 F. App'x 469, 471 (6th Cir. 2020)). Given that claim preclusion clearly applies to Zeits and the HOA based on *Wizinsky II*, I find no need to address whether the state case supports application of res judicata.

415, 422 (6th Cir. 1999) (en banc) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

### a.    Final Decision on the Merits

The first element is met, as *Wizinsky II* resulted in a final judgment on the merits, which was affirmed by the Sixth Circuit. *See Nesselrode v. Secretary of U.S. Dep't of Educ.*, No. 17-4206, 2018 WL 6975166, at *3 (6th Cir. June 18, 2018) (noting that a grant of summary judgment and dismissal for failure to state a claim under Rule 12(b)(6) both satisfy the requirement of a "judgment on the merits" for purposes of preclusion (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 US. 394, 399 n.3 (1981)).

### b.    Same Parties or Their Privies

Regarding the second element, William Wizinsky was a party in *Wizinsky II*, but Ann Wizinsky was not. Thus, Ann can only be bound by the *Wizinsky II* judgment if she was in privity with William. As the Sixth Circuit has observed, "the term 'privity' by itself is not particularly instructive." *GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, (6th Cir. 2016). In *Taylor v. Sturgell*, 553 U.S. 880 (2008), in the context of addressing an extreme form of claim preclusion known as "virtual representation," the Supreme Court set forth six "recognized exceptions" to the general rule that a person who was not a party to prior litigation is not bound by the judgment. *Id.* at 893–95. Those categories are: (1) the nonparty agreed to be bound by litigation involving others; (2) there is a pre-existing "substantive legal relationship" between the person to be bound and a party to the judgment, for instance, preceding and successive owners of property, bailee and bailor, and assignee and assignor; (3) the nonparty was represented adequately by someone who was a party to the first suit; (4) the nonparty assumed control over the prior litigation; (5) a party to the prior litigation attempted to relitigate through a proxy; and (6) a special statutory scheme that expressly forecloses successive litigation by nonparties. *Id.* The Court said that this list was "meant

14

only to provide a framework for our consideration of virtual representation, not to establish a definitive taxonomy." *Id.* at 893 n.6. The present circumstances reasonably fall within the second and/or third exceptions. While "close family relationships are not sufficient by themselves to establish privity with the original suit's party, or to bind a nonparty to that suit by the judgment entered therein," *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 863 (5th Cir. 1985), the circumstances here are more substantial, as William and Ann Wizinsky are married, share a common interest in the property at the heart of both actions, and both were defendants and signed the Settlement Agreement in the state case. "Because there is a close connection between the concept of privity and the notion of identity of interests, the existence of the same rights and interests in property has been recognized as being 'specific enough' to create privity for purposes of claim preclusion." *Baloco v. Drummond Co., Inc.*, 767 F.3d 1229, 1249 (11th Cir. 2014) (citing 3D Moore's Federal Practice § 131.40[3][a]-[c] (Matthew Bender 3d ed.)); *see also Brown v. SunTrust Mortg.*, No. 2:15-CV-49, 2015 WL 13777912, at *4 (N.D. Ga. Nov. 24, 2015), *report and recommendation adopted*, 2015 WL 13777899 (N.D. Ga. Dec. 14, 2015) (finding privity where the husband and wife plaintiffs shared a common interest at stake in the residence in which they both resided and the wife was adequately represented in the prior foreclosure-related suit filed by the husband).

Turning to Defendants, both the County and Hunter were parties in the prior action. While Janik was not a party, he is the County Administrator and an employee of the County. The Sixth Circuit has held that "[a] government official sued in his or her official capacity is considered to be in privity with the government." *Pittman v. Michigan Corrs. Org.*, 123 F. App'x 637, 640 (6th

Cir. 2005) (internal quotation marks omitted).[6] It has also held that privity exists when a governmental official is sued in his or her individual capacity, so long as an employer-employee relationship exists. *McCoy v. Michigan*, 369 F. App'x 646, 650 (6th Cir. 2010); *see also Heike v. Central Mich. Univ. Bd. of Trs.*, 573 F. App'x 476, 481–82 (6th Cir. 2014) (holding that the district court's prior order granting summary judgment to university officials on claims in their official and individual capacities precluded a subsequent action against the university). Here, with the exception of certain post-*Wizinsky II* matters (discussed below), Plaintiffs do not allege any action by Janik in this case that was separate and distinct from the actions of the County and Hunter at issue in *Wizinsky II*. In fact, the complaint in that case specifically referenced Janik in connection with the County's building department. *Wizinsky II*, ECF No. 1 at PageID.27. Thus, Janik and the County have a sufficiently close relationship to be considered in privity with one another for purposes of claim preclusion.

Next, while the HOA was not a party, its board members were parties. The second *Taylor* category—a substantive legal relationship—appears to apply in this instance. In *Taylor*, the Court cited the Restatement (Second) of Judgments (1982) for examples of "substantive legal relationships" that fit within the second category. 553 U.S. at 894. Among other examples of legal relationships set forth in the Restatement are corporations and their officers, shareholders, and members. Restatement (Second) of Judgments § 59 (1982). The HOA, a non-profit corporation, and its board members unquestionably share a substantial identity of interests, as well as a

---

[6] Plaintiffs have not alleged in this case the capacity in which they are suing any of the individual government-entity defendants on their Section 1983 claims. As such, the Court must presume that Plaintiffs intended to sue these individuals (Janik, Hunter, and Patmore) in their official capacities. *See Hill v. Michigan*, 62 F. App'x 114, 115 (6th Cir. 2003) ("Where a § 1983 plaintiff fails to clearly notify a state official that he intends to seek individual liability, it is presumed that a state official is sued in her official capacity." (citing *Moore v. City of Harriman*, 272 F.3d 769, 775 (6th Cir. 2001) (en banc))).

"working or functional relationship." *Lintz v. Credit Adjustments, Inc.*, No. 07-11357, 2008 WL 835824, at *4 (E.D. Mich. Mar. 28, 2008) (quoting *Phinisee v. Rogers*, 229 Mich. App. 547, 553-554 (1998)). In fact, the HOA's board members were essentially stand-ins for the HOA in *Wizinsky II.*

Next, the Township was not party in the prior action, but Patmore and the Township Board members were named defendants. For the reasons set forth above regarding the County, the Township is in privity with the Township officials that William sued.

This leaves Zeits, Koches, and Holmes, who were not parties. Zeits and Koches represented the HOA and the Township not only with regard to the underlying zoning and permitting issues, but also in the state case. Courts in the Sixth Circuit and elsewhere have found that attorneys are in privity with their clients for purposes of applying claim preclusion when they represented their clients in prior proceedings. *See Kimball v. Orlans Assocs. P.C.*, 651 F. App'x 477, 481 (6th Cir. 2016) ("The Attorney Defendants are also in privity with Chase concerning the mortgage foreclosure by virtue of their position as foreclosure counsel."); *Laues v. Roberts*, No. 2:14-CV-12313, 2015 WL 1412631, at *6 (E.D. Mich. Mar. 25, 2015) ("Although Hathaway and Bodman were not parties in *Laues I*, they represented BANA and were sufficiently connected with its interest to constitute its privy." (citing *Franklin v. Dean*, No. 2:11–CV–683–WKW, 2013 WL 1867105, at *8 (M.D. Ala. May 3, 2013) ("[I]n Mr. Dean's role as ASECU's attorney in the state-court action, Mr. Dean had an ample laboring oar himself in the conduct of the underlying suit." (internal quotation marks and brackets omitted))); *Lintz v. Credit Adjustments, Inc.*, No. 07-11357, 2008 WL 835824, at *4 (E.D. Mich. Mar. 28, 2008) (collecting cases); *see also Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000) (holding that law firm defendants appearing on behalf of clients in prior litigation were in privity with those clients).

17

Holmes contends that he should be considered in privity with the Township and the HOA, as Plaintiffs allege that he financed the state case against them. He cites the Sixth Circuit's decision in *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 F.3d 1054 (6th Cir. 1995), and its subsequent decision in the same case, 193 F.3d 415 (6th Cir. 1999) (en banc), following remand and a second appeal. Holmes's reliance on the *Becherer* decisions is unpersuasive in these circumstances. First, the initial appeal in *Becherer* followed a bench trial rather than a motion to dismiss. While the Sixth Circuit recognized the possibility that the Florida plaintiffs' alleged control of the Michigan litigation through an association might provide a basis for privity, it remanded for factual development of the issue. 43 F.3d at 1071. In addition, in the subsequent appeal, the Sixth Circuit reversed the district court's control finding, concluding that the Florida plaintiffs exercised insufficient control. In doing so, it noted that for purposes of privity, non-party control of litigation "require[s] a relationship akin to that between a president/sole shareholder and his or her company, a parent corporation and its subsidiary, an indemnitor and its indemnitee, or a liability insurer and an insured." 193 F.3d at 423 (citing *Benson and Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir. 1987)). In contrast, the only basis for a finding of control here are Plaintiffs' allegations—based almost entirely, if not exclusively, on unsupported legal conclusions—that Holmes provided funding for the state case and thereby acquired control of the litigation as part of the alleged conspiracy. But no fact in the complaint, nor any document in the record in *Wizinsky II*, suggests that Holmes had *any* control of the litigation, let alone the level of control specified in the second *Becherer* opinion. Finally, the issue here is whether *Wizinsky II* has preclusive effect, meaning that Holmes must demonstrate privity for purposes of that judgment. However, there is no allegation that he funded or controlled the defense of that action.

Alternatively, Holmes argues that nonparty claim preclusion applies, but the cases he cites, including *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979), and *Davis v. McKinnon & Mooney*, 266 F.2d 870 (6th Cir. 1959), involved the *res judicata* concept of issue preclusion rather than claim preclusion. *See*, *e.g.*, *J.Z.G. Res., Inc.*, 84 F.3d at 214 ("The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion."). In a more recent decision, Judge Jarbou explained that although *Randles v. Gregart*, 965 F.2d 90 (6th Cir. 1992), which Holmes also cites, did not clearly indicate whether it was applying issue preclusion or claim preclusion, the decision was better understood as applying issue preclusion "because the plaintiff actually litigated the issue giving rise to the preclusion defense." *The 81 Dev. Co., LLC v. Soil & Materials Eng'rs, Inc.*, No. 1:19-cv-998, 2021 WL 868886, at *14 (W.D. Mich. Mar. 9, 2021). Accordingly, I conclude that Holmes has failed to demonstrate the requisite privity with either the HOA or the Township.

### c.      Issues Actually Litigated or that Should Have Been Litigated

The third element reflects the policy that litigants should bring all related claims in a single lawsuit. *Wilkins v. Jakeway*, 183 F.3d 528, 532 n.4 (6th Cir. 1999). Accordingly, a plaintiff is precluded not only from bringing the same claims, but also from bringing claims that he or she should have brought in the prior action. *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 483 (6th Cir. 1992). A plaintiff should have litigated claims in a prior action if they "arose from the same transaction, or series of transactions," as the claim asserted in the prior action. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006).

This element is easily satisfied in this case. A comparison of the complaint in this case with the complaint in *Wizinsky II* shows that, not only are the same facts and transactions at issue, but that the present complaint essentially regurgitates almost all of the same allegations and assertions

regarding the invalidity of the Settlement Agreement, sprinkled with a few new allegations regarding the "unknown financiers of litigation" (Holmes), the HOA's and Township's legal counsel, and post-*Wizinsky II* events. Moreover, the instant complaint carries forward the central theme of *Wizinsky II*: that Defendants violated "the U.S. Constitution, Federal Statutes and Rule of Law for the purpose of a CON to remove a newly created 'Black Family' by removing their legally just repaired home." (ECF No. 1 at PageID.1.)

### d.    Identity of Claims

The final element is also met. With the exception of post-*Wizinsky II* claims, all of the claims Plaintiffs assert could have been asserted in the prior case. In fact, Plaintiffs assert many of the same claims here that they asserted in *Wizinsky II*, including takings, substantive due process, 42 U.S.C. § 1982, and Fair Housing Act claims based on the same allegations.[7]

In sum, the doctrine of claim preclusion bars all of Plaintiffs' claims in this case that were or could have been asserted in *Wizinsky II*. Because the state-law claims were dismissed without prejudice pursuant to 28 U.S.C. § 1367(c), *Wizinsky II*, ECF No. 82 at PageID.4973, claim preclusion does not bar Plaintiffs' state-law claims. *See Cooley v. FedEx Freight, Inc.*, No. 1:18-cv-372, 2020 WL 5506425, at *4 (W.D. Mich. Aug. 20, 2020), *report and recommendation adopted*, 2020 WL 5503600 (W.D. Mich. Sept. 11, 2020).

---

[7] Plaintiffs also continue to assert frivolous claims based on criminal statutes that provide no private right of action. (ECF No. 1 at PageID.102–05.) *See Kordan v. Rigg*, No. 21-cv-11419, 2021 WL 3612293, at *2 (E.D. Mich. July 23, 2021), *report and recommendation adopted*, 2021 WL 3603366 (E.D. Mich. Aug. 13, 2021) (dismissing the plaintiff's claim based on 18 U.S.C. § 1349 because it is a criminal statute that provides no private right of action); *Brent v. Department of Veterans Affairs Debt Mgmt. Ctr.*, No. 19-cv-2446, 2020 WL 1889008, at *6 (W.D. Tenn. Feb. 11, 2020), *report and recommendation adopted*, 2020 WL 917288 (W.D. Tenn. Feb. 26, 2020) (dismissing claims under 18 U.S.C. §§ 1341 and 1343 because they are criminal statutes that provide no private right of action); *Lucas-Cooper v. Palmetto GBA*, No. 1:05CV959, 2006 WL 8447758, at *5 (N.D. Ohio Mar. 31, 2006) (noting that 18 U.S.C. §§ 1341 and 1343 are "criminal statutes, which grant no explicit [or implied] private right of action.").

### 3.      Post-*Wizinsky II* Claims

As noted above, Plaintiffs make additional allegations in support of their claims based on their 2020 zoning appeal hearing, County Construction Board of Appeals hearing, and SCCC appeal, as well as the demolition of the gazebo. To the extent these claims are not barred by claim preclusion, they fail for the same reasons set forth in *Wizinsky II.* That is, Plaintiffs' voluntary entry into the Settlement Agreement mooted further review of the Township's denial of the Land Use Permit and the limited COO that the County issued. 2020 WL 6597637, at *9. Plaintiff's pursuit of further administrative appeals following the conclusion of *Wizinsky II* did not revive their claims. Moreover, Judge Elsenheimer's October 22, 2019 Order directing the removal of the gazebo further precludes such claims, as well as any claims based on the demolition/removal of the gazebo. In fact, it appears that, but for Governor Whitmer's COVID-19 Executive Order 2020-21, effective March 24, 2020, the gazebo likely would have been demolished prior to the entry of the final judgment in *Wizinsky II*. *Wizinsky II*, ECF No. 50 at PageID.2630.

### 4.      Defendant Holmes

Defendant Holmes moves for dismissal of all of Plaintiffs' claims for failure to state a claim. Because conspiracy is the sole hook by which Plaintiffs have reeled Holmes into this action, I begin by reviewing the conspiracy claims set forth in Counts I and II, both of which are premised on violations of 42 U.S.C. § 1985. In Count I, Plaintiffs allege a conspiracy to obstruct justice under Section 1985(2). There are two components under that subsection. The first part pertains to the administration of justice in the federal courts, and the second part applies to conspiracies to obstruct justice in state courts. *Kush v. Rutledge*, 460 U.S. 719, 724–25 (1983). In order to allege a claim under the first part of Section 1985(2), Plaintiffs must show that (1) there was a conspiracy; (2) to deter a witness or party by force, intimidation, or threat from testifying; which (3) results in injury to the plaintiff. *David v. United States*, 820 F.2d 1038, 1040 (9th Cir. 1987). The second

part of Section 1985(2) requires proof of a conspiracy to deny equal protection motivated by racial or class-based invidiously discriminatory animus. *Kush*, 460 U.S. at 722. Plaintiffs fail to establish a claim under Section 1985(2). First, although this claim apparently focuses on the state case, Plaintiffs allege no fact indicating that Holmes, the Township, the HOA, Zeits, Koches, or anyone acting on their behalf, acting in concert or even individually, did anything to impede, hinder, obstruct, or defeat justice in the state case. Second, the existence of a conspiracy must be pled with some degree of specificity. Conclusory allegations regarding a conspiracy or racial or class-based animus will not suffice. *Fox v. Michigan State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006) (citing *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) ("Claims of [civil] conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim.")). Here, Plaintiffs' conspiracy allegations consist of nothing more than naked assertions that Holmes and the other Defendants conspired with each other to obstruct justice and deny Plaintiffs equal protection. As in *Wizinsky II*, Plaintiffs fail to allege any fact showing that any Defendant acted with racial animus. Finally, Plaintiffs cannot show that they were harmed by any alleged conspiracy. Once again, Plaintiff's voluntary entry into, and violation of, the Settlement Agreement, and not an alleged conspiracy, caused the injuries of which Plaintiffs complain.

Count II alleges a conspiracy in violation of 42 U.S.C. § 1985(3). To maintain a cause of action for conspiracy under Section 1985(3), a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Smith v. Thornburg*, 136 F.3d 1070,

1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). In addition, a plaintiff must demonstrate that the conspiracy was motivated by class-based animus, such as race. *Johnson*, 40 F.3d at 839. Plaintiffs' allegations in Count II essentially mirror their allegations in Count I and, thus, fail for the reasons cited above. Although both Counts incorporate all preceding 633 paragraphs, nothing in those paragraphs plausibly supports either conspiracy claim.

Finally, although Plaintiffs refer simply to "Defendants" in the remaining counts asserting federal claims, there is no need to address those claims, as Defendant Holmes was not a state actor and had nothing to do with the events set forth in the complaint other than providing financing for the state case. In short, apart from bare conspiratorial allegations, Plaintiffs allege no fact indicating that Holmes was involved in the events at issue.

### 5.    State Law Claims

The *Wizinsky II* R&R recommended that the state-law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). 2020 WL 6597637, at *11. Although state-law claims brought pursuant to supplemental jurisdiction generally should be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3) when all of the federal claims are dismissed, *see Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."), I recommend that the Court exercise jurisdiction over the claims now presented for the following reasons. First, Plaintiffs have fully litigated the present issues in more than one case and more than one forum, and allowing them another opportunity for more litigation would constitute a waste of judicial resources. Second, as set forth below, the state-law claims are insubstantial and easily dispatched.

23

The state claims are: (1) violation of the public duty doctrine (Count XII); (2) defamation (Count XIII); (3) violation of the Michigan Rules of Professional Conduct (MRPC) (Count XIV); (4) legal malpractice ( Count XV); (5) fraud upon the court (Count XVI); and (6) malicious use of process (Count XVII). For the reasons set forth above, the Mutual Release bars these claims as to the Township Defendants, the HOA, Zeits, and Koches. Therefore, these claims need only be addressed as to the County Defendants because they do not implicate Defendant Holmes.

First, under Michigan law, the public duty doctrine is in the nature of "a defense once a duty is found . . . [that] shields defendant [police] officers from liability for negligent nonfeasance, or failure to provide police protection, unless the plaintiff can establish that a special relationship existed between the officers and the plaintiff." *Murdock v. Higgins*, 454 Mich. 46, 48 n.1 (1997); *see also Buck v. City of Highland Park*, 733 F. App'x 248, 255 (6th Cir. 2018) (noting that "Michigan's public-duty doctrine . . . 'insulates officers from tort liability for the negligent failure to provide police protection unless an individual plaintiff satisfies the special-relationship exception'" (citing *White v. Beasley*, 453 Mich. 308, 316 (1996)). It thus provides no basis for a cause of action, and even if it could support a claim, it is inapplicable to the facts of this case.

Next, Plaintiffs allege that the County and Janik defamed them based on what appear to be notes from a meeting on June 22, 2017, and an email that Janik sent the same date stating that the County had determined that the gazebo was in violation of the building code and wanted the structure removed.[8] The elements of a defamation claim under Michigan law are "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party,

---

[8] The County Defendants interpret Plaintiffs' claim as also based on the 2018 COO. (ECF No. 76 at PageID.2194.) However, even construing the claim liberally, it appears that the only statements by the County that Plaintiffs alleged to be false and defamatory are Janik's alleged statements in the meeting notes and the email. As the County Defendants point out, the meeting notes attached as Exhibit 3 to the complaint (ECF No. 1-4), are incomplete and do not identify the author.

(3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v. Campbell*, 474 Mich. 21, 24 (2005).[9]  First, this claim is untimely, as it is barred by Michigan's one-year statute of limitations. Mich. Comp. Laws § 600.5805(11). "A defamation claim accrues when 'the wrong upon which the claim is based was done regardless of the time when damage results.'" *Id.* (quoting Mich. Comp. Laws § 600.5827). Plaintiffs' claim thus would have accrued, at the latest, on June 22, 2017, when Janik authored the notes and email. However, Plaintiffs did not file their complaint in this action until June 14, 2021.

Even if the claim were timely, it would be barred by governmental immunity as to both the County and Janik. Pursuant to Michigan's Government Tort Liability Act (GTLA), Mich. Comp. Laws §§ 691.1401 *et seq.*, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." Mich. Comp. Laws § 691.1407(1). A governmental function is "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." Mich. Comp. Laws § 691.1401(f). "The enforcement and administration of the construction code is expressly authorized by statute and thus satisfies the definition of a governmental function." *Chaconas v. Lima Twp.*, No. 258979, 2006 WL 2312242, at *3 (Mich. Ct. App. Aug. 10, 2006). In order to avoid dismissal, Plaintiffs must plead their claims "in avoidance of governmental immunity." *Odom v. Wayne Cnty.*, 482 Mich. 459, 478–79 (2008). Because Plaintiffs have not

---

[9]  In their defamation count, Plaintiffs cite 28 U.S.C. § 4101 for the definition of defamation. This statute has nothing to do with Plaintiffs' claim in this case, as it pertains to recognition of foreign defamation judgments in "domestic court[s]," meaning federal and state courts. 28 U.S.C. § 4101(2). Nothing in the statute suggests an intent to create a federal cause of action for defamation. Accordingly, Plaintiffs' claim is analyzed as arising under Michigan law.

alleged any conduct by which the County acted beyond its governmental function, the County is immune on this claim. The GTLA also contains the following grant of immunity:

> A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

Mich. Comp. Laws § 691.1407(5). Janik, as the County Administrator, qualifies as the County's highest appointive executive official and thus is immune from suit for activities within the scope of his executive authority. *See Conces v. Norlander*, No. 224157, 2001 WL 1231840, at *2 (Mich. Ct. App. Oct. 16, 2001) (holding that Calhoun County Administrator was immune from suit for activities within the scope of his executive authority). Moreover, the exhibits Plaintiffs cite show that Janik was engaged in activities within the scope of his executive authority (meeting with the County Building Official and the Township Zoning Administrator). Finally, Plaintiffs allege that "Defendants are guilty of defamation based on the building being removed on false charges." (ECF No. 1 at PageID.109.) But that is not true. As set forth above, the gazebo was removed because Plaintiffs entered into, and then breached, the Settlement Agreement. Janik's statements in the meeting notes and email thus had nothing to do with the gazebo's removal.

Next, the MRPC and legal malpractice claims are directed at Defendants Zeits and Koches and not at the County Defendants, who are not engaged in the practice of law.[10] The fraud on the court claim set forth in Count XVI fails for the reasons stated above. Finally, the claim for

---

[10] Even if Counts XIV and XV against Zeits and Koches were not barred by the Settlement Agreement and Mutual Release, they would be subject to dismissal for failure to state a claim. First, the MRPC expressly state that they do not "give rise to a cause of action for enforcement of a rule or for damages caused by failure to comply with an obligation or prohibition imposed by a rule." MRPC 1.0(b). Therefore, Count XIV fails to state a cognizable claim for relief. *Watts v. Polaczyk*, 242 Mich. App. 600, 607 n.1 (2000). As for the malpractice claim, Plaintiffs' assertion that they had an attorney-client relationship with Zeits and Koches simply because Plaintiffs were members of the HOA and paid dues to it and paid taxes to the County is meritless.

malicious use of process set forth in Count XVII sets forth no facts to support a claim. Plaintiffs

simply state that "[i]f Plaintiffs wins [sic] any issue on appeals [sic], the coercion, abuse of process

can become malicious abuse of process, therefore this count is pending and included." (ECF No.

1 at PageID.129.) Besides not stating a claim, Plaintiffs lost all issues in their appeals.

### B.    Rule 11 Motions

All Defendants, except Zeits, move for an award of sanctions against Plaintiffs for violating

Federal Rule of Civil Procedure 11.

Pursuant to Rule 11, an attorney or an unrepresented party who files a pleading or other

paper with a court certifies that, among other things:

> (1) it is not being presented for any improper purpose, such as to harass, cause
> unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law
> or by a nonfrivolous argument for extending, modifying, or reversing existing law;
> [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified,
> will likely have evidentiary support after a reasonable opportunity for further
> investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1)– (3). "[T]he central purpose of Rule 11 is to deter baseless filings in

district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

In determining whether a party has violated Rule 11, courts examine whether the conduct

was reasonable under the circumstances. *See Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th

Cir. 1997). The standard is an objective one. *Jackson v. Law Firm of O'Hara, Ruberg, Osborne &*

*Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989); *see also First Bank of Marietta v. Hartford*

*Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) (noting that "the imposition of Rule 11

sanctions requires a showing of 'objectively unreasonable conduct'" (quoting *United States v.*

*Kouri–Perez*, 187 F.3d 1, 8 (1st Cir. 1999)). "Thus, [a party's] good faith is not a defense." *Id.* The

party's conduct is to be judged at the time the pleading or paper was signed rather than from hindsight. *See INVST Fin. Grp., Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987). Pro se litigants, like attorneys, "must comply with Rule 11 and make a reasonable inquiry as to whether a complaint is well-grounded in fact and warranted by existing law." *Stevens v. Mooney*, No. 95-1757, 1996 WL 125048, at *1 (6th Cir. Mar. 20, 1996).

In *Wizinsky II*, I recommended that the Court conclude that William did not violate Rule 11 in *Wizinsky I* but that he did violate Rule 11 by filing the complaint in *Wizinsky II*. 2020 WL 6597637, at *13–14. The reasons for finding a violation included: (1) William Wizinsky's false allegations regarding a Michigan Department of Civil Rights investigator's findings; (2) his assertion of baseless claims of racism against the County, as well as the HOA and the Township, which violated the Settlement Agreement; and (3) his assertion of a RICO claim that falsely alleged that the County was involved in the state case. *Id.* at *13. However, giving William Wizinsky the benefit of his pro se status and in light of the recommendation to dismiss the entire case, I recommended that the Court not award monetary sanctions. *Id.* at *14.

The finding that William Wizinsky violated Rule 11 in *Wizinsky II* should have served as a warning to Plaintiffs in filing their complaint in the instant case that future violations would not be excused. Here, at the time Plaintiffs filed their complaint, they had in hand rulings from Judge Elsenheimer and this Court rejecting their assertions that fraud and duress invalidated the Settlement Agreement. While the Sixth Circuit and the Michigan Court of Appeals had not yet spoken on the issue, both courts that had spoken flatly rejected Plaintiffs' claims, particularly because Plaintiffs were represented by counsel during the mediation. In this action, Plaintiffs not only continue their same baseless attack on the Settlement Agreement, but also continue to put forth their baseless assertions (again in violation of the Settlement Agreement) that everything that

28

occurred regarding the gazebo and in the state case was due to racism and discrimination arising from a wide-ranging conspiracy that they suggest (without factual support) even included Judge Elsenheimer, all because Plaintiffs adopted an African American child. Furthermore, for the reasons stated above, Plaintiffs' discovery that Defendant Holmes allegedly financed the litigation costs in the state case did not provide a good faith basis for another bite at the apple. For these reasons, I conclude that Plaintiffs violated Rule 11 by, at a minimum, filing claims unsupported by existing law or a nonfrivolous extension or modification of existing law and without evidentiary support.

Upon finding that Rule 11 has been violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The determination of an appropriate sanction is a matter committed to the discretion of the district court. *See Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 376 (6th Cir. 1996). However, "[t]he central purpose of Rule 11 sanctions is deterrence, not compensation." *Williams v. Supreme Court of Ky.*, No. 89-5103, 1990 WL 136118, at *3 (6th Cir. 1990). Thus, "courts should impose the least severe sanction that is likely to deter." *Jackson*, 875 F.2d at 1229.

Defendants request as a sanction awards of their actual attorney's fees and expenses, as any lesser amount would be unlikely to deter Plaintiffs from continuing to file frivolous lawsuits. An award of actual attorney's fees and expenses would be well justified given the circumstances in this case. Given that five grouped Defendants represented by four law firms request sanctions, an award of actual fees and expenses could easily exceed $75,000. I conclude, however, that a reduced, yet substantial, award of fees in the amount of $40,000, with each Defendant group to receive an equal share of $8,000, would be adequate compensation for at least a portion of their

29

fees and expenses that nonetheless fulfills Rule 11's deterrent purpose, particularly when imposed in connection with restricted filing status. At a reasonable and conservative hourly rate of $250, this amount translates into 32 hours of work by counsel, which is certainly a reasonable number of hours for both the motions to dismiss and motions for sanctions.

In restricting filing, a court may not absolutely bar an individual from filing an action in federal district court. *See Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996). Nonetheless, "[a] district court has the authority to issue an injunctive order to prevent prolific and vexatious litigants from filing pleadings without first meeting pre-filing restrictions." *Stewart v. Fleet Fin.*, No. 99-2282, 2000 WL 1176881, at *2 (6th Cir. Aug. 10, 2000) (citing *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998), and *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987)). Accordingly, I recommend that the Court direct that any further action Plaintiffs file in this Court relating to the subject matter asserted in *Wizinsky I–III* be screened before service, regardless of whether Plaintiffs have paid the filing fee. *See Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (holding that a "district court may, at any time, sua sponte dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion.").

### III.   Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendants' motions to dismiss/for judgment on the pleadings (ECF Nos. 23, 64, 68, 76, 89, and 98), **grant** Holmes's, the Koches', the County Defendants', the HOA's, and the Township Defendants' motions for sanctions (ECF Nos. 87, 88, 101, 142, 166), award monetary sanctions against Plaintiffs as set forth above, and place Plaintiffs on restricted filer status. I further recommend that Plaintiffs' complaint be **dismissed with prejudice** and that, in connection with the dismissal, the Court

dismiss unknown parties #2—5 (identified as Unknown Financiers of Litigation) for failure to timely effect service.

Dated: January 12, 2022      /s/ Sally J. Berens
               SALLY J. BERENS
               U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).